Michael A. Garza (Texas Bar No. 24126797)
Matthew J. Pyeatt (Texas Bar No. 24086609)
Trevor G. Spears (Texas Bar No. 24106681)
**VINSON & ELKINS LLP**
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
mgarza@velaw.com; mpyeatt@velaw.com;
tspears@velaw.com
**PROPOSED ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION**

David S. Meyer (*pro hac vice* pending)
George R. Howard (*pro hac vice* pending)
Lauren R. Kanzer (*pro hac vice* pending)
**VINSON & ELKINS LLP**
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel: 212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; ghoward@velaw.com;
lkanzer@velaw.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22-90000 (MXM)** |
| | § | |
| **ROCKALL ENERGY HOLDINGS, LLC,** | § | **(Chapter 11)** |
| ***et al.*,** | § | |
| | § | **(Joint Administration Requested)** |
| | § | **(Emergency Hearing Requested)** |
| **Debtors.[1]** | § | |

### EMERGENCY MOTION FOR ENTRY
### OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE
### DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER
### COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE
### EMPLOYEE BENEFIT PROGRAMS AND (II) GRANTING RELATED RELIEF

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***"), file

this *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to*

*(A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and*

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Arrow Rock Energy, LLC (7549), Petro Harvester Operating Company, LLC (2136), Rockall Agent Corp. (1653), Rockall Energy Holdings, LLC (5784), Rockall Energy, LLC (6340), Rockall EOR, LLC (4136), Rockall Exploration Company, LLC (0547), Rockall Intermediate, Inc. (9759), Rockall LA, LLC (4270), Rockall Laurel, LLC (1178), Rockall Midstream, LLC (0917), Rockall MS, LLC (0740), Rockall ND, LLC (9311), Rockall Pine Prairie, LLC (5799), White Marlin Investment Company, LLC (9987), and White Marlin Midstream, LLC (1466). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 5005 LBJ Freeway, Suite 700, Dallas, TX 75244.

*(B) Continue Employee Benefit Programs and (II) Granting Related Relief* (the "***Motion***") and in support respectfully submit the following:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Northern District of Texas (the "***Court***") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a), and 541(b) of title 11 of the United States Code (the "***Bankruptcy Code***"), Bankruptcy Rules 6003 and 6004, and rule 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "***N.D. Tex. L.B.R.***").

## EMERGENCY CONSIDERATION

4.      In accordance with the N.D. Tex. L.B.R. and *General Order Regarding Procedures for Complex Chapter 11 Cases*, the Debtors request emergency consideration of this Motion. The Debtors submit that an immediate and orderly transition into chapter 11 is critical to the viability of their operations and the success of these chapter 11 cases. As discussed in detail below and in the First Day Declarations (as defined below), any delay in granting the relief requested could hinder the Debtors' operations and cause immediate and irreparable harm. As such, the Debtors

2

believe that emergency consideration is necessary and request that this Motion be heard at the Debtors' first day hearings.

## BACKGROUND

5.     Rockall Energy Holdings, LLC, together with the other Debtors, is a privately held energy company, headquartered in Dallas, Texas.  The Debtors are primarily engaged in oil and natural gas exploration and production, with over 100,000 net acres located in the Williston Basin in North Dakota and the Salt Basin plays in Louisiana and Mississippi.  The Debtors also own assets in Mississippi that they believe would be well-suited to develop a carbon capture utilization and storage business, including enhanced oil recovery and $CO_2$ sequestration.  During these chapter 11 cases, the Debtors will be marketing for sale all of their assets, continuing the marketing and sales process that began prior to the date hereof.

6.     On the date hereof (the "***Petition Date***"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no request for the appointment of a trustee or examiner has been made and no official committee of unsecured creditors has been appointed in these chapter 11 cases.

7.     Additional information regarding the Debtors and these chapter 11 cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these chapter 11 cases, is set forth in the *Declaration of David Mirkin in Support of Chapter 11 Petitions and First Day Pleadings* (the "***Mirkin Declaration***") and *Declaration of Scott M. Pinsonnault in Support of Chapter 11 Petitions and First Day Pleadings* (the

US 8623191

"*Pinsonnault Declaration*" and together with the Mirkin Declaration, the "*First Day Declarations*"), each filed contemporaneously herewith and incorporated herein by reference.[2]

## RELIEF REQUESTED

8.      By this Motion, the Debtors seek entry of an interim order (the "*Interim Order*"), substantially in the form attached hereto as **Exhibit A**, and subsequently a final order (the "*Final Order*"), substantially in the form attached here to as **Exhibit B**, (i) authorizing the Debtors to (a) pay all prepetition wages, salaries, other compensation, and reimbursable expenses on account of the Compensation and Benefit Programs (as defined below) and (b) continue to administer the Compensation and Benefit Programs in the ordinary course of business, including payment of prepetition obligations related thereto, and (ii) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately 25 days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis.

## THE DEBTORS' WORKFORCE

9.      As of the Petition Date, the Debtors employ approximately 50 individuals on a full-time basis.  Approximately 18 employees are paid on an hourly basis (the "*Hourly Employees*") and approximately 31 employees receive a salary (the "*Salaried Employees*," and together with the Hourly Employees, the "*Employees*").  None of the Employees are represented by a union or collective bargaining unit.  Additionally, the Debtors utilize one independent contractor (the "*Independent Contractor*," and together with the Employees, the "*Workforce*").

10.      The Workforce performs a wide variety of functions critical to the Debtors' operations, the administration of these chapter 11 cases, and the Debtors' successful

---

[2]      Capitalized terms used but not otherwise defined in this Motion shall have the meaning set forth in the First Day Declarations, as applicable.

4

reorganization. Their skills, knowledge, and understanding of the Debtors' operations and infrastructure are essential to preserving operational stability, safety, and efficiency. In many instances, these Employees and the Independent Contractor are highly trained personnel with specialized skills who are not easily replaced. Without the continued, uninterrupted services of the Workforce, the Debtors' business operations and restructuring efforts will suffer immediate and irreparable harm.

11. The vast majority of the Workforce relies exclusively on their compensation and benefits from the Debtors to pay their daily living expenses and support their families. Thus, the Workforce will be exposed to significant financial constraints if the Debtors are not permitted to continue paying their compensation and providing benefits in the ordinary course. Consequently, the relief requested herein is necessary and appropriate.

## **COMPENSATION AND BENEFIT PROGRAMS**

12. To avoid immediate and irreparable harm to the Debtors' business operations and restructuring efforts and to minimize the personal hardship the Workforce would suffer if the Debtors' employee obligations are not paid when due or as expected, the Debtors are seeking authority to pay and honor certain prepetition claims relating to compensation and benefit programs. Specifically, the Debtors are seeking authority to pay and honor certain prepetition claims relating to, among other things, wages, salaries, expense reimbursements, other compensation, federal and state withholding taxes and other amounts withheld (including Employees' share of insurance premiums, taxes, health savings accounts and flexible spending accounts contributions, and 401(k) contributions), health insurance, life and accidental death and dismemberment insurance, disability coverage, retirement benefits, workers' compensation benefits, paid time off, and other benefits that the Debtors have historically directly or indirectly provided to the Workforce in the ordinary course of business (collectively, the "***Compensation***

5

*and Benefit Programs*," and such obligations arising therefrom, the "***Compensation and Benefit Obligations***"), as well as all incidental costs thereof.

13.     Subject to the Court's approval of the relief requested herein, the Debtors intend to continue their prepetition Compensation and Benefit Programs in the ordinary course of business and consistent with past practice.  Out of an abundance of caution, however, the Debtors request the right to modify, change, and discontinue certain of their Compensation and Benefit Programs and to implement new programs, policies, and benefits, in their discretion and in the ordinary course of business during these chapter 11 cases and without the need for further Court approval, subject to the terms of the Interim Order and applicable law.

**I.      Compensation and Withholding Obligations**

   *A.      Employee Wages*

14.     In the ordinary course of business, the Debtors incur and pay the Employees' wages, salaries, and other compensation, on a bi-weekly or semi-monthly basis (collectively, the "***Employee Compensation***").[3]  The Debtors pay their Employees' wage and salary obligations (collectively, the "***Wages***") on either a salaried or hourly basis.[4]  On average, the Debtors pay approximately $48,000 per bi-weekly pay period on account of Wages and approximately $200,000 per semi-monthly pay period on account of Wages.  The Debtors' most recent semi-monthly pay cycle occurred on March 7, 2022 and the most recent bi-weekly pay cycle occurred on March 7, 2022.

---

[3]     The Debtors use a third-party payroll processor by which all disbursements and withholdings (as set forth herein) are processed.

[4]     With the exception of one Employee, all Salaried Employees are paid on a semi-monthly basis on the 15th and the last day of every month, or on the preceding business day when falling on a weekend or holiday.  All Hourly Employees and one Salaried Employee are paid bi-weekly, on every other Friday, one week in arrears.

US 8623191

15.     Because some Employees are paid in arrears, certain Employees will be owed accrued but unpaid Wages as of the Petition Date.  Wages also may be due and owing as of the Petition Date because of, among other things, potential discrepancies between the amounts paid and the amounts that Employees believe should have been paid, which, upon resolution, may reveal that additional amounts are owed to such Employees.  Additionally, the Debtors compensate certain Employees for overtime services, which may have occurred and may not be recorded in the system.  Such Employees' Wages may be due and owing as of the Petition Date, but the approximate amount due and owing is unknown to the Debtors given the overtime reporting system utilized by the Debtors.[5]

16.     As of the Petition Date, the Debtors estimate that the amount of accrued but unpaid Wages is approximately $30,000 (the "*Unpaid Wages*"), all of which will become due and owing in the first 21 days of these chapter 11 cases.  The Debtors seek authority to pay the Unpaid Wages in the ordinary course of business and consistent with past practices, and to continue paying the Wages and any associated processing costs on a postpetition basis in the ordinary course of business.

17.     The Debtors do not believe there are prepetition amounts owed to any individual on account of the Unpaid Wages that exceed $13,650, the priority expense amount set forth in section 507(a)(4) of the Bankruptcy Code, and the Debtors are not seeking authority to pay Unpaid Wages to any Employee in excess of such amount.

---

[5]     Eligible Employees are required to submit a weekly payroll timesheet, which accounts for any overtime hours earned during such week.

US 8623191

B.    *Independent Contractor Obligations*

18.    In the ordinary course of business, the Debtors incur and pay the Independent Contractors compensation based on an hourly rate (the "***Independent Contractor Obligations***"). Amounts owed on behalf of Independent Contractor Obligations are paid by the Debtors on the 25th of each month for work performed in the prior month.   In 2021, the Debtors paid approximately $230,625 on account of Independent Contractor Obligations.

19.    As of the Petition Date, the Debtors estimate that the amount of accrued but unpaid Independent Contractor Obligations is approximately $10,000 (the "***Unpaid Independent Contractor Obligations***"), all of which will become due and owing in the first 21 days of these chapter 11 cases.   The Debtors seek authority to pay the Unpaid Independent Contractor Obligations in the ordinary course of business and consistent with past practices, and to continue paying the Independent Contractor Obligations on a postpetition basis in the ordinary course of business.

C.    *Withholding Obligations*

20.    During each applicable pay period, the Debtors, through their payroll processor, routinely deduct and withhold certain amounts from Employees' paychecks for, among other things, pre- or post-tax deductions payable pursuant to certain of the benefit programs (collectively, the "***Deductions***").   The Deductions generally are processed and forwarded to the appropriate third party at the same time the Employees' payroll checks are disbursed.  On average, the Debtors remit approximately $30,000 per month on account of the Deductions.

21.    As of the Petition Date, the Debtors estimate that the amount of accrued but unpaid Deductions is approximately $30,000 (the "***Unpaid Deductions***"), all of which will become due and owing within the first 21 days of these chapter 11 cases. The Debtors seek authority to pay and/or remit the Unpaid Deductions in the ordinary course of business and consistent with past

US 8623191

practice, and to continue paying and/or remitting the Deductions and any associated processing costs on a postpetition basis in the ordinary course of business.

22.     The Debtors also are required by U.S. law to withhold from Employee Compensation amounts related to, among other things, federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "***Employee Payroll Taxes***") for remittance to the appropriate federal, state, and local taxing authorities.  The Debtors must then match the Employee Payroll Taxes from their own funds and pay, based upon a percentage of gross payroll, additional amounts for state and federal unemployment insurance (together with the Employee Payroll Taxes, the "***Payroll Taxes***").  The Payroll Taxes generally are processed and forwarded to the appropriate taxing authority at the same time the Employees' payroll checks are disbursed.

23.     As of the Petition Date, the Debtors estimate that the amount of accrued but unpaid Payroll Taxes is approximately $150,000 (the "***Unpaid Payroll Taxes***"), a portion of which will become due and owing within the first 21 days of these chapter 11 cases. The Debtors seek authority to pay and/or remit the Unpaid Payroll Taxes in the ordinary course of business and consistent with past practice, and to continue paying and/or remitting the Payroll Taxes and any associated processing costs on a postpetition basis in the ordinary course of business.

   D.     *Referral Bonus Program*

24.     The Debtors provide a referral based bonus program (the "***Referral Bonus Program***") to eligible Employees.  The Referral Bonus Program is designed to reward Employees for identifying and referring qualified candidates and provides Employees with the opportunity to earn a bonus (the "***Referral Bonus***") in the amount of $1,000, $2,500, or $5,000, depending on the Employee's position.  A referring Employee will receive 50 percent of the Referral Bonus if the referred candidate is hired and completes 45 calendar days of service, and the remaining 50 percent

9

if the referred candidate completes 120 days of service.  In 2021, the Debtors did not make any payments on account of the Referral Bonus Program.

25.    As of the Petition Date, the Debtors do not believe there are prepetition amounts owed to any Employees on account of the Referral Bonus Program.  Out of an abundance of caution, the Debtors seek authority to continue offering and honoring the Referral Bonus Program on a postpetition basis and in the ordinary course of business.

E.    *Expense Reimbursements*

26.    In the ordinary course of business, the Debtors reimburse the Employees and the Provided Employees (as defined below) for reasonable and customary expenses that such Employees, as applicable, personally incur in the scope of their employment.  Expense reimbursements typically include expenses associated with travel, lodging, ground transportation, meals, and other business-related expenses incurred in the course of an Employee's duties while on assignments away from their normal work location (the "***Expense Reimbursements***").  Generally, eligible travel expenses are personally incurred by an Employee and reimbursed by the Debtors.

27.    Employees and Provided Employees may be held personally liable for any unpaid obligations even though the obligations were incurred for the Debtors' benefit.  Thus, the Debtors' inability to reimburse their Employees and the Provided Employees with respect to any Expense Reimbursements likely would impose significant hardships on those Employees, as applicable.

28.    Because of the irregular nature of requests for Expense Reimbursements, it is difficult for the Debtors to determine the amount of unpaid Expense Reimbursements at any given time, but historically, the Expense Reimbursements are approximately $5,000 per month.  As of the Petition Date, based on historical practice, the Debtors estimate that the amount of accrued but unpaid Expense Reimbursements is less than $12,000 (the "***Unpaid Expense Reimbursements***"),

10

a portion of which will become due and owing within the first 21 days of these chapter 11 cases. The Debtors seek authority to pay the Unpaid Expense Reimbursements in the ordinary course of business and consistent with past practice, and to continue paying the Expense Reimbursements on a postpetition basis in the ordinary course of business.

F.   *Corporate Cards*

29.   The Debtors provide certain Employees with company paid corporate credit cards (the "***Corporate Cards***") that are primarily utilized to pay for certain work-related purchases, such as software subscriptions and other items necessary for operations, made on behalf of the Debtors. The Debtors receive monthly statements for purchases made with the Corporate Cards in the preceding month and typically pay such amounts within 30 days of receipt of such statements. Additional details regarding the Corporate Cards is provided in the *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System and Maintain Existing Bank Accounts, (B) Continue Using Existing Checks and Business Forms, (C) Maintain Their Corporate Card Program, and (D) Continue Intercompany Transactions, and (II) Granting Related Relief* (the "***Cash Management Motion***"), which is being filed contemporaneously herewith, and includes a more fulsome description of the Corporate Card Program (as defined therein).  The Debtors do not seek relief regarding such programs in this Motion, and instead seek relief regarding the Corporate Cards in the Cash Management Motion.

**II.   Employee Benefit Programs**

A.   *Health and Welfare Programs*

(i)   Health Insurance Programs

30.   The Debtors offer their Employees the opportunity to participate in a number of health benefit plans, including the Medical Plans, the HSA and FSAs, the Dental Plans, the Vision

11

Plan, the COBRA Policy, and other Voluntary Health Plans (each, as defined below) (collectively, and including any administrative costs, the "***Health Insurance Programs***").

### a. The Medical Plans

31. The Debtors offer fully-insured medical coverage (the "***Medical Plans***") to their Employees through UnitedHealthcare Insurance Company ("***UHC***"). Employees are provided with four plan options (two preferred provider organization plans, and two high deductible health plans), that each have various required premiums. The Medical Plans provide coverage for, among other things, outpatient and inpatient services, preventative care, and prescription drug services. Employees, as well as their spouses, children, and/or eligible dependents may be covered under the Medical Plans. As of the Petition Date, approximately 45 Employees participate in the Medical Plans. After taking applicable Deductions, the Debtors pay approximately $92,000 per month with respect to the Medical Plans premiums.

### b. Health Savings and Flexible Spending Accounts

32. Employees who participate in the high deductible health plan may contribute a portion of their compensation into an optional health savings account (the "***HSA***"), administered by Optum Bank ("***Optum***"), which may be used for qualified medical expenses. Participating Employees can make contributions to the HSA through payroll deductions on a pre-tax basis to cover reimbursements under the program up to the maximum amount permitted by the Internal Revenue Service. As of the Petition Date, approximately 16 Employees maintain a HSA. The Debtors do not make any contributions on account of the HSA. The Debtors pay Optum approximately $16 in administrative fees on a monthly basis on account of the HSA.

33. The Debtors also provide Employees with access to an optional healthcare flexible spending account, dependent care flexible spending account, and limited purpose flexible spending account (collectively, the "***FSAs***"), each administered by Wex Inc. ("***Wex***"). Participating

US 8623191

Employees can make contributions to the FSAs to cover certain qualified out-of-pocket medical expenses, dependent child and elderly care expenses, and eligible dental and vision expenses. As of the Petition Date, approximately 15 Employees maintain FSAs. The Debtors do not make contributions on account of the FSAs. The Debtors pay Wex approximately $75 in administrative fees on a monthly basis on account of the FSAs.

### c. Dental Plans

34.     The Debtors offer fully-insured dental coverage (the "***Dental Plans***") to their Employees through Ameritas Life Insurance Corp. ("***Ameritas***"). Employees are provided with two plan options with varied levels of coverage and required premiums. Employees, as well as their spouses, children, and/or eligible dependents may be covered under the Dental Plans. As of the Petition Date, approximately 47 Employees participate in the Dental Plans. After taking applicable Deductions, the Debtors pay approximately $3,100 per month with respect to the Dental Plans premiums.

### d. Vision Plan

35.     The Debtors offer fully-insured vision coverage (the "***Vision Plan***") to their Employees through Ameritas. The Vision Plan provides coverage or discounts for exams, prescription eyeglasses, and contact lenses. Employees, as well as their spouses, children, and/or eligible dependents may be covered under the Vision Plan. As of the Petition Date, approximately 45 Employees participate in the Vision Plan. After taking applicable Deductions, the Debtors pay approximately $525 per month with respect to the Vision Plan premiums.

### e. COBRA Policy

36.     The Debtors provide their Employees coverage under the Consolidated Omnibus Budget Reconciliation Act ("***COBRA***"), which provides Employees who lose their health coverage the right to continue benefits for a limited period of time (the "***COBRA Policy***"). The COBRA

Policy is administered by Wex.  As of the Petition Date, three former Employees participate in the COBRA Policy.  The Debtors pay Wex approximately $85 in administrative fees on a monthly basis on account of the COBRA Policy.

f.  Voluntary Health Plans

37.    In addition to the plans described above, the Debtors offer their Employees the opportunity to purchase certain voluntary benefits, including accident insurance, critical illness insurance, and hospital indemnity insurance (collectively, the "***Voluntary Health Plans***").  The Voluntary Health Plans are administered by Unum Life Insurance Company of America ("***Unum***").  Employees, as well as their spouses, children, and/or eligible dependents may be covered under the Voluntary Health Plans.  As of the Petition Date, approximately 48 Employees participate in the Voluntary Health Plans.  The Debtors do not pay any administrative fees or premiums with respect to the Voluntary Health Plans.

38.    As of the Petition Date, the Debtors estimate that the amount of total accrued but unpaid obligations arising under the Health Insurance Programs is approximately $141,000 (the "***Unpaid Health Insurance Program Obligations***"), a portion of which will become due and owing within the first 21 days of these chapter 11 cases.  The Debtors seek authority to pay the Unpaid Health Insurance Program Obligations in the ordinary course of business and consistent with past practice, and to continue paying the Health Insurance Programs obligations on a postpetition basis in the ordinary course of business.

(ii)    Life and AD&D Insurance Programs

39.    The Debtors offer fully-insured life and accidental death and dismemberment insurance coverage (the "***Base Life and AD&D Insurance***") to their Employees through Standard Insurance Company ("***Standard***"), which provides maximum coverage of up to 100 percent of the applicable Employee's annual earnings (not to exceed $300,000) in the event of an Employee's

14

death, accidental death, or dismemberment. Employees do not make any contributions on account of the Base Life and AD&D Insurance. As of the Petition Date, approximately 49 Employees maintain Base Life and AD&D Insurance. The Debtors pay approximately $1,500 per month with respect to the Base Life and AD&D Insurance premiums.

40. Employees may also purchase supplemental life insurance (the "***Supplemental Life Insurance***") and supplemental accidental death and dismemberment insurance (the "***Supplemental AD&D Insurance***," and together with the Supplemental Life Insurance, the "***Supplemental Life and AD&D Insurance***") through Standard. The Debtors do not make any contributions on account of the Supplemental Life and AD&D Insurance. As of the Petition Date, approximately 41 Employees maintain Supplemental Life Insurance and approximately 24 Employees maintain Supplemental AD&D Insurance.[6]

41. As of the Petition Date, the Debtors estimate that the amount of total accrued but unpaid obligations arising under the Base Life and AD&D Insurance is approximately $2,100 (the "***Unpaid Base Life and AD&D Insurance Obligations***"), a portion of which will become due and owing within the first 21 days of these chapter 11 cases. The Debtors seek authority to pay the Unpaid Base Life and AD&D Insurance Obligations in the ordinary course of business and consistent with past practice, and to continue paying the Base Life and AD&D Insurance obligations on a postpetition basis in the ordinary course of business.

---

[6]      Additionally, as of the Petition Date, certain Employees maintain supplemental spouses' life insurance and AD&D insurance, and supplemental dependent child life insurance and AD&D insurance.

US 8623191

### B.      *Disability Benefit Programs*

42.      The Debtors provide certain Employees with fully-insured short- and long-term disability benefits (the "***Disability Benefits***") through Standard.  Employees are eligible for the Disability Benefits as of their date of hire.

43.      Under the short-term disability benefits program, in the event of a qualified non-work related illness or injury, Employees are entitled to $250 in weekly benefits for up to 90 days (the "***Short-Term Disability Benefits***").  Employees do not make any contributions on account of Short-Term Disability Benefits.  As of the Petition Date, approximately 49 Employees are eligible to receive Short-Term Disability Benefits.  The Debtors pay approximately $575 per month in premiums for the Short-Term Disability Benefits.

44.      Under the long-term disability benefits program, Employees are entitled to continuation of 60 percent of eligible monthly wages (up to a monthly limit of $10,000) for a period of time dependent on the Employee's age and when the disability begins (the "***Long-Term Disability Benefits***").  Employees do not make any contributions on account of Long-Term Disability Benefits.  As of the Petition Date, approximately 49 Employees are eligible to receive Long-Term Disability Benefits.  The Debtors pay approximately $2,500 per month in premiums for the Long-Term Disability Benefits.

45.      As of the Petition Date, the Debtors estimate that the amount of total accrued but unpaid obligations arising under the Disability Benefits is approximately $4,000 (the "***Unpaid Disability Benefits Obligations***"), a portion of which will become due and owing within the first 21 days of these chapter 11 cases.  The Debtors seek authority to pay the Unpaid Disability Benefits Obligations in the ordinary course of business and consistent with past practice, and to continue paying the Disability Benefits obligations on a postpetition basis in the ordinary course of business.

16

C.    *Workers' Compensation Program*

46.    The Debtors maintain workers' compensation insurance (the "***Workers' Compensation Program***") for Employees at the level required by law in the states in which the Debtors operate for claims arising from or related to their employment with the Debtors and to satisfy the Debtors' obligations arising under or related to the Workers' Compensation Program (the "***Workers' Compensation Obligations***").

47.    The Debtors maintain third-party insurance for Workers' Compensation Obligations through Berkley Regional Insurance Company ("***Berkley***") and directly with the state of North Dakota, which requires that employers purchase workers' compensation insurance through a state-operated insurance fund.  All Employees are entitled to participate in the Workers' Compensation Program.  The Debtors pay an annual premium of approximately $65,000 to Berkley.[7]  The Debtors pay an annual premium of approximately $4,850 to the state of North Dakota.

48.    The Debtors must continue the claim assessment, determination, adjudication, and payment process pursuant to the Workers' Compensation Program without regard to whether such liabilities are outstanding before the Petition Date to ensure that the Debtors comply with applicable workers' compensation laws and requirements during the pendency of these chapter 11 cases.

49.    As of the Petition Date, approximately one individual is receiving benefits on account of the Workers' Compensation Obligations and there are no open claims.  The Debtors do not believe there are prepetition amounts owed on account of the Workers' Compensation Program.  Out of an abundance of caution, the Debtors seek authority to continue paying the

---

[7]    The Berkley insurance policy covers the period from May 1, 2021 through April 30, 2022.

Workers' Compensation Obligations on a postpetition basis and in the ordinary course of business. To the extent any Employee asserts new claims arising under the Workers' Compensation Program, the Debtors request that the Court modify the automatic stay under section 362 of the Bankruptcy Code to permit the Employees to proceed with their claims under the Workers' Compensation Program. This required modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

        D.     *Paid Leave*

50.     The Debtors maintain certain paid leave benefit programs for Employees, providing paid leave for PTO and Other Leave (each as defined below, and collectively, the "***Leave Benefits***").

51.     In the ordinary course of business, the Debtors provide paid time off ("***PTO***") to eligible Employees. PTO accrues at a specified rate based on the Employee's time in the industry or years of relevant work experience. An Employee accrues between ten and twenty hours of PTO each month. Employees may carry over up to 40 hours of accrued but unused PTO into the next calendar year at the end of any calendar year, provided that total PTO does not exceed 40 hours plus the PTO amount the Employee is eligible to earn in the coming year. Upon termination, eligible Employees may receive cash payments for accrued but unused PTO at a rate of one-twelfth of eligible PTO time for each fully completed month of service during the calendar year of termination (the "***PTO Cash-Out Obligations***").[8]

52.     As of the Petition Date, the Debtors estimate that the aggregate amount of accrued but unpaid PTO Cash-Out Obligations is approximately $231,500 (the "***Unpaid PTO Cash-Out***

---

[8]     To be eligible to receive cash payments for accrued but unused PTO, Employees must (i) not have been terminated for a violation of company policy or gross misconduct and (ii) have completed one full, continuous year of employment with the Debtors.

*Obligations*"), all or a portion of which may become due and owing in the first 21 days of these chapter 11 cases. The Debtors seek authority to pay any outstanding prepetition PTO Cash-Out Obligations and to continue offering and honoring PTO Cash-Out Obligations on a postpetition basis and in the ordinary course of business.

53.     In the ordinary course of business, the Debtors provide certain other paid and unpaid leave, including holidays, bereavement, jury duty, voting leave, military leave, leave provided for under the Family Medical Leave Act, and all legally required leaves (collectively, the "*Other Leave*"). Employees are not entitled to any cash payments in connection with the Other Leave.

54.     The Debtors believe that the continuation of the Leave Benefits in the ordinary course of business and consistent with past practice is essential to maintaining Employee morale during these chapter 11 cases. Further, the policies are broad-based programs upon which all Employees have come to depend. As a result, the Debtors seek authority to continue offering and honoring the Leave Benefits on a postpetition basis and in the ordinary course of business.

    E.     *401(k) Plan*

55.     The Debtors provide all eligible Employees with the ability to participate in a defined contribution 401(k) profit sharing plan (the "*401(k) Plan*"), which is administered by Principal Financial Group ("*Principal*"). The Debtors incur various administrative fees in connection with the 401(k) Plan (the "*401(k) Administrative Fees*"), including a monthly fee of approximately $10,000 paid to Principal for administering the 401(k) Plan, an annual fee of approximately $3,000 for maintaining Employee accounts, and a quarterly fee of approximately $7,000 for administrating discretionary investment advisory services.

56.     Employees generally are eligible to participate in a 401(k) Plan immediately upon employment. The 401(k) Plan generally provides for pre-tax deductions of compensation up to

limits set by the Internal Revenue Code, as well as for certain post-tax deductions. Employee contributions to the 401(k) Plan are deducted automatically from each paycheck and transferred to a trust established under the 401(k) Plan (collectively, the "***401(k) Deductions***," and together with the 401(k) Administrative Fees, the "***401(k) Obligations***"). The 401(k) Plan immediately vests at a rate of 100 percent. As of the Petition Date, approximately 47 Employees contribute to the 401(k) Plan and approximately 9 former Employees hold balances in the 401(k) Plan.

57.     The Debtors may make a discretionary contribution to the profit sharing plan component of the 401(k) Plan, not to exceed five percent of the Employee's eligible wages; however, the Debtors are not currently making any discretionary 401(k) contributions.

58.     As of the Petition Date, the Debtors estimate that the amount of accrued but unpaid obligations due on account of the 401(k) Plan is approximately $76,000 (the "***Unpaid 401(k) Obligations***"), consisting of approximately $40,000 unremitted 401(k) Deductions and approximately $36,000 unpaid 401(k) Administrative Fees, a portion of which will become due and owing within the first 21 days of these chapter 11 cases. The Debtors seek authority to remit and/or pay the Unpaid 401(k) Obligations in the ordinary course of business, consistent with past practices, and to continue remitting and/or paying the 401(k) Obligations on a postpetition basis in the ordinary course of business.

## III.     Additional Benefit Programs

### A.     *Employee Cellphone Program*

59.     The Debtors provide certain Employees and Provided Employees (as defined below) with the option to receive a company-issued cellphone or a $60 monthly reimbursement to cover the costs associated with a personal cellphone (the "***Employee Cellphone Program***") utilized for business-related communications. As of the Petition Date, approximately 35

US 8623191

Employees and 3 Provided Employees participate in the Employee Cellphone Program.   The Debtors pay approximately $3,800 per month on account of the Employee Cellphone Program.

60.     As of the Petition Date, the Debtors estimate that the amount of accrued but unpaid obligations arising under the Employee Cellphone Program is approximately $7,600 (the "***Unpaid Employee Cellphone Obligations***"), a portion of which will become due and owing within the first 21 days of these chapter 11 cases.  The Debtors seek authority to pay the Unpaid Employee Cellphone Obligations in the ordinary course of business, consistent with past practices, and to continue paying the Employee Cellphone Program obligations on a postpetition basis in the ordinary course of business.

### B.     Employee Vehicle Program

61.     The Debtors provide certain Employees with the option to receive a company-leased vehicle for field operations, a $6,000 vehicle allowance or a vehicle reimbursement based on mileage to cover the costs associated with a personal vehicle (collectively, the "***Employee Vehicle Program***") utilized for business-related purposes. As of the Petition Date, approximately 33 Employees participate in the Employee Vehicle Program.  The Debtors pay approximately $38,500 per month on account of the Employee Vehicle Program.

62.     As of the Petition Date, the Debtors estimate that the amount of accrued but unpaid obligations arising under the Employee Vehicle Program is approximately $57,600 (the "***Unpaid Employee Vehicle Obligations***"), a portion of which will become due and owing within the first 21 days of these chapter 11 cases.  The Debtors seek authority to pay the Unpaid Employee Vehicle Obligations in the ordinary course of business, consistent with past practices, and to continue paying the Employee Vehicle Program obligations and any associated costs on a postpetition basis in the ordinary course of business.

US 8623191

## THE DEBTORS' MANAGEMENT SERVICES

### I. The Services Agreement

63. Rockall Energy Holdings, LLC ("**Rockall**") is party to a Services Agreement[9] with 2CO EOR US LP ("**2CO**"). Pursuant to the Services Agreement, and in exchange for the Debtors' payment and reimbursement of certain costs, fees and expenses (the "**Services Agreement Obligations**"), 2CO, among other things, directs certain of its employees (the "**Provided Employees**")[10] to provide Rockall with certain executive management services and other related services (collectively, the "**Management Services**"). The Management Services include, among other things, business development services, financial services, hedging and derivatives services, and other services to manage and operate the Debtors' business and affairs.

64. The Management Services provided by the Provided Employees are critical to the Debtors' operations, the administration of these chapter 11 cases, and the Debtors' successful reorganization. The Provided Employees' skills, knowledge, and understanding of the Debtors' operations and infrastructure are essential to preserving operational stability and efficiency. The Provided Employees are highly trained personnel with specialized skills who are not easily replaced. Without the continued, uninterrupted Provided Employees' Management Services, the Debtors' business operations and restructuring efforts will suffer immediate and irreparable harm.

---

[9] "**Services Agreement**" means that certain *Services Agreement*, effective as of January 1, 2016, between Petro Harvester Oil & Gas, LLC and 2CO EOR US LP, as amended and assigned pursuant to that certain *Assignment, Assumption and Amendment Agreement*, dated as of June 7, 2018, among Petro Harvester Oil & Gas, LLC, Rockall Energy Holdings, LLC, and 2CO EOR US LP.

[10] The Provided Employees include: (i) Lewis Gillies, the Debtors' Chief Executive Officer; (ii) Graeme Miller, the Debtors' Chief Commercial Officer; and (iii) David Mirkin, the Debtors' Chief Financial Officer; and (iv) one additional employee that does not serve as management of the Debtors. Such non-management employee is also employed directly by the Debtors and, for purposes of clarity, receives (a) compensation from 2CO in her capacity as an employee of 2CO and (b) compensation and benefits from the Debtors in her capacity as an Employee.

65.     As described above, pursuant to the Services Agreement, 2CO provides Management Services to the Debtors and pays the salaries, bonuses,[11] benefits, and all other direct and indirect costs associated with the Provided Employees' Management Services.  The Services Agreement Obligations are paid by the Debtors, in the ordinary course of business, within the first 25 days of each month for services provided in such month.[12]  On average, Rockall pays approximately $125,000 to 2CO per month on account of the Services Agreement Obligations.

66.     As of the Petition Date, the Debtors estimate that the amount of accrued but unpaid Services Agreement Obligations is approximately $20,000 (the "***Unpaid Services Agreement Obligations***"), all of which will become due and owing in the first 21 days of these chapter 11 cases.  The Debtors seek authority to pay the Unpaid Services Agreement Obligations in the ordinary course of business and consistent with past practices, and to continue performing under the Services Agreement and paying the Services Agreement Obligations on a postpetition basis in the ordinary course of business.

67.     By this Motion, The Debtors do not seek authority to (i) pay (directly or indirectly) any amounts to "insiders" of the Debtors (as that term is defined in section 101(31) of the Bankruptcy Code) in violation of section 503(c) of the Bankruptcy Code or (ii) assume or reject the Services Agreement (to the extent such agreement constitutes an executory contract) under section 365 of the Bankruptcy Code, but the Debtors reserve their rights to request such relief in a separate motion or pleading.

---

[11]     For the avoidance of doubt, by this Motion, the Debtors do not seek authority to pay any such bonuses pursuant to this Motion.

[12]     Each month, 2CO invoices Rockall for the Services Agreement Obligations that are estimated to be incurred by 2CO in such month.  The following month's invoice then contains an adjustment to reflect actual costs incurred.

US 8623191

## II.    Executive Severance Plan

68.    Pursuant to the *Rockall Energy Holdings, LLC Executive Severance Plan*, as amended and restated effective as of July 17, 2020 (the "***Executive Severance Plan***"), the Debtors have agreed to provide severance benefits to certain executive and management individuals, including the Provided Employees (the "***Severance Plan Participants***").[13]   Pursuant to the Executive Severance Plan, upon termination of employment for Good Reason or without Cause (each as defined in the Executive Severance Plan), subject to certain limitations, the Severance Plan Participants are entitled to a cash payment equal to the product of (a) one and one-half (1.5) and (b) the sum of the applicable Participant's annualized base salary and target annual cash incentive bonus (such product, the "***Severance Benefits***").   The Severance Benefits are to be paid to the Severance Plan Participants within 60 days following termination of their employment.   As of the Petition Date, there are no amounts owed to the Severance Plan Participants on account of the Executive Severance Plan.

69.    For the avoidance of doubt, by this Motion the Debtors do not seek authority to (i) make any payments on account of the Executive Severance Plan, (ii) pay any amounts to "insiders" of the Debtors (as that term is defined in section 101(31) of the Bankruptcy Code) in violation of section 503(c) of the Bankruptcy Code, or (iii) assume or reject  the Executive Severance Plan (to the extent such agreement constitutes an executory contract) pursuant to section 365 of the Bankruptcy Code.

---

[13]    In addition to the Provided Employees, the Severance Plan Participants include the Chief Operating Officer, who is an Employee of the Debtors.

US 8623191

## BASIS FOR RELIEF REQUESTED

**I.      Sufficient Cause Exists to Authorize the Debtors to Honor the Compensation and Benefit Programs.**

*A.      Certain Compensation and Benefit Obligations are Entitled to Priority Treatment.*

70.      Sections 507(a)(4) and (a)(5) of the Bankruptcy Code entitle certain claims on account of the Compensation and Benefit Obligations owed to the Employees to priority treatment. 11 U.S.C. §§ 507(a)(4) and (a)(5).  As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan. 11 U.S.C. § 1129(a)(9)(B)  (requiring payment in full of certain allowed unsecured claims for (a) wages, salaries, or commissions, including severance, and sick leave pay earned by an individual, and (b) contributions to an employee benefit plan).  The Debtors submit that any such payments, if made, pursuant to this Motion would only affect the timing of payments to Employees.

*B.      Payment of Certain Compensation and Benefit Obligations is Required by Law.*

71.      The Debtors seek authority to pay the Withholding Obligations to the appropriate third-party entities.  These amounts principally represent Employee or Independent Contractor earnings that governments, Employees, the Independent Contractor, and judicial authorities have designated for deduction and withholding from the Workforce's paychecks.

72.      Certain Withholding Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from the Workforce's paychecks on another party's behalf.  *See* 11 U.S.C. §§ 541(b)(1) and (d); *see also Begier v. IRS*, 496 U.S. 53, 66-67 (1990) (concluding that withholding taxes are property held by a debtor in trust for another and are therefore not property of the debtor's estate).  Furthermore, federal and state laws require that the Debtors withhold certain tax payments from the Workforce's paychecks and to pay such amounts to the appropriate taxing authority.  26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon*

*Steel Corp*., 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co*., 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).  Because the Withholding Obligations may not be property of the Debtors' estates, the Debtors request that the Court authorize them to transmit the Withholding Obligations on account of the Workforce to the proper parties in the ordinary course of business. *See In re Dameron*, 155 F.3d 718, 721 (4th Cir. 1998).  The Debtors therefore request that the Court recognize that the Withholding Obligations are not property of the Debtors' estates and, regardless of whether the Debtors collected the amounts prior to the Petition Date, authorize the Debtors to transmit such monies to the proper parties in the ordinary course of business.

73.  Similarly, applicable laws require the Debtors to maintain the Workers' Compensation Program.  For example, if the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states.  Payment of all Workers' Compensation Program amounts is therefore crucial to the Debtors' continued operations and the success of the Debtors' ongoing chapter 11 process.

## II.    Payment of the Compensation and Benefit Obligations and the Services Agreement Obligations is Proper Pursuant to Section 363(b) of the Bankruptcy Code.

74.  Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose" justifies the proposed use of property.  *In re Montgomery Ward Holding Corp*., 242 B.R. 147, 153 (D. Del. 1999); *see also In re Phoenix Steel Corp*., 82 B.R. 334, 335-36 (Bankr. D. Del. 1987).  Moreover, "[w]here the

26

debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task"). Thus, if a transaction satisfies the business judgment rule, it should be approved under section 363(b) of the Bankruptcy Code.

75.     Furthermore, section 105(a) of the Bankruptcy Code provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, pursuant to the "doctrine of necessity." 11 U.S.C. § 105(a). The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code, and further supports the relief requested herein. *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (authorizing the payment of certain prepetition claims pursuant to the "doctrine of necessity") *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court . . . recognize[s] the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"). Additionally, Bankruptcy Rule 6003 implies that the payment of prepetition obligations may be permissible within the first twenty-one days of a case where doing so is "necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.

76.     Payment of the Compensation and Benefit Obligations and the Services Agreement Obligations is warranted under this authority and the facts of these chapter 11 cases. The

Workforce and Provided Employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor unpaid Compensation and Benefit Obligations and Services Agreement Obligations, as applicable. Additionally, continuing ordinary course benefits will help maintain morale and minimize the adverse effect of the commencement of these chapter 11 cases on the Debtors' ongoing business operations.

77.     Moreover, the Workforce and Provided Employees provide the Debtors with services necessary to conduct the Debtors' businesses, and the Debtors believe that absent the payment of the obligations owed to the Workforce and Provided Employees, the Debtors may experience turnover and instability at this critical time in these chapter 11 cases. The Debtors believe that without these payments, the Workforce and Provided Employees may become demoralized and unproductive because of the potential significant financial strain and other hardships the Workforce and Provided Employees may face. The Workforce and Provided Employees may then elect to seek alternative employment opportunities. Additionally, a significant portion of the value of the Debtors' businesses is tied to the skills of the Workforce and Provided Employees, which cannot be replaced without significant efforts—which efforts may not be successful given the overhang of these chapter 11 cases. Enterprise value may be materially impaired to the detriment of all stakeholders in such a scenario. The Debtors therefore believe that (i) payment of the prepetition Compensation and Benefit Obligations and Services Agreement Obligations and (ii) continuation of payment of the same on a postpetition basis is a necessary and critical element of the Debtors' efforts to preserve value and will give the Debtors the greatest likelihood of retaining their Workforce and Provided Employees throughout these chapter 11 cases.

US 8623191

78.     Courts in the Fifth Circuit have granted similar relief to that requested in this Motion in previous chapter 11 cases.  *See, e.g., In re Cici's Holdings, Inc.*, Case No. 21-30146 (SGJ) (Bankr. N.D. Tex. Jan. 27, 2021) (authorizing debtors to continue compensation and benefit programs and pay certain prepetition obligations related thereto on a postpetition basis); *In re Studio Movie Grill Holdings, LLC*, No. 20-32622 (SGJ) (Bankr. N.D. Tex. Oct. 27, 2020) (same); *In re TriVascular Sales LLC*, No. 20-31840 (SGJ) (Bankr. N.D. Tex. Aug. 19, 2020) (same); *In re Lilis Energy Inc.*, Case No,. 20-33274 (MI) (Bankr. S.D. Tex. June 29, 2020) (same); *In re Tuesday Morning Corp.*, No. 20-31476 (HDH) (Bankr. N.D. Tex. May 28, 2020) (same); *In re Unit Corp.*, No. 20-32740 (DRJ) (Bankr. S.D. Tex. May 26, 2020) (same); *In re Carbo Ceramics Inc.*, No. 20-31973 (MI) (Bankr. S.D. Tex. Mar. 30, 2020) (same); *In re The LaSalle Grp., Inc.*, No. 19-31484 (SGJ) (Bankr. N.D. Tex. May 21, 2019) (same); *In re PHI, Inc.*, No. 19-30923 (HDH) (Bankr. N.D. Tex. Apr. 11, 2019) (same); *In re Taco Bueno Restaurants, Inc.*, No. 18-33678 (SGJ) (Bankr. N.D. Tex. Nov. 30, 2018) (same).  Accordingly, the Debtors respectfully request that the Court authorize the Debtors to pay and continue paying the Compensation and Benefit Obligations and the Services Agreement Obligations in the ordinary course of business.

**III.     A Limited Waiver of the Automatic Stay for the Workers' Compensation Program is Appropriate in this Case.**

79.     Section 362(a) of the Bankruptcy Code operates to stay "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . ."  11 U.S.C. § 362(a)(1).

80.     Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause."  *Id.* at

29

US 8623191

§ 362(d)(1). Cause exists here to modify the automatic stay to permit the Employees and/or the Independent Contractor to proceed with workers' compensation claims in the appropriate judicial or administrative forum. Staying the workers' compensation claims could have a detrimental effect on the financial well-being and morale of the Workforce. Further, if the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states.

## IV. The Debtors' Banks Should Be Authorized to Honor Checks, Wire Transfers, and Electronic Fund Transfers.

81. The Debtors have sufficient liquidity to pay the amounts described in this Motion in the ordinary course of business. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks, wire transfers, or electronic fund transfer requests as relating to an authorized payment in respect of the Compensation and Benefit Obligations and the Services Agreement Obligations. Accordingly, the Debtors believe that there is minimal risk that checks, wire transfers, and electronic fund transfer requests that the Court has not authorized will be honored inadvertently. The Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks, wire transfers, or electronic fund transfer requests in respect of the relief requested in this Motion. Further, the Debtors also seek authority to issue new postpetition checks, wire transfers, or electronic fund transfer requests to replace any prepetition checks, wire transfers, or funds transfers that may be dishonored or rejected as a result of the commencement of these chapter 11 cases.

## REQUEST FOR IMMEDIATE RELIEF

82. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."

US 8623191

For the reasons discussed herein and in the First Day Declarations, authorizing the Debtors to pay certain prepetition obligations on account of the Compensation and Benefit Programs and Services Agreement in the ordinary course of business and to continue to administer the Compensation and Benefit Programs and perform under the Services Agreement, as well as granting the other relief requested herein, is critical to enabling the Debtors to effectively transition to operating as chapter 11 debtors. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations and significantly impact the Debtors' ability to reorganize swiftly and efficiently. As such, the relief requested is necessary in order for the Debtors to operate their businesses in the ordinary course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

83. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

84. For the avoidance of doubt, nothing in this Motion is intended to be, nor should it be construed as (a) an implication or admission as to the validity or priority of any claim or lien against the Debtors, (b) an impairment or waiver of the Debtors' or any other party in interest's rights to contest or dispute any such claim or lien, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any proposed order, or (e) a waiver of the Debtors' or any other party

US 8623191

in interest's rights under the Bankruptcy Code or any other applicable law. In addition, nothing in this Motion or the relief requested herein should be interpreted as the assumption or rejection of any executory contract or unexpired lease under section 365 of the Bankruptcy Code.

## NOTICE

85.     Notice of this Motion has been provided by delivery to: (a) the Office of the United States Trustee for the Northern District of Texas; (b) the Term Loan Agent; (c) the DIP Agent; (d) Cleary Gottlieb Steen & Hamilton, as counsel to the Term Loan Agent and the DIP Agent; (e) Shell; (f) Reed Smith LLP, as counsel to Shell; (g) the Debtors' 20 largest unsecured creditors (on a consolidated basis); (h) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002; (i) the Internal Revenue Service; (j) all other applicable government agencies to the extent required by the Bankruptcy Rules or the N.D. Tex. L.B.R; and (k) the financial institutions that administer the Debtors' cash management functions. In light of the nature of the relief requested in this Motion, the Debtors submit that no further notice is necessary.

## NO PRIOR REQUEST

86.     No prior motion for the relief requested herein has been made to this Court or any other court.

US 8623191

## **PRAYER**

The Debtors respectfully request that the Court enter the Interim Order and the Final Order, substantially in the forms attached hereto as **Exhibits A** and **B**, respectively, and grant them such other and further relief to which the Debtors may be justly entitled.

Dated:  March 9, 2022
Dallas, Texas

/s/  *Michael A. Garza*
**VINSON & ELKINS LLP**
Michael A. Garza (Texas Bar No. 24126797)
Matthew J. Pyeatt (Texas Bar No. 24086609)
Trevor G. Spears (Texas Bar No. 24106681)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel:  214.220.7700
Fax: 214.999.7787
mgarza@velaw.com; mpyeatt@velaw.com;
tspears@velaw.com

- and -

David S. Meyer (*pro hac vice* pending)
George R. Howard (*pro hac vice* pending)
Lauren R. Kanzer (*pro hac vice* pending)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel:  212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; ghoward@velaw.com;
lkanzer@velaw.com

**PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 9, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

 _/s/ Michael A. Garza_
One of Counsel

## EXHIBIT A

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 22-90000 (MXM) |
| | § | |
| ROCKALL ENERGY HOLDINGS, LLC, | § | (Chapter 11) |
| *et al.*, | § | |
| | § | (Joint Administration Requested) |
| | § | |
| Debtors[1] | § | Re: Docket No. ___ |

**INTERIM ORDER (I) AUTHORIZING THE**
**DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER**
**COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE**
**EMPLOYEE BENEFIT PROGRAMS, AND (II) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Arrow Rock Energy, LLC (7549), Petro Harvester Operating Company, LLC (2136), Rockall Agent Corp. (1653), Rockall Energy Holdings, LLC (5784), Rockall Energy, LLC (6340), Rockall EOR, LLC (4136), Rockall Exploration Company, LLC (0547), Rockall Intermediate, Inc. (9759), Rockall LA, LLC (4270), Rockall Laurel, LLC (1178), Rockall Midstream, LLC (0917), Rockall MS, LLC (0740), Rockall ND, LLC (9311), Rockall Pine Prairie, LLC (5799), White Marlin Investment Company, LLC (9987), and White Marlin Midstream, LLC (1466). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 5005 LBJ Freeway, Suite 700, Dallas, TX 75244.

US 8623191

Upon the Motion[2] filed by the above-referenced debtors and debtors in possession (collectively, the "**Debtors**") for entry of an interim order (the "**Interim Order**") (i) authorizing the Debtors to (a) pay all prepetition wages, salaries, other compensation, and reimbursable expenses on account of the Compensation and Benefit Programs and (b) continue to administer the Compensation and Benefits Programs in the ordinary course of business, including payment of prepetition obligations related thereto and (ii) granting related relief, all as more fully set forth in the Motion and in the First Day Declarations; and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as contemplated by Bankruptcy Rule 6003; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors and their respective estates, creditors, and other parties in interest; and the Court having found that proper and adequate notice of the Motion and hearing thereon has been given and that no other or further notice is necessary; and the Court having found that good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation upon the Motion and all of the proceedings had before the Court in connection with the Motion, it is HEREBY ORDERED THAT:

1.      The final hearing (the "**Final Hearing**") on the Motion shall be held on _____, 2022, at _:__ _.m., prevailing Central Time.  Any objections or responses to entry of a final order

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Motion.

on the Motion shall be filed on or before 5:00 p.m., prevailing Central Time, on _____, 2022, and shall be served on:  (a) the Debtors, 5005 LBJ Freeway, Suite 700, Dallas, TX 75244, Attn: David Mirkin; (b) proposed counsel to the Debtors, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, TX 75201, Attn:  Michael A. Garza and Matthew J. Pyeatt, and 1114 Avenue of the Americas, 32nd Floor, New York, New York 10036, Attn:  Lauren R. Kanzer; (c) counsel to the Term Loan Agent and the DIP Agent, Cleary Gottlieb Steen & Hamilton, One Liberty Plaza, New York, NY 10006, Attn:  Sean A. O'Neal and Jane VanLare; (d) counsel to Shell, Reed Smith LLP, 2850 N. Harwood Street, Suite 1500, Dallas, TX 75201, Attn:  Michael P. Cooley and Devan Dal Col; (e) the Office of the United States Trustee for the Northern District of Texas, 1100 Commerce Street, Room 976, Dallas, TX  75242; and (f) the official committee of unsecured creditors (if any) appointed in these chapter 11 cases and their counsel.

2.      The Debtors are authorized to pay and honor prepetition amounts related to the Compensation and Benefit Programs and the Services Agreement and to continue paying amounts related to the Compensation and Benefit Programs and the Services Agreement in the ordinary course of business; *provided* that the Debtors shall not honor any prepetition obligations related to the Compensation and Benefit Programs or Services Agreement owed to any member of the Workforce or the Provided Employees, as applicable, that exceeds the priority amounts set forth in sections 507(a)(4) and (a)(5) of the Bankruptcy Code.

3.      The Debtors are authorized to continue the Compensation and Benefit Programs in the ordinary course of business during these chapter 11 cases and without the need for further Court approval, subject to applicable law; *provided* that, during these chapter 11 cases, (a) the amount paid by the Debtors to 2CO shall not exceed $125,000 in any calendar month and (b) the

Debtors shall not pay any other amounts to the Provided Employees who serve as management of the Debtors (other than pursuant to any existing Compensation and Benefit Programs).

4.      The Debtors, with the prior approval of their chief restructuring officer, are authorized to modify, change, and discontinue the Compensation and Benefit Programs, and to implement new programs, policies, and benefits; *provided*, *however*, that notwithstanding the foregoing and anything to the contrary in this Interim Order, the Debtors shall not modify or change any Compensation and Benefit Program, or implement any new program, policies, or benefits, that is or would be received by any executive officer of any of the Debtors.

5.      For the avoidance of doubt, the Debtors shall not directly or indirectly pay any amounts to "insiders" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, in violation of section 503(c) of the Bankruptcy Code under the Services Agreement.  The Debtors shall not directly or indirectly  pay any amounts to "insiders" of the Debtors under the Executive Severance Plan without seeking authority from the Court.  Nothing herein shall be deemed to authorize the payment of any amounts in violation of section 503(c) of the Bankruptcy Code.

6.      Pursuant to section 362(d) of the Bankruptcy Code:  (a) the Workforce is authorized to proceed with their workers' compensation claims in the appropriate judicial or administrative forum under the Workers' Compensation Program, and the Debtors are authorized to pay all undisputed prepetition amounts relating thereto in the ordinary course of business; and (b) the notice requirements pursuant to Bankruptcy Rule 4001(d) with respect to clause (a) are waived. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program and any such claims must be pursued in accordance with the applicable Workers' Compensation Program.  Payment on account of any recoveries obtained in connection with a

claim brought pursuant to this paragraph is limited to the terms and conditions of the applicable Workers' Compensation Program, including with regard to any policy limits or caps.

7.      The Debtors shall maintain a matrix/schedule of payments made pursuant to this Interim Order, including the following information: (a) the names of the payee; (b) the nature, date and amount of the payment; (c) the category or type of payment as characterized in the Motion; and (d) the Debtor or Debtors that made the payment.  The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee, the DIP Agent, the Term Loan Agent, and any statutory committee appointed in these chapter 11 cases every 30 days beginning upon entry of this Interim Order.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

9.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

10.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Compensation and Benefit Programs or the Services Agreement.

11.     Notwithstanding the relief granted herein or actions taken hereunder, nothing contained in the Motion or this Interim Order or any payment made pursuant to this Interim Order

shall constitute, nor is it intended to constitute, an implication or admission as to the validity or priority of any claim or lien against the Debtors, a waiver of the Debtors', or any party in interest's, rights to subsequently dispute such claim or lien, a promise or requirement to pay any prepetition claim, an implication or admission that any particular claim is of a type specified or defined in the Motion or any proposed order, a waiver of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law, or the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

12.     Notwithstanding anything in this Interim Order to the contrary, any payment to be made, or any authorization contained hereunder, shall be subject to the terms of any orders authorizing debtor-in-possession financing or the use of cash collateral approved by this Court in these chapter 11 cases (including with respect to any approved budget governing or relating to such use) (such order, collectively with any such approved budget, the "*DIP Order*"); and to the extent there is any inconsistency between the terms of such DIP Order and any action taken or proposed to be taken hereunder, the terms of such DIP Order shall control.

13.     Bankruptcy Rule 6003(b) has been satisfied.

14.     The requirements of Bankruptcy Rule 6004(a) are waived.

15.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon entry of this Interim Order.

16.     The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

### # # # End of Order # # #

**Order submitted by:**

**VINSON & ELKINS LLP**
Michael A. Garza (Texas Bar No. 24126797)
Matthew J. Pyeatt (Texas Bar No. 24086609)
Trevor G. Spears (Texas Bar No. 24106681)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
mgarza@velaw.com
mpyeatt@velaw.com
tspears@velaw.com

- and –

David S. Meyer (*pro hac vice* pending)
George R. Howard (*pro hac vice* pending)
Lauren R. Kanzer (*pro hac vice* pending)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel: 212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com
ghoward@velaw.com
lkanzer@velaw.com

**PROPOSED ATTORNEYS FOR**
**THE DEBTORS AND DEBTORS IN POSSESSION**

**<u>EXHIBIT B</u>**

**Proposed Final Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22-90000 (MXM)** |
| | § | |
| **ROCKALL ENERGY HOLDINGS, LLC,** | § | **(Chapter 11)** |
| ***et al.*,** | § | |
| | § | **(Joint Administration Requested)** |
| | § | |
| **Debtors.** [1] | § | **Re: Docket No. ___** |

**FINAL ORDER (I) AUTHORIZING THE
DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER
COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE
EMPLOYEE BENEFIT PROGRAMS, AND (II) GRANTING RELATED RELIEF**

Upon the Motion[2] filed by the above-referenced debtors and debtors in possession

(collectively, the "***Debtors***") for entry of an order (the "***Final Order***") (i) authorizing the Debtors

---

[1]       The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are:  Arrow Rock Energy, LLC (7549), Petro Harvester Operating Company, LLC (2136), Rockall Agent Corp. (1653), Rockall Energy Holdings, LLC (5784), Rockall Energy, LLC (6340), Rockall EOR, LLC (4136), Rockall Exploration Company, LLC (0547), Rockall Intermediate, Inc. (9759), Rockall LA, LLC (4270), Rockall Laurel, LLC (1178), Rockall Midstream, LLC (0917), Rockall MS, LLC (0740), Rockall ND, LLC (9311), Rockall Pine Prairie, LLC (5799), White Marlin Investment Company, LLC (9987), and White Marlin Midstream, LLC (1466).  The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is:  5005 LBJ Freeway, Suite 700, Dallas, TX 75244.

[2]       Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Motion.

US 8623191

to (a) pay all prepetition wages, salaries, other compensation, and reimbursable expenses on account of the Compensation and Benefit Programs and (b) continue to administer the Compensation and Benefits Programs in the ordinary course of business, including payment of prepetition obligations related thereto and (ii) granting related relief, all as more fully set forth in the Motion and in the First Day Declarations; and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having entered the Interim Order; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors and their respective estates, creditors, and other parties in interest; and the Court having found that proper and adequate notice of the Motion and hearing thereon has been given and that no other or further notice is necessary; and the Court having found that good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation upon the Motion and all of the proceedings had before the Court in connection with the Motion, it is HEREBY ORDERED THAT:

1.      The Debtors are authorized to pay and honor prepetition amounts related to the Compensation and Benefit Programs and the Services Agreement and to continue paying amounts related to the Compensation and Benefit Programs and the Services Agreement in the ordinary course of business; *provided* that the Debtors shall not honor any prepetition obligations related to the Compensation and Benefit Programs or Services Agreement owed to any member of the Workforce or the Provided Employees, as applicable, that exceeds the priority amounts set forth in sections 507(a)(4) and (a)(5) of the Bankruptcy Code.

2.      The Debtors are authorized to continue the Compensation and Benefit Programs in the ordinary course of business during these chapter 11 cases and without the need for further Court approval, subject to applicable law; *provided* that, during these chapter 11 cases, (a) the amount paid by the Debtors to 2CO shall not exceed $125,000 in any calendar month and (b) the Debtors shall not pay any other amounts to the Provided Employees who serve as management of the Debtors (other than pursuant to any existing Compensation and Benefit Programs).

3.      The Debtors, with the prior approval of their chief restructuring officer, are authorized to modify, change, and discontinue the Compensation and Benefit Programs, and to implement new programs, policies, and benefits; *provided*, *however*, that notwithstanding the foregoing and anything to the contrary in this Final Order, the Debtors shall not modify or change any Compensation and Benefit Program, or implement any new program, policies, or benefits, that is or would be received by any executive officer of any of the Debtors.

4.      For the avoidance of doubt, the Debtors shall not directly or indirectly pay any amounts to "insiders" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, in violation of section 503(c) of the Bankruptcy Code under the Services Agreement.  The Debtors shall not directly or indirectly  pay any amounts to "insiders" of the Debtors under the Executive Severance Plan without seeking authority from the Court.  Nothing herein shall be deemed to authorize the payment of any amounts in violation of section 503(c) of the Bankruptcy Code.

5.      Pursuant to section 362(d) of the Bankruptcy Code:  (a) the Workforce is authorized to proceed with their workers' compensation claims in the appropriate judicial or administrative forum under the Workers' Compensation Program, and the Debtors are authorized to pay all undisputed prepetition amounts relating thereto in the ordinary course of business; and (b) the

US 8623191

notice requirements pursuant to Bankruptcy Rule 4001(d) with respect to clause (a) are waived. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program and any such claims must be pursued in accordance with the applicable Workers' Compensation Program. Payment on account of any recoveries obtained in connection with a claim brought pursuant to this paragraph is limited to the terms and conditions of the applicable Workers' Compensation Program, including with regard to any policy limits or caps.

6. The Debtors shall maintain a matrix/schedule of payments made pursuant to this Final Order, including the following information: (a) the names of the payee; (b) the nature, date and amount of the payment; (c) the category or type of payment as characterized in the motion; and (d) the Debtor or Debtors that made the payment. The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee, the DIP Agent, the Term Loan Agent, and any statutory committee appointed in these chapter 11 cases every 30 days beginning upon entry of this Final Order.

7. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

8. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

9. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored

US 8623191

as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Compensation and Benefit Program or the Services Agreement.

10. Notwithstanding the relief granted herein or actions taken hereunder, nothing contained in the Motion or this Final Order or any payment made pursuant to this Final Order shall constitute, nor is it intended to constitute, an implication or admission as to the validity or priority of any claim or lien against the Debtors, a waiver of the Debtors', or any party in interest's, rights to subsequently dispute such claim or lien, a promise or requirement to pay any prepetition claim, an implication or admission that any particular claim is of a type specified or defined in the Motion or any proposed order, a waiver of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law, or the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

11. Notwithstanding anything in this Final Order to the contrary, any payment to be made, or any authorization contained hereunder, shall be subject to the terms of any orders authorizing debtor-in-possession financing or the use of cash collateral approved by this Court in these chapter 11 cases (including with respect to any approved budget governing or relating to such use) (such order, collectively with any such approved budget, the "***DIP Order***"); and to the extent there is any inconsistency between the terms of such DIP Order and any action taken or proposed to be taken hereunder, the terms of such DIP Order shall control.

12. The requirements of Bankruptcy Rule 6004(a) are waived.

13. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon entry of this Final Order.

14. The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

**# # # END OF ORDER # # #**

**Order submitted by:**

**VINSON & ELKINS LLP**
Michael A. Garza (Texas Bar No. 24126797)
Matthew J. Pyeatt (Texas Bar No. 24086609)
Trevor G. Spears (Texas Bar No. 24106681)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
mgarza@velaw.com
mpyeatt@velaw.com
tspears@velaw.com

- and –

David S. Meyer (*pro hac vice* pending)
George R. Howard (*pro hac vice* pending)
Lauren R. Kanzer (*pro hac vice* pending)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel: 212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com
ghoward@velaw.com
lkanzer@velaw.com

**PROPOSED ATTORNEYS FOR**
**THE DEBTORS AND DEBTORS IN POSSESSION**