Michael A. Garza (Texas Bar No. 24126797)
Matthew J. Pyeatt (Texas Bar No. 24086609)
Trevor G. Spears (Texas Bar No. 24106681)
**VINSON & ELKINS LLP**
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
mgarza@velaw.com; mpyeatt@velaw.com;
tspears@velaw.com
**PROPOSED ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION**

David S. Meyer (*pro hac vice* pending)
George R. Howard (*pro hac vice* pending)
Lauren R. Kanzer (*pro hac vice* pending)
**VINSON & ELKINS LLP**
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel: 212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; ghoward@velaw.com;
lkanzer@velaw.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22-90000 (MXM)** |
| | § | |
| **ROCKALL ENERGY HOLDINGS, LLC,** | § | **(Chapter 11)** |
| *et al.*, | § | |
| | § | **(Joint Administration Requested)** |
| | § | **(Emergency Hearing Requested)** |
| **Debtors.**[1] | § | |

## EMERGENCY MOTION OF
## DEBTORS FOR ENTRY OF ORDERS
## (A)(I) APPROVING BIDDING PROCEDURES,
## (II) SCHEDULING THE BID DEADLINES AND
## THE AUCTION, (III) SCHEDULING HEARINGS
## AND OBJECTION DEADLINES WITH RESPECT TO
## THE SALE, (IV) APPROVING THE FORM AND MANNER OF
## NOTICE THEREOF, (V) APPROVING CONTRACT ASSUMPTION
## AND ASSIGNMENT PROCEDURES, AND (VI) GRANTING RELATED
## RELIEF AND (B)(I) APPROVING THE SALE OF THE ASSETS FREE AND
## CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES,
## (II) APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF

---

[1]     The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are:  Arrow Rock Energy, LLC (7549), Petro Harvester Operating Company, LLC (2136), Rockall Agent Corp. (1653), Rockall Energy Holdings, LLC (5784), Rockall Energy, LLC (6340), Rockall EOR, LLC (4136), Rockall Exploration Company, LLC (0547), Rockall Intermediate, Inc. (9759), Rockall LA, LLC (4270), Rockall Laurel, LLC (1178), Rockall Midstream, LLC (0917), Rockall MS, LLC (0740), Rockall ND, LLC (9311), Rockall Pine Prairie, LLC (5799), White Marlin Investment Company, LLC (9987), and White Marlin Midstream, LLC (1466).  The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is:  5005 LBJ Freeway, Suite 700, Dallas, TX 75244.

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***"), file this *Emergency Motion for Entry of Orders (A)(I) Approving Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Scheduling Hearings and Objection Deadlines With Respect to the Sale, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief; and (B)(I) Approving the Sale of the Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* (the "***Motion***"), and in support respectfully submit the following:

## PRELIMINARY STATEMENT

1.     The Debtors filed these chapter 11 cases after obtaining the support of the Term Loan Agent[2] and the Secured Parties for a comprehensive in-court restructuring strategy that contemplates the Debtors' continuation of their prepetition sale and marketing efforts through a court-approved, competitive bidding and auction process designed to maximize value for all stakeholders.  As described more fully in the First Day Declarations[3] and in the Bonebrake Declaration, after extensive, arm's-length negotiations, the Debtors, the Term Loan Agent, and the Secured Parties entered into that certain *Restructuring Support Agreement* (the "***RSA***") on March 9, 2022, which sets forth the agreed-upon terms for the Debtors to pursue a consensual in-

---

[2]     "***Term Loan Agent***" means Goldman Sachs Bank USA, in its capacity as administrative agent and collateral agent under that certain *Credit and Guaranty Agreement*, dated as of September 20, 2018, among Rockall Energy, LLC, as borrower, Rockall Energy Holdings, LLC and certain of their respective subsidiaries, as guarantors, the Term Loan Agent, and the lenders party thereto from time to time (the "***Term Loan Lenders***") (as amended, modified, or supplemented from time to time) (the "***Term Loan Credit Agreement***").

[3]     Defined terms used but not immediately defined shall have the meanings subsequently ascribed to such terms in this Motion, or as defined in the Bidding Procedures Order or the Bidding Procedures, as applicable.

US 8633219

court sales process and alternative equitization which, subject to the terms of the RSA and the Bidding Procedures, will be implemented pursuant to the *Debtors' Joint Prepackaged Chapter 11 Plan* (the "***Chapter 11 Plan***"), filed contemporaneously herewith.

2.      In consultation with the Term Loan Agent and its advisors, the Debtors began exploring a process to sell some or all of their assets (the "***Out-of-Court Sales Process***") in September 2021.  During the marketing phase of the Out-of-Court Sales Process, the Debtors and its advisors targeted over 150 strategic and/or financial parties, resulting in 28 parties executing NDAs and accessing the data room.  Of these 28 parties, six submitted initial indications of interest. Ultimately, bids received in the Out-of-Court Sales Process were not acceptable and the Debtors determined not to pursue the Out-of-Court Sales Process any further.  Subsequently, in December 2021, the Debtors engaged Lazard Frères & Co. LLC ("***Lazard***") as investment banker in connection with the Debtors' exploration of liability management transactions.  On March 4, 2022, Lazard re-commenced the Debtors' Out-of-Court Sales Process and has since worked to engage potential financial and strategic buyers to solicit their interest in purchasing the Debtors' Assets, either in whole or in part.

3.      The Debtors are pursuing their restructuring goals—including the sale and marketing process proposed in this Motion and in the Bidding Procedures—on an accelerated timeline as further outlined in the RSA and memorialized in the milestones under the proposed debtor-in-possession financing facility (the "***DIP Facility***").  The Sale Schedule set forth in this Motion corresponds with such milestones and builds upon the momentum of the Out-of-Court Sales Process and prepetition marketing process and promotes an efficient path to consummating a sale within 80 days of the Petition Date.  This schedule will facilitate an open, orderly, and efficient process for the solicitation and evaluation of Bids and avoids a prolonged post-petition

US 8633219

marketing period that could add unnecessary administrative expense to the detriment of the Debtors' estates and stakeholders. At the same time, the Sale Schedule and proposed case timeline provide ample time for parties in interest to receive appropriate notice of and opportunity to object to confirmation of the Chapter 11 Plan and entry of the Sale Order.

4.      To maximize the Debtors' flexibility with respect to any potential Sale(s), the Debtors are marketing for sale and will consider Bids for all or substantially all of the Debtors' Assets and for subsets of the Debtors' Assets, and will further consider Bids in the form of a reorganization or acquisition of the Debtors' equity interests, or a merger or other combination with one or more Successful Bidders. The RSA, the Chapter 11 Plan, and the Bidding Procedures contemplate that a Sale to a Successful Bidder will be implemented through the Chapter 11 Plan pursuant to the plan sale provisions of section 1123(a)(5)(D) of the Bankruptcy Code, although in certain circumstances such a Sale may be implemented pursuant to a sale order under section 363 of the Bankruptcy Code.

5.      Importantly, the Term Loan Agent and the Secured Parties, the Debtors' largest secured creditors, support the proposed marketing and sales process, including the proposed Bidding Procedures and Sale Schedule. To further increase the competitiveness of the sales process, the Debtors seek authority to select one or more parties to act as a Stalking Horse Bidder and to provide any such Stalking Horse Bidder with Bid Protections in the form of a break-up fee and/or expense reimbursement, as described in further detail below. The proposed Bidding Procedures, including such Bid Protections, and Sale Schedule are critical to achieving the Debtors' paramount goal of maximizing the value of their estates for the benefit of their stakeholders. Accordingly, the Debtors respectfully request that the Court enter the Bidding

Procedures Order and, ultimately, approve any Sale that is achieved as a result of the Bidding Procedures.

## JURISDICTION AND VENUE

6.     The United States Bankruptcy Court for the Northern District of Texas (the "***Court***") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8.     The statutory bases for the relief requested herein are sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code (the "***Bankruptcy Code***"), Bankruptcy Rules 2002, 6003, 6004, 6006, 9007, and 9014 and rules 2002-1 and 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "***N.D. Tex. L.B.R.***").

## EMERGENCY CONSIDERATION

9.     In accordance with the N.D. Tex. L.B.R. and *General Order Regarding Procedures for Complex Chapter 11 Cases,* the Debtors request emergency consideration of this Motion.  As set forth more fully in the First Day Declarations and the Bonebrake Declaration, the Debtors seek to implement the in-court marketing and sales process in accordance with the terms of the RSA and the milestones under the DIP Facility, which contemplate consummating a proposed sale within 80 days of the Petition Date as a continuation of the Out-of-Court Sales Process.  Obtaining

5

US 8633219

approval of the Bidding Procedures (and accompanying sale-related deadlines) at the outset of these chapter 11 cases will encourage prospective bidders to engage in the sales process expeditiously and will provide certainty to potential bidders regarding the bid process and related Sale Schedule. It will further enable the Debtors to limit administrative expenses, thereby maximizing recovery for all stakeholders. Moreover, to promote further expediency in the process, the Debtors have included in the Bidding Procedures customary consultation, access, and other similar rights for any official committee of unsecured creditors (a "***Committee***"), to the extent such a Committee is appointed in these chapter 11 cases. Any delay in granting the relief requested herein could chill the sales process which would cause immediate and irreparable harm. As such, the Debtors' believe that emergency consideration is necessary and request that the approval of the Bidding Procedures and related relief requested in the Bidding Procedures Order be heard at the Debtors' first day hearings.

## **BACKGROUND**

10. Rockall Energy Holdings, LLC, together with the other Debtors, is a privately held energy company, headquartered in Dallas, Texas. The Debtors are primarily engaged in oil and natural gas exploration and production, with over 100,000 net acres located in the Williston Basin in North Dakota and the Salt Basin plays in Louisiana and Mississippi. The Debtors also own assets in Mississippi that they believe would be well-suited to develop a carbon capture utilization and storage business, including enhanced oil recovery and $CO_2$ sequestration. During these chapter 11 cases, the Debtors will be marketing for sale all of their assets, continuing the marketing and sales process that began prior to the date hereof.

11. On the date hereof (the "***Petition Date***"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses

US 8633219

and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no request for the appointment of a trustee or examiner has been made and no official committee of unsecured creditors has been appointed in these chapter 11 cases.

12.     Additional information regarding the Debtors and these chapter 11 cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these chapter 11 cases, is set forth in the *Declaration of David Mirkin in Support of Chapter 11 Petitions and First Day Pleadings* (the "***Mirkin Declaration***") and the *Declaration of Scott Pinsonnault in Support of Chapter 11 Petitions and First Day Pleadings* (the "***Pinsonnault Declaration***" and together with the Mirkin Declaration, the "***First Day Declarations***"), each filed contemporaneously herewith and incorporated herein by reference. In further support of this Motion, the Debtors rely upon the *Declaration of Kevin Bonebrake in Support of Bidding Procedures and Sale Motion* (the "***Bonebrake Declaration***"), filed contemporaneously herewith and incorporated herein by reference.[4]

## RELIEF REQUESTED

13.     By this Motion, the Debtors (a) seek entry of an order (the "***Bidding Procedures Order***"), substantially in the form attached hereto as **Exhibit A**, (i) authorizing and approving the proposed bidding procedures (the "***Bidding Procedures***"), attached to the Bidding Procedures Order as **Exhibit 1**, in connection with one or more sales (each, a "***Sale***") of all, substantially all, or any combination of the Debtors' assets (collectively, the "***Assets***") free and clear of all claims, liens, and encumbrances; (ii) scheduling an auction in connection with the Sale (the "***Auction***"),

---

[4]     Capitalized terms used but not otherwise defined in this Motion, the Bidding Procedures Order, or the Bidding Procedures shall have the meaning set forth in the First Day Declarations and Bonebrake Declaration, as applicable.

US 8633219

hearing dates in connection with approval of the Sale (the "***Sale Hearing***"), and the objection deadline for the Sale Hearing (collectively, the "***Sale Schedule***"); (iii) approving the form and manner of notice of the Auction and Sale (the "***Auction and Sale Notice***"), attached to the Bidding Procedures Order as **Exhibit 2**; (iv) authorizing the Debtors' entry into a Stalking Horse Agreement, if any, and the provision of Bid Protections to any such Stalking Horse Bidder; (v) approving procedures (the "***Assumption and Assignment Procedures***") for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale (collectively, the "***Assigned Contracts***"), including notice of proposed cure amounts, and approving the form and manner of notice thereof (the "***Cure, Consent, or Preferential Right Notice***"), attached to the Bidding Procedures Order as **Exhibit 3**; and (vi) granting related relief; and (b) seek entry of an order (the "***Sale Order***")[5] (i) authorizing the Sale to the Successful Bidder(s) free and clear of all liens, claims, interests and encumbrances; (ii) authorizing the assumption and assignment of the Assigned Contracts; and (iii) granting related relief.

<u>**THE PROPOSED BIDDING PROCEDURES AND SALE SCHEDULE**</u>

### I.     The Bidding Procedures

14.     The Debtors request Court approval to run an auction process with respect to the Assets pursuant to the Bidding Procedures. The Bidding Procedures are designed to encourage a competitive bidding process to obtain the highest and best Bids for the Assets, which will thereby maximize the value for the Debtors' estates and stakeholders through an orderly sales process. The Bidding Procedures describe, among other things, the procedures for interested parties to access due diligence, the manner in which interested parties submit indications of interest, the

---

[5]     The Debtors will file the proposed form of Sale Order in advance of the Sale Hearing. For the avoidance of doubt, "*Sale Order*" means the order (a) approving the Sale(s) and/or (b) confirming the Chapter 11 Plan, as applicable.

US 8633219

designation and approval of any Stalking Horse Bidder(s), the manner in which bidders and Bids become "qualified," the receipt and negotiation of Bids received, the conduct of any Auction, the selection and approval of any ultimately Successful Bidder(s) and Back-up Bidder(s), and the deadlines with respect to the foregoing.

15.     The following table describes certain material terms of the Bidding Procedures:[6]

| Participation Requirements and Due Diligence | |
|---|---|
| **Confidentiality Agreement and Evidence of Financial Capacity** | To receive due diligence information, including full access to the Debtors' electronic data room and additional non-public information regarding the Debtors, a Person must (a) deliver an executed Confidentiality Agreement on terms acceptable to the Debtors (to the extent not already executed and delivered) and (b) demonstrate to the Debtors that the Person has, or can obtain, the financial wherewithal and ability to consummate a potential Sale, to each of: (i) the Debtors, c/o Rockall Energy Holdings, LLC, 5005 LBJ Freeway, Suite 700, Dallas, Texas 75244, Attn: Lewis Gillies; (ii) proposed counsel to the Debtors, (a) Vinson & Elkins LLP, 1114 Avenue of the Americas, 32nd Floor, New York, New York 10036, Attn: David S. Meyer (dmeyer@velaw.com) and Lauren Kanzer (lkanzer@velaw.com), (b) Vinson & Elkins LLP, 1001 Fannin Street, Suite 2500, Houston, Texas 77002, Attn: Mike Garza (mgarza@velaw.com), and (c) Vinson & Elkins LLP, 2001 Ross Ave, Suite 3900, Dallas, Texas 75201, Attn: Matthew J. Pyeatt (mpyeatt@velaw.com); (iii) proposed investment banker for the Debtors, (a) Lazard Frères & Co. LLC, 30 Rockefeller Plaza, New York, New York 10112, Attn: Christian Tempke (christian.tempke@lazard.com) and Stephen Golmont (stephen.golmont@lazard.com), and (b) Lazard Frères & Co. LLC, 600 Travis Street, 33rd Floor, Houston, Texas 77002, Attn: Kevin Bonebrake (kevin.bonebrake@lazard.com) and Zac Scotton (zac.scotton@lazard.com); and (iv) the proposed chief restructuring officer for the Debtors, Ankura Consulting Group, LLC, 2021 McKinney Avenue, Suite 240, Dallas, Texas 75201, Attn: Scott M. Pinsonnault (scott.pinsonnault@ankura.com) (collectively, the "***Debtor Notice Parties***"). |
| **Electronic Data Room** | After a Person delivers the executed Confidentiality Agreement in accordance with the Bidding Procedures, the Debtors will provide such Person with access to an electronic data room and due diligence information, as reasonably requested by such Person, and the Debtors shall post substantially all written due diligence provided to any such party to the Debtors' electronic data room.  To the extent necessary and reasonably practicable, Lazard will also facilitate meetings between any such Person and the Debtors' other restructuring advisors and management team.  The Debtors and their advisors will coordinate all reasonable requests from such Persons for additional information and due diligence access; *provided* that the Debtors may decline to provide such information to any Person in the Debtors' reasonable business judgment, in consultation with the Consultation Parties,[7] including if |

---

[6]     This summary is qualified in its entirety by the Bidding Procedures.  Capitalized terms used in this summary but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures.  To the extent there are any conflicts between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern.  ***All proposed dates and deadlines set forth in this summary remain subject to Court approval.***

[7]     "***Consultation Parties***" means (i) counsel to Goldman Sachs Bank USA, in its capacity as administrative agent and collateral agent (in such capacity, the "***Term Loan Agent***") under the Term Loan Credit Agreement, in its capacity as administrative agent and collateral agent (in such capacity, the "***Intercreditor Agent***") under the Intercreditor Agreement, and in its capacity as administrative agent and collateral agent

|  | such Person has not established that it intends in good faith to, or has the capacity to, consummate a Sale, and the Debtors will have no further obligation to furnish due diligence information to any such Person or respond to any such Person's due diligence requests. |
| --- | --- |
|  | The due diligence period will end on the Bid Deadline (as defined below), and, after the Bid Deadline, the Debtors will have no obligation to furnish or update any due diligence information. |
|  | For any Person that the Debtors, in consultation with the Consultation Parties, determine to be a competitor of the Debtors or affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold or modify, or to delay providing, any due diligence information that the Debtors determine is business-sensitive or otherwise inappropriate for disclosure to such Person at such time. |
|  | All due diligence requests must be directed to Stephen Golmont (stephen.golmont@lazard.com) and Zac Scotton (zac.scotton@lazard.com). |

| **Non-Binding Indications of Interest** |
| --- |

In order to be eligible to be selected as a Stalking Horse Bidder (as defined below), a Person must submit a non-binding indication of interest (an "***Indication of Interest***") in writing to the Debtor Notice Parties by no later than April 8, 2022, at 5:00 p.m. (prevailing Central Time) (the "***Indication of Interest Deadline***") (which deadline may be extended by the Debtors without notice or hearing before the Court); *provided*, *however*, that the Debtors reserve the right to waive the requirement for a Person to submit an Indication of Interest in order to be selected as a Stalking Horse Bidder in the Debtors' discretion, in consultation with the Consultation Parties, without further order from the Court.

The Indication of Interest must: (i) identify the interested Person, including details on the acquisition structure, ownership structure, as well as legal form and jurisdiction of the interested Person; (ii) identify with reasonable specificity the Assets the party is interested in acquiring; (iii) set forth a proposed purchase price for the proposed Sale, including by identifying any cash and assumed liability consideration of the proposed Sale consideration; (iv) provide evidence of such interested Person's financial capacity to close a proposed Sale, which may include financial statements of, or verified financial commitments obtained by, such Person; (v) provide detailed information regarding the proposed financing sources; (vi) outline remaining due diligence requirements; and (vii) identify any proposed conditions to closing the Sale, including, but not limited to, required approvals.

The submission of an Indication of Interest by a party does not (i) obligate such Person to submit a Bid or to participate in the sale process, or (ii) exempt such Person from also having to submit a Bid by the Bid Deadline to participate in the Auction.

| **Selecting a Stalking Horse Bidder and Bid Protections** |
| --- |

| **Selecting a Stalking Horse Bidder** | No later than April 18, 2022 (the "***Stalking Horse Designation Deadline***"), the Debtors may, as an exercise of their reasonable business judgment, with the prior written consent of the Agent and following consultation with the other Consultation Parties, enter into an agreement (a "***Stalking Horse Agreement***"), with one or more Persons that have submitted an Indication of Interest and have subsequently submitted a Bid that complies with the Bid Requirements (each as defined below) to act as a stalking horse bidder (the "***Stalking Horse Bidder***," and the Bid of such Stalking Horse Bidder, the "***Stalking Horse Bid***") with respect to some or all of the Debtors' Assets and provide such Stalking Horse Bidder with the Bid Protections (as defined below). |
| --- | --- |

(in such capacity, the "***DIP Agent***" and together in its capacity as Term Loan Agent and Intercreditor Agent, the "***Agent***") under the Debtors' proposed DIP Credit Agreement; (ii) counsel to Shell Trading Risk Management, LLC ("***Shell***") as counterparty under the Shell Master Agreement and the Intercreditor Agreement; and (iii) counsel to any official committee of unsecured creditors appointed in these chapter 11 cases (the "***Committee***") (counsel to the Agent, Shell, and the Committee, collectively, the "***Consultation Parties***"), as explicitly provided for in the Bidding Procedures.

| | |
|---|---|
| **Bid Protections** | In connection with any Stalking Horse Agreement with a Stalking Horse Bidder and as approved by the Bidding Procedures Order, the Debtors shall be authorized (but not obligated), in an exercise of their reasonable business judgment, in consultation with the Consultation Parties, to (i) provide a break-up fee for a Stalking Horse Bidder in an amount not to exceed 2.5% of the cash portion of the purchase price and (ii) agree to reimburse the reasonable and documented out-of-pocket fees and expenses of such Stalking Horse Bidder in an aggregate amount not to exceed $400,000.00 (collectively, the "***Bid Protections***"); *provided that* if there are multiple Stalking Horse Bidders for separate Asset Packages then the expense reimbursement component of the Bid Protections shall be pro-rated between each such Stalking Horse Bidder based on the total consideration of each Bid. The Debtors shall not provide a break-up fee to any Stalking Horse Bidder on account of the portion of such Bid that is a credit bid.<br><br>In the event that the Debtors select one or more Persons to serve as the Stalking Horse Bidder, upon such selection, the Debtors shall file notice of each such Stalking Horse Bidder, Bid Protections, and Stalking Horse Agreement(s) (the "***Stalking Horse Designation Notice***") with the Court and provide parties in interest three (3) days' notice of and an opportunity to object to the designation of such Stalking Horse Bidder or any of the terms of the Stalking Horse Agreement, including the proposed Bid Protections. After such notice, and absent timely objection, the Stalking Horse Bidder and Stalking Horse Agreement, including the Bid Protections, shall be deemed approved without further order of the court. |
| **Bid Deadline** | |
| Any Person that desires to make a binding proposal, solicitation, or offer (each, a "***Bid***") shall transmit the Bid to the Debtor Notice Parties so as to be **actually received** on or before April 29, 2022, at 5:00 p.m. (prevailing Central Time) (the "***Bid Deadline***") (which deadline may be extended by the Debtors, with the prior written consent of the Agent, without notice or hearing before the Court). | |
| **Bid Requirements** | |
| All Bids must be submitted in writing and satisfy the following requirements (collectively, the "***Bid Requirements***"): | |
| **Purchase Price** | Each Bid must clearly set forth the purchase price to be paid, specifying (a) the cash and (b) assumed liability consideration, in sufficient detail satisfactory to the Debtors, in consultation with the Consultation Parties (the "***Purchase Price***"). Each Bid for a combination of Assets, other than for all or substantially all of the Assets, must: (x) provide a breakdown of the share of the Purchase Price allocable to each of the Assets included in the Bid; (y) state whether the Bid is conditioned upon the Bid being a Successful Bid (as defined below) for any of the other Assets included in the Bid (and, if so, which Assets); and (z) state whether the Person is willing to purchase any of the Assets included in the Bid individually, and if so, the price such Person would pay for each such Asset. |
| **Deposit** | Each Bid (other than the Equitization Restructuring) must be accompanied by a cash deposit in an amount equal to 10% of the cash portion of the Purchase Price (*i.e.*, the aggregate value of the cash and non-cash assumed liability consideration) (the "***Deposit***"), to be submitted by wire transfer to an escrow account to be identified and established by the Debtors. |
| **Marked Asset Purchase Agreement** | Each Bid (other than the Equitization Restructuring) must include a draft asset purchase agreement substantially in the form of the Form of Asset Purchase Agreement as provided in the electronic data room, or such other form as may be acceptable to the Debtors, in consultation with the Consultation Parties (together with a redline version against the Form of Asset Purchase Agreement), including the exhibits and schedules related thereto and any related documents or other material documents necessary to consummate the Sale contemplated by the Bid (collectively, the "***Sale Documents***"). |
| **Ability to Close/ Committed** | Each Bid (other than the Equitization Restructuring) must affirmatively state that the Person |

11

| | |
|---|---|
| **Financing** | is capable of consummating a Sale within fifteen (15) calendar days of such Bid being declared a Successful Bid (and contain evidence acceptable to the Debtors, in consultation with the Consultation Parties, of the same); *provided, however,* that failure to provide such an affirmative statement will not disqualify a Bid from being considered a Qualified Bid, but will be a factor considered by the Debtors, the Agent, and the other Consultation Parties in determining whether such Bid is a Qualified Bid.  To the extent that a Bid is not accompanied by evidence of such Person's capacity to consummate the Sale set forth in its Bid with cash on hand, each Bid must include committed financing, documented to the Debtors' satisfaction, in consultation with the Consultation Parties, that demonstrates that such Person has received sufficient debt or equity funding commitments to satisfy the Bid's Purchase Price and other obligations thereunder, including an affirmative statement and evidence that such Person is capable of consummating the Sale within fifteen (15) calendar days of such Bid being declared a Successful Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have only those covenants and conditions acceptable to the Debtors, in consultation with the Consultation Parties. |
| **No Financing or Diligence Outs** | A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, or on the receipt of any regulatory or third-party approvals (except as provided in the Bidding Procedures), but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions. |
| **Identity** | Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Person if such Person is an entity formed for the purpose of consummating the proposed Sale contemplated by such Bid), and the complete terms of any such participation.  Each Bid must also include contact information for the specific person(s) and counsel whom the Debtors' advisors should contact regarding such Bid. |
| **Authorization** | Each Bid must contain sufficient evidence that the Person has obtained authorization or approval from its board of directors (or a comparable governing body) with respect to the submission of its Bid and the consummation of the Sale contemplated in such Bid. |
| **Assumed Liabilities** | Each Bid must identify the Debtors' liabilities that the party seeks to assume. |
| **Adequate Assurance of Future Performance** | Each Bid must:  (a) identify any executory contracts and unexpired leases to be assumed and assigned in connection with such Bid; (b) provide for the payment by the Person of all cure costs related to such executory contracts and unexpired leases; and (c) demonstrate, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, that the Person can provide adequate assurance of future performance under all such executory contracts and unexpired leases. |
| **Government and Third-Party Approvals** | Each Bid must include a description of all governmental, licensing, regulatory, or other third-party approvals or consents that are required to consummate the proposed Sale, together with evidence satisfactory to the Debtors, in consultation with the Consultation Parties, of the ability to obtain such approvals or consents in a timely manner, as well as a description of any material contingencies, conditions, or other obligations that will be imposed upon, or that will otherwise apply to, obtaining any such approvals or consents (or written certification of the absence thereof).  To the extent consummation of the proposed Sale would require approval or consent from a surety as to the transfer, assumption, or assignment of existing surety bonds issued on behalf of the Debtors, a Bid must contain evidence of the Person's ability to secure a surety bond(s) or any adequate alternative that will fully release and discharge such surety from any obligation it may have under the current bonds. |

US 8633219

| Government and Third-Party Approvals Timeframe | Each Bid must set forth an estimated timeframe for obtaining any required governmental, licensing, regulatory, or other third-party approvals or consents for consummating any proposed Sale. |
|---|---|
| As-Is, Where-Is | Each Bid must include a written acknowledgement and representation that the Person: (a) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction. |
| Honoring the Bid Procedures | Each Bid must affirmatively state agreement, and by submitting its Bid, each Person is so agreeing, to abide by and honor the terms of the Bidding Procedures (including if such Person is declared a Successful Bidder or Backup Bidder (each as defined below)) and to refrain from submitting a Bid or seeking to reopen the Auction after conclusion of the Auction. The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Assets reflected in such Bid. |
| Additional Diligence | Each Person shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding the Bid. |
| Expenses | No Bid, except for a Stalking Horse Bid, shall contemplate or request (and no Person that is not a Stalking Horse Bidder shall receive) any break-up fee, transaction fee, termination fee, expense reimbursement, or any similar type of payment or reimbursement, and by submitting its Bid, each Person is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including any substantial contribution claim or any other claim under section 503(b) of the Bankruptcy Code. |
| **Information to be Provided to the Consultation Parties** ||

The Debtors will promptly (but in any event no later than three (3) business days) notify the Consultation Parties upon the occurrence of any Person executing a Confidentiality Agreement. The Debtors will promptly (but in any event no later than one (1) business day) notify the Consultation Parties upon the occurrence of any Person submitting an Indication of Interest. The Debtors will promptly (but in any event no later than one (1) business day following the submission of Bids) provide the Consultation Parties with a copy of each Bid received; *provided* that any confidential information shall only be shared with the Consultation Parties on a professional-eyes'-only basis; *provided further* that the Debtors shall not be required to consult with any Consultation Party whose client submits a Bid (other than, in the case of the Agent, the Equitization Restructuring) or has a Bid submitted on its behalf for so long as such Bid remains open, or if the Debtors determine, in their reasonable business judgment, that consulting with such Consultation Party regarding any issue, selection, or determination would be likely to have a chilling effect on potential bidding or otherwise be contrary to goal of maximizing value for the Debtors' estates from the sale process.

| **Designation of Qualified Bidders** ||
|---|---|
| Qualified Bidder | A Bid will be considered a "***Qualified Bid***," and each Person that submits a Qualified Bid will be considered a "***Qualified Bidder***," if the Debtors determine in their reasonable business judgment, with the prior written consent of the Agent and following consultation with the other Consultation Parties, that such Bid: (a) satisfies the Bid Requirements and (b) is reasonably likely to be consummated, if selected as a Successful Bid, within a timeframe acceptable to the Debtors, in consultation with the Consultation Parties.<br><br>Notwithstanding anything to the contrary in the Bidding Procedures, (a) the Equitization Restructuring will be considered a Qualified Bid, and the Agent shall be a Qualified Bidder with respect thereto; and (b) any timely Bid submitted in the form of a reorganization or acquisition of the Debtors' equity interests, or a merger or other combination with a third |

13

| | party will be deemed a Qualified Bid, and any such bidder shall be considered a Qualified Bidder, if it otherwise complies with the requirements set forth in the Bidding Procedures. |
|---|---|
| **Notification** | Within four (4) days after the Bid Deadline, the Debtors will notify each Person whether such Person is a Qualified Bidder. |
| **Bid Modifications** | Between the date that the Debtors notify a Person that it is a Qualified Bidder and the Auction: (a) the Debtors, in consultation with the Consultation Parties, may discuss, negotiate, or seek clarification or enhancement of any Qualified Bid from a Qualified Bidder; and (b) a Qualified Bidder may not, without the prior written consent of the Debtors (which shall consult with the Consultation Parties before granting such consent), modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid; *provided* that any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in the Bidding Procedures. |
| **Combination of Bids; Overlapping Bids** | Notwithstanding anything in the Bidding Procedures to the contrary, the Debtors reserve the right, in consultation with the Consultation Parties, to work with: (a) Persons and Qualified Bidders to aggregate two or more Indications of Interest or Bids into a single consolidated Bid prior to the Bid Deadline; (b) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction; and (c) any Person in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid. The Debtors, in consultation with the Consultation Parties, may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Assets such that, if taken together in the aggregate, the Bids would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction). |
| **Bid Selection and Criterion** ||
| **Baseline Bid** | No later than one (1) business day before the Auction, the Debtors will notify all Qualified Bidders of the highest or otherwise best Qualified Bid with respect to: (a) All Assets or (b) one or more Asset Packages. Each such highest or otherwise best Qualified Bid, which Qualified Bid may be a Stalking Horse Bid, shall be a "***Baseline Bid***" and the Debtors shall provide copies of the documents supporting each Baseline Bid to all Qualified Bidders. |
| **Bid Assessment Criteria** | The Debtors' determination, with the prior written consent of the Agent, of which Qualified Bid(s) constitutes a Baseline Bid and, ultimately, a Successful Bid shall take into account any factors the Debtors, in consultation with the Consultation Parties, deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (a) the type and amount of Assets sought to be purchased and obligations to be assumed; (b) the amount and nature of the Purchase Price; (c) the Qualified Bidder's ability to consummate a Sale and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the Qualified Bid; (e) the effect on the Debtors' ability to wind down their estates or confirm the Chapter 11 Plan in accordance with applicable law; and (f) the tax consequences of such Qualified Bid. |
| **The Auction Procedure** ||
| **Time and Place** | If the Debtors receive two or more Qualified Bids with respect to All Assets or the same or similar Asset Package, as applicable, then the Debtors will conduct the Auction to determine the Successful Bidder(s) with respect to such Assets. The Auction shall take place at 10:00 a.m. (prevailing Central Time) on May 4, 2022, at the offices of Vinson & Elkins LLP, 2001 Ross Ave, Suite 3900, Dallas, Texas 75201, or at such later date, time, or other location (including by videoconference), as selected by the Debtors, in consultation with the Consultation Parties. If the Debtors receive only one Qualified Bid with respect to All Assets or the same or similar Asset Package, as applicable, then the Debtors, with the prior written |

| | |
|---|---|
| | consent of the Agent in consultation with the other Consultation Parties, may select such Qualified Bid as the Successful Bid and notify all other Qualified Bidders promptly thereafter. |
| **Conducting the Auction** | The Debtors and their advisors shall direct and preside over the Auction, *provided* that the Debtors shall consult with the Consultation Parties during the Auction to the extent reasonably practicable.  At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid(s) and, if applicable, the Asset Packages.  Any Bids made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid(s) shall be "*Overbids*" and must comply with the conditions set forth below and shall be made and received on an open basis, with all material terms of each Overbid fully disclosed to all other Qualified Bidders.  The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid(s), all Overbids, and the Successful Bid(s).  The Debtors may, with the prior written consent of the Agent and following consultation with the other Consultation Parties, (a) select, in their reasonable business judgment, pursuant to the Bidding Procedures, the highest or otherwise best Bid(s) and the Successful Bidder(s) or Backup Bidder(s); and (b) reject any Bid (regardless of whether such Bid is a Qualified Bid) that, in the Debtors' reasonable business judgment, is (x) inadequate, insufficient, or not the highest or best Bid, (y) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or the Bidding Procedures, or (z) contrary to, or otherwise not in the best interests of, the Debtors' estates, affected stakeholders, or other parties in interest.  Notwithstanding anything in the Bidding Procedures to the contrary, the Debtors may, in their reasonable business judgment, in consultation with the Consultation Parties, add or modify any procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction. |
| **Eligibility** | Only Qualified Bidders that have submitted Qualified Bids by the Bid Deadline are eligible to participate in the Auction, subject to other limitations as may be imposed by the Debtors in accordance with the Bidding Procedures; *provided* that such other limitations are (a) not inconsistent with the Bidding Procedures Order, any other order of the Court, or the Bankruptcy Code, (b) disclosed orally or in writing to all Qualified Bidders, and (c) determined by the Debtors, with the prior written consent of the Agent and following consultation with the other Consultation Parties, to further the goals of the Bidding Procedures.  Notwithstanding anything in the Bidding Procedures to the contrary, if, at or prior to the Auction, a Qualified Bidder withdraws from participating in the Auction, the Debtors may, in their discretion, in consultation with the Consultation Parties, permit such Qualified Bidder to rejoin and participate in the Auction. |
| **Attendance** | Qualified Bidders participating in the Auction must appear in person (which may be by videoconference) at the Auction or through a duly authorized representative.  If a Qualified Bidder appears through a duly authorized representative, such representative must have been granted a valid and enforceable power of attorney or have other written proof evidencing his or her ability to bind such Person, which document(s) shall be delivered to the Debtors at least one (1) business day before the Auction.  The Consultation Parties, the U.S. Trustee, and, representatives of Shell and the Committee may attend the Auction in person, telephonically, or by videoconference. |
| **No Collusion; Good-Faith *Bona Fide* Offer** | Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that:  (a) it has not engaged in any collusion with respect to the bidding; (b) it has not entered into any exclusivity arrangements with any of the Debtors' vendors or contract counterparties in connection with its Bid; and (c) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed Sale if selected as the Successful Bidder.  For the avoidance of doubt, any prospective bidder may contact Lazard if it desires to seek to obtain financing from one or more Term Loan Lenders.  Any such prospective bidder may, with the prior written consent of Lazard (email being sufficient), engage in non- |

15

| | exclusive discussions and enter into non-exclusive financing arrangements with one or more Term Loan Lenders, it being understood that any such discussions and arrangements can take place without further notice to or involvement of the Debtors or their advisors; *provided* that the Term Loan Lenders shall maintain and provide to Lazard a weekly log of such discussions, including the date and time of the contact, the names of the individuals who attend such discussions, and a summary of the topics discussed. |
|---|---|
| **Adjourning the Auction** | Notwithstanding anything else in the Bidding Procedures to the contrary, the Debtors reserve the right, in their reasonable business judgment, in consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things: (a) facilitate discussions between the Debtors and Qualified Bidders; (b) allow Qualified Bidders to consider how they wish to proceed; (c) alter or combine Asset Packages; and (d) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Sale at the prevailing Overbid amount.<br><br>The Debtors are authorized, in consultation with the Consultation Parties, to reopen the Auction with respect to all or a portion of the Assets at any time prior to the selection and announcement by the Debtors of one or more Successful Bids for such Assets. |
| **Closing the Auction** | The Auction shall continue until the Debtors select, in their reasonable business judgment, with the prior written consent of the Agent and following consultation with the other Consultation Parties, pursuant to the Bidding Procedures, the highest or otherwise best Qualified Bid for All Assets or each of the Asset Packages, as applicable. Each such Qualified Bid shall be declared a "***Successful Bid***," and each such Qualified Bidder, a "***Successful Bidder***," and the Auction will be closed. The Debtors may also select, in their reasonable business judgment, in consultation with the Consultation Parties, pursuant to the Bidding Procedures, the next-highest or otherwise second-best Qualified Bid for All Assets or each Asset Package, as applicable, to be a "***Backup Bidder***." As soon as reasonably practicable after closing the Auction, the Debtors shall finalize definitive documentation to implement the terms of each Successful Bid, and, as applicable, cause such definitive documentation, as the Debtors determine to be relevant, to be filed with the Court. The acceptance by the Debtors of any Successful Bid is conditioned upon approval by the Court of such Successful Bid. |
| **Terms of Overbids** | |
| **Minimum Initial Overbid** | Any initial Overbid to the Baseline Bid(s) shall be no less than the value of the Baseline Bid(s)'s Purchase Price of the Assets, plus 2% of the Baseline Bid(s)'s Purchase Price of the Assets, plus the amount of the Bid Protections, if such Baseline Bid was a Stalking Horse Bid. |
| **Minimum Overbid Increment** | Any subsequent Overbids shall be in increments of value equal to 1% of the Minimum Initial Overbid, as determined by the Debtors in an exercise of their reasonable business judgment or such other amount as determined by the Debtors in consultation with the Consultation Parties. Notwithstanding anything in the Bidding Procedures to the contrary, the Debtors reserve the right, in their reasonable business judgment, in consultation with the Consultation Parties, to adjust the minimum Overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis. |
| **Announcing Highest Bid** | After each Overbid, the Debtors shall announce the material terms of the Overbid, including the value attributed to the Overbid. |
| **Backup Bidder** | |
| **Designation of** | If the Auction is conducted, any Qualified Bidder designated by the Debtors as a Backup |

16

| | |
|---|---|
| **Backup Bidder** | Bidder shall be required to serve as a Backup Bidder until such time as the applicable Sale is consummated, and each Qualified Bidder shall agree and be deemed to agree to be a Backup Bidder if so designated by the Debtors. |
| **Identity of Backup Bidder** | The identity of each Backup Bidder and the amount and material terms of the Qualified Bid of each such Backup Bidder shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder(s). Each Backup Bidder shall be required to keep its Qualified Bid (or if such Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until such time as the applicable Sale is consummated. |
| **Consummating a Sale with Backup Bidder** | If a Successful Bidder fails to consummate the approved Sale contemplated by its Successful Bid, then the Debtors may select the applicable Backup Bidder as a Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder, as disclosed at the Sale Hearing (as defined below), following notice to the Consultation Parties and without further order of the Court or notice to any other Person. |

| **Return of Deposit** |
|---|
| The Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to any Successful Bidder and any Backup Bidder) within three (3) business days after the Auction is closed, or as soon as is reasonably practicable thereafter. Upon the return of the Deposits, the applicable Qualified Bidders shall receive any interest that will have accrued thereon.

The Deposit of any Successful Bidder (including a Backup Bidder which becomes a Successful Bidder) shall be applied to the purchase price of the applicable Sale at closing. If a Successful Bidder (including a Backup Bidder which becomes a Successful Bidder) fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any rights, remedies, or causes of action that may be available to the Debtors. If a Successful Bidder consummates a proposed transaction or fails to consummate a proposed transaction but the Debtors elect to not consummate the proposed transaction with the applicable Backup Bidder, then such Backup Bidder's Deposit shall be returned within three (3) business days thereof, or as soon as is reasonably practicable thereafter. |

| **Modification of Bidding Procedures** |
|---|
| The Debtors reserve their rights to amend, modify, supplement, or waive the Bidding Procedures in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, with the prior written consent of the Agent and following consultation with the other Consultation Parties, without further order from the Court, in any manner that will best promote the goals of the Bidding Procedures, or impose, at or prior to the Auction, additional customary terms and conditions on a Sale, including, without limitation: (a) extending or modifying any of the dates and deadlines set forth in the Bidding Procedures and (b) adjourning or canceling the Auction. |

| **Consent to Jurisdiction** |
|---|
| All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction or the construction and enforcement of the Bidding Procedures. |

| **Sale Hearing** |
|---|
| A hearing to consider approval of the Sale(s) to one or more Successful Bidders pursuant to the Chapter 11 Plan (or, with the prior written consent of the Agent and consent of the Debtors (such consent of the Debtors not to be unreasonably withheld, delayed, or conditioned), pursuant to a sale order under section 363 of the Bankruptcy Code) (the "*Sale Hearing*") will be held at [●]:[●] [●].m. (prevailing Central Time) on May 13, 2022. The Sale Hearing may be the hearing to consider approval of the Chapter 11 Plan or a separate hearing, in each case depending on the terms of the Successful Bid(s). The Sale Hearing will be conducted before the Honorable Judge Mullin, via |

videoconference or at the Court, Room 128, U.S. Courthouse, 501 W. Tenth Street, Fort Worth, Texas 76102. The Sale Hearing may be continued to a later date by the Debtors, with the prior written consent of the Agent, by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any Person.

16.     Significantly, the Bidding Procedures maximize the Debtors' ability to consider all Qualified Bid proposals, and preserve the Debtors' right, with the prior written consent of the Agent and following consultation with the other Consultation Parties, to modify the Bidding Procedures as necessary or appropriate to best promote the goals of the Bidding Procedures and maximize value for the Debtors' estates.

## II.     Proposed Sale Schedule

17.     To further ensure that the Debtors' proposed marketing and sales process maximizes value for the benefit of the Debtors' estates, the Debtors seek approval of the following key dates and deadlines, subject to modification in accordance with the Bidding Procedures:[8]

   a.   **Indication of Interest Deadline**.  April 8, 2022, at 5:00 p.m. (prevailing Central Time), is the deadline by which any party interested in a transaction may submit a non-binding Indication of Interest (and by which any party must submit an Indication of Interest in order to be eligible to be selected as a Stalking Horse Bidder).

   b.   **Stalking Horse Designation Deadline**.  April 18, 2022 is the deadline by which the Debtors may enter into a Stalking Horse Agreement with respect to some or all of the Assets.

   c.   **Bid Deadline**.  April 29, 2022, at 5:00 p.m. (prevailing Central Time), is the deadline by which Bids for the Assets (as well as the deposit and all other documentation required under the Bidding Procedures for Qualified Bidders) must be submitted.

   d.   **Cure, Consent, or Preferential Right Objection Deadline**. April 29, 2022, at 5:00 p.m. (prevailing Central Time), is the deadline (the "***Cure, Consent, or Preferential Right Objection Deadline***") by which (i) any objections to the proposed assumption and assignment of an Assigned Contract on any grounds, including without limitation, the amount of proposed Cure Costs, but excluding any objection to Adequate Assurance or on the basis of the identity of the Successful Bidder, must be filed with the Court, and (ii) any holder of a consent right(s) and/or

---

[8]     ***All proposed dates and deadlines set forth in this summary remain subject to Court approval.***

US 8633219

preferential purchase right(s) shall (a) object to the transfer of a lease without its consent or (b) exercise any preferential right with respect to the Assets.

e. **Auction**. May 4, 2022, at 10:00 a.m. (prevailing Central Time), is the date and time that the Auction, if any, will be held at the offices of Vinson & Elkins LLP, 2001 Ross Ave, Suite 3900, Dallas, Texas 75201, or at such later date, time, and location, as selected by the Debtors in accordance with the Bidding Procedures.

f. **Sale Objection Deadline**. May 6, 2022, at 5:00 p.m. (prevailing Central Time), is the deadline (the "*Sale Objection Deadline*") by which all objections to the Sale (including to the proposed Adequate Assurance and/or the identity of the Successful Bidder) must be filed with the Court.

g. **Sale Hearing**. The hearing approving the Sale to the Successful Bidder(s) shall take place before the Court on May 13, 2022, at a time to be determined by the Court.

## FORM AND MANNER OF NOTICE

18. The Debtors propose the following notice and objection procedures with respect to the Sale, the Auction, and the Sale Hearing, and request notice of the Sale, the Auction, the Sale Hearing, and the Bidding Procedures Order be deemed adequate and sufficient if:

a. By not later than March 23, 2022, the Debtors shall serve by first-class mail, postage prepaid: (i) copies of the Bidding Procedures Order and the Bidding Procedures on the Notice Parties (as defined below) and (ii) the Auction and Sale Notice on the Sale Notice Parties (as defined below); and

b. By not later than April 6, 2022 or as soon as reasonably practicable thereafter, the Debtors will publish a notice (the "*Publication Notice*") substantially similar to the Auction and Sale Notice (or a summary thereof), in *The New York Times* (National Edition) and local publications in North Dakota, Louisiana, and Mississippi to be determined by the Debtors.

19. Additionally, the Debtors request that all objections to the Sale (including to proposed Adequate Assurance and/or the identity of the Successful Bidder), all Assigned Contract Objections, and all Supplemental Assigned Contract Objections be served upon the following parties by the applicable deadlines set forth herein (collectively, the "*Objection Notice Parties*"):

a. Proposed counsel to the Debtors: (a) Vinson & Elkins LLP, 1114 Avenue of the Americas, 32nd Floor, New York, New York 10036, Attn: David S. Meyer (dmeyer@velaw.com) and Lauren Kanzer (lkanzer@velaw.com), (b) Vinson &

Elkins LLP, 845 Texas Ave., Suite 4700, Houston, Texas 77002, Attn: Mike Garza (mgarza@velaw.com), and (c) Vinson & Elkins LLP, 2001 Ross Ave, Suite 3900, Dallas, Texas 75201, Attn: Matthew J. Pyeatt (mpyeatt@velaw.com);

b.      The Office of the United States Trustee for the Northern District of Texas: Earle Cabell Federal Bldg., 1100 Commerce St., Room 976, Dallas, Texas 75242;

c.      Counsel to the DIP Agent: (a) Cleary Gottlieb Steen & Hamilton, One Liberty Plaza, New York, New York, 10006, Attn: Sean A. O'Neal and Jane VanLare; and (b) Bonds Ellis Eppich Schafer Jones LLP, 420 Throckmorton Street, Suite 1000, Fort Worth, Texas 76102, Attn: Joshua N. Eppich and H. Brandon Jones;

d.      Counsel to Shell: Reed Smith LLP, 2850 N. Harwood Street, Suite 1500, Dallas, TX 75201, Attn:  Michael P. Cooley and Devan Dal Col;

e.      Counsel to any statutory committee appointed in these chapter 11 cases; and

f.      Any parties who have filed requests for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

**SUMMARY OF THE ASSUMPTION AND ASSIGNMENT PROCEDURES**

20.     The Debtors propose the Assumption and Assignment Procedures set forth below for notifying the counterparties to any executory contract or unexpired lease to which a Debtor is a party (the "***Contract Counterparties***") of (a) proposed cure amounts, in the event the Debtors decide to assume and assign such contracts or leases in connection with the Sale, and/or (b) the opportunity to withhold consent or exercise preferential rights with respect to the Assets.

**I.      Notice of Assumption and Assignment**

21.     On or before March 23, 2022 (the "***Assumption and Assignment Notice Date***"), the Debtors shall file the Cure, Consent, or Preferential Right Notice with the Court and serve the Cure, Consent, or Preferential Right Notice on the Contract Counterparties and any third parties that may hold hard consent or preferential rights with respect to the Assets, and shall include as **Exhibit 3** to the Cure, Consent, or Preferential Right Notice a list (the "***Assigned Contracts Schedule***") that specifies:  (a) each of the Debtors' executory contracts and unexpired leases that may be assumed and assigned in connection with the Sale, including the name of the Contract

20

Counterparty to each such contract and/or (b) the proposed amount necessary, if any, to cure all monetary defaults, if any, under each such executory contract or unexpired lease (the "***Cure Costs***"). The Cure, Consent, or Preferential Right Notice will also provide (a) instructions to holders of consent rights or preferential rights associated with the Assets on how to deny such consent or exercise such preferential right, as applicable, and (b) the deadlines by which any Contract Counterparty to a potentially Assigned Contract must file an objection to (i) the proposed Cure Costs and/or (ii) the proposed assumption and assignment of the applicable Assigned Contract, and the procedures relating thereto.

22. Any objections to the proposed assumption and assignment of any Assigned Contract on any grounds, including, without limitation, the amount of the proposed Cure Costs, but excluding any objection to proposed Adequate Assurance or on the basis of the identity of the Successful Bidder (each, a "***Cure, Consent, or Preferential Right Objection***") must: (a) be in writing; (b) comply with the applicable provisions of the Bankruptcy Rules, the N.D. Tex. L.B.R., and any order governing the administration of these chapter 11 cases; (c) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; (d) be filed with the Court no later than the Cure, Consent, or Preferential Right Objection Deadline, or April 29, 2022 at 5:00 p.m. (prevailing Central Time); and (e) be served on the Objection Notice Parties. The Cure, Consent, or Preferential Right Objection Deadline shall also be the date by which any party holding such consent and/or preferential right(s) shall be required to (a) object to the transfer of a lease without such party's consent or (b) exercise any preferential right with respect to the Assets.

23. Any objections to a proposed Sale or the proposed adequate assurance (the "*Adequate Assurance*," and each objection thereto, an "*Adequate Assurance Objection*") (collectively with any Cure, Consent, or Preferential Right Objection, the "*Assigned Contract Objections*") or to the identity of the Successful Bidder must: (a) be in writing; (b) comply with the applicable provisions of the Bankruptcy Rules, the N.D. Tex. L.B.R., and any order governing the administration of these chapter 11 cases; (c) state with specificity the nature of the objection and the adequate assurance amount purportedly required, together with any applicable and appropriate documentation in support thereof; (d) be filed with the Court no later than the Sale Objection Deadline, or May 6, 2022 at 5:00 p.m. (prevailing Central Time); and (e) be served on the Objection Notice Parties.

24. If a Contract Counterparty files an Assigned Contract Objection and the Successful Bidder has designated that it wishes to take assignment of such Assigned Contract, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then such objection will be resolved at the Sale Hearing, but such Assigned Contract shall be assumed and assigned only upon satisfactory resolution of the Assigned Contract Objection, to be determined in the Successful Bidder's discretion. If an Assigned Contract Objection is not satisfactorily resolved, the Successful Bidder may determine that such Assigned Contract should be rejected and not assigned, in which case the Successful Bidder will not be responsible for any Cure Costs or Adequate Assurance with respect to such contract.

## II. Supplemental Cure, Consent, or Preferential Right Notice

25. If at any time: (a) the Debtors discover executory contracts or unexpired leases that were inadvertently omitted from the Assigned Contracts Schedule; (b) the Successful Bidder identifies other executory contracts or unexpired leases that it desires to assume and assign in connection with the Sale; or (c) any proposed Cure Cost requires modification, then the Debtors

22

may, at any time after the Assumption and Assignment Notice Date but before the Sale Hearing: (x) supplement the Assigned Contracts Schedule with previously omitted Assigned Contracts; (y) remove any Assigned Contracts from the list of executory contracts and unexpired leases ultimately selected as Assigned Contracts that the Successful Bidder proposes be assumed and assigned to it in connection with the Sale or add to such list; and/or (z) modify the proposed Cure Costs.

26.     In the event that the Debtors exercise any of the rights reserved above, the Debtors shall promptly file with the Court and serve on each affected Contract Counterparty a supplemental notice of assumption and assignment (a "***Supplemental Cure, Consent, or Preferential Right Notice***").  Each Supplemental Cure, Consent, or Preferential Right Notice shall include the same information with respect to listed Assigned Contracts as would have been included in the Cure, Consent, or Preferential Right Notice (a "***Supplemental Assigned Contract Schedule***").

27.     A Contract Counterparty listed on a Supplemental Cure, Consent, or Preferential Right Notice may file an objection (a "***Supplemental Assigned Contract Objection***") on the same bases set forth above for Assigned Contract Objections, including objections in connection with any consent right and/or preferential right, as applicable.  All Supplemental Assigned Contract Objections must comply with the requirements set forth above for Assigned Contract Objections, including objections in connection with any consent right and/or preferential right, as applicable, and be filed with the Court and served on the Objection Notice Parties no later than the date that is the later of (x)(i) the Cure, Consent, or Preferential Right Objection Deadline or (ii) the Sale Objection Deadline, as applicable; or (y) seven (7) calendar days following the service of such Supplemental Cure, Consent, or Preferential Right Notice (the "***Supplemental Assigned Contract Objection Deadline***").

28.     If a Contract Counterparty files a Supplemental Assigned Contract Objection, and the Successful Bidder has designated that it wishes to take assignment of such Assigned Contract, and the parties are unable to consensually resolve the dispute, then, to the extent the Sale Hearing has occurred, the Debtors shall seek an expedited hearing before the Court (a "***Supplemental Assigned Contract Hearing***") to resolve such objection, but such Assigned Contract shall be assumed and assigned only upon satisfactory resolution of the Supplemental Assigned Contract Objection, to be determined in the Successful Bidder's discretion. If a Supplemental Assigned Contract Objection is not satisfactorily resolved, the Successful Bidder may determine that such Assigned Contract should be rejected and not assigned, in which case the Successful Bidder will not be responsible for any Cure Costs or Adequate Assurance with respect to such contract.

## III.     Additional Notice of Assumption and Assignment Procedures

29.     If a Contract Counterparty does not timely file an Assigned Contract Objection or Supplemental Assigned Contract Objection, and absent a subsequent order of the Court establishing an alternative Cure Cost: (a) the Cure Costs, if any, set forth in the Cure, Consent, or Preferential Right Notice (or Supplemental Cure, Consent, or Preferential Right Notice) shall be controlling, notwithstanding anything to the contrary in any Assigned Contract or any other document; and (b) the Contract Counterparty will be deemed to have consented to the assumption and assignment of the Assigned Contract and the Cure Costs, if any, and will be forever barred from objecting to the assumption and assignment of such Assigned Contract and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such Assigned Contract against the Debtors or the Successful Bidder. In addition, any holder of a consent right or a preferential right with respect to the Assets that receives the Auction and Sale Notice or the Cure, Consent, or Preferential Right Notice and fails to provide notice to the Debtors by the Cure, Consent, or Preferential Right Objection Deadline of such holder's denial of consent or intent to

24

exercise such preferential right at the Auction, as applicable, shall be deemed to consent to the Sale and not elect to exercise such preferential right, as applicable, for purposes of the conveyance of the Assets to the Successful Bidder in consummation of the Sale(s).

30. The inclusion of an Assigned Contract on the Assigned Contract Schedule or Supplemental Assigned Contract Schedule, will not: (a) obligate the Debtors to assume any Assigned Contract listed thereon or obligate the Successful Bidder to take assignment of such Assigned Contract; or (b) constitute any admission or agreement of the Debtors that such Assigned Contract is an executory contract or unexpired lease. Only those Assigned Contracts that are included on a schedule of assumed and assigned contracts attached to the definitive sale agreement with the Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement) will be assumed and assigned to the Successful Bidder.

## BASIS FOR RELIEF REQUESTED

### I. The Relief Sought in the Bidding Procedures Motion Is in the Best Interests of the Debtors' Estates and Should be Approved.

31. Adoption of the Bidding Procedures is a valid exercise of the Debtors' business judgment. Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from its estate. *See, e.g.*, *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1301, 1311-13 (5th Cir. 1985) ("[W]e see no reason to require the debtor to do more than justify its actions under the 'business judgment' standard . . ."); *In re ASARCO LLC*, 441 B.R. 813 (S.D. Tex 2010); *In re Lowry Graphics, Inc.*, 86 B.R. 74, 76 (Bankr. S.D. Tex. 1988). This standard prohibits other parties from second-guessing the debtor's business judgment if the debtor has shown that the proposed use will benefit the debtor's estate. *See Richmond Leasing*, 762 F.2d at 1313 (finding no reason to doubt a debtor's decision to assume a lease so long as such a decision was a valid exercise of a debtor's business

judgment); *see also In re Continental Airlines, Inc.*, 780 F.2d 1223 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification. . .").

32.     The paramount goal in any sale of property of a debtor's estate is to maximize the proceeds realized by the estate.  *Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 246 (citing *Commodity Futures Trading Comm'n. v. Weintraub,* 471 U.S. 343, 352 (1985)) ("Moreover, as the Supreme Court has held, "the [debtor] is accountable for all property received . . . *and has the duty to maximize the value of the estate*.") (emphasis in original); *In re ASARCO, LLC*, 396 B.R. 278 (S.D. Tex. 2008) (recognizing the debtor's duties to maximize recovery to creditors of the estate).

33.     Accordingly, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value realized by the estate and therefore are appropriate in the context of bankruptcy transactions.  *See In re ASARCO, L.L.C.*, 650 F.3d 593, 603 (5th Cir. 2011) (affirming bankruptcy court's approval of bidding procedures designed to maximize the value of the debtor's estate); *In re Energy Future Holdings Corp*., 593 B.R. 217, 246 (Bankr. D. Del. 2018) (recognizing the appropriateness of a debtors' bidding procedures where the objective at all times was to maximize value for their estates, consistent with their fiduciary duties); *In re Integrated Res., Inc*., 147 B.R. 650, 656–57 (Bankr. S.D.N.Y. 1992) (bidding procedures "encourage bidding and . . . maximize the value to the debtor's assets").

34.     Moreover, Courts in the Fifth Circuit have approved procedures similar to the proposed Bidding Procedures in connection with chapter 11 asset sales.  *See, e.g.*, *In re Bainbridge Uinta, LLC*, No. 20-42794 (MXM) (Bankr. N.D. Tex. Oct. 30, 2020) [Dkt. No. 138]; *In re Tuesday Morning Corp.*, No. 20-31476 (HDH) (Bankr. N.D. Tex. Oct. 1, 2020) [Dkt. No. 1090]; *In re*

*Strike, LLC*, No. 21-90054 (DRJ) (Bankr. S.D. Tex. Dec. 23, 2021) [Dkt. No. 279]; *In re Lilis Energy, Inc.*, No. 20-33274 (MI) (Bankr. S.D. Tex. Aug. 21, 2020) [Dkt. No. 259]; *In re Approach Resources Inc.*, No. 19-36444 (MI) (Bankr. S.D. Tex. Jan. 9, 2020) [Dkt. No. 184]; *In re Alta Mesa Res., Inc.*, No. 19-35133 (MI) (Bankr. S.D. Tex. Oct. 11, 2019) [Dkt. No. 317].

35.     The Debtors believe that the proposed Bidding Procedures will encourage prospective bidders to put forward their best bids quickly in order to generate the highest or best recoveries for the Debtors' stakeholders and also provide for substantial flexibility with respect to the structure of any Sale.  For these reasons, the Debtors request that the Court authorize the Debtors' adoption of the Bidding Procedures as a valid exercise of the Debtors' business judgment.

## II.     Providing the Stalking Horse Bid Protections is a Sound Exercise of the Debtors' Business Judgment and Should be Approved.

36.     To the extent that the Debtors enter into a Stalking Horse Agreement, the Debtors request that the Court authorize the Debtors to provide the Bid Protections to the Stalking Horse Bidder.  As noted above, the Bidding Procedures contemplate (i) a break-up fee in an aggregate amount not to exceed two and one-half percent (2.5%) of a Stalking Horse Bidder's proposed Purchase Price and (ii) reimbursement of reasonable and documented out-of-pocket fees and expenses of such Stalking Horse Bidder in an aggregate amount not to exceed $400,000; *provided* that if there are multiple Stalking Horse Bidders for separate Asset Packages then the expense reimbursement component of the Bid Protections shall be pro-rated between each such Stalking Horse Bidder based on the total consideration of each Bid.  Importantly, the Debtors seek to utilize the authority to provide Bid Protections only if, in their reasonable business judgment, in consultation with the Consultation Parties, such Bid Protections will promote the competitiveness of the bidding process, thereby maximizing the value of the Assets for the benefit of their

stakeholders. The Debtors believe that, considering the aggregate caps on the Bid Protections, the value created for the Debtors' estates will likely greatly outweigh the cost of any Bid Protections.

37. The Fifth Circuit has held that bid protections should be approved in chapter 11 cases so long as (a) there was no "self-dealing or manipulation among the parties who negotiated" the bid protections, (b) the bid protections facilitated, not hindered, the auction process," and (c) the bid protections are "reasonable in comparison to the size of" the transaction. *ASARCO LLC*, 650 F.3d at 603. To warrant court approval of such break-up fees and expenses, the Fifth Circuit in *ASARCO* required a showing that the requested fees and expenses are supported by a sound business justification. *Id.*

38. The Debtors believe that authority to reimburse expenses and pay a break-up fee to a Stalking Horse Bidder is in the best interests of their estates because, among other things, such Bid Protections will encourage a Bid for substantially all of the Debtors' assets and establishing a floor for further bidding that may increase the consideration given in exchange for the Assets. *See Integrated Resources,* 147 B.R. at 659-60 ("Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets."). A Stalking Horse Bidder will expend time and resources negotiating, drafting, and performing due diligence activities necessitated by the Bidding Procedures, although its bid will be subject to Court approval and overbidding by other interested parties. Without the Bid Protections, the Debtors may not be able to attract a Stalking Horse Bidder, which may impede the Debtors' ability to maximize the value of the Sale for the benefit of their estates.

39. Similar types of bid protections have been approved in the Fifth Circuit. *See, e.g.*, *In re Fresh Acquisitions, LLC*, No. 21-30721 (SGJ) (Bankr. N.D. Tex. May 27, 2021) [Dkt. No. 203]; *In re GGI Holdings, LLC*, No. 20-31318 (HDH) (Bankr. N.D. Tex. June 11, 2020) [Dkt. No.

273]; *In re Lilis Energy, Inc.*, No. 20-33274 (MI) (Bankr. S.D. Tex. Aug. 21, 2020) [Dkt. No. 259];

*In re Approach Resources Inc.*, No. 19-36444 (MI) (Bankr. S.D. Tex. Jan. 9, 2020) [Dkt. No. 184];

*In re Alta Mesa Res., Inc.*, No. 19-35133 (MI) (Bankr. S.D. Tex. Oct. 11, 2019) [Dkt. No. 317].

40.     Accordingly, for the reasons set forth above, the Court should grant the Debtors the authority to incur and pay the Bid Protections in their discretion as a valid exercise of the Debtors' business judgment.

### III.     The Form and Manner of the Notice Should be Approved.

41.     Pursuant to Bankruptcy Rule 2002(a) and N.D. Tex. L.B.R. 2002-1(a), the Debtors are required to provide creditors with 21 calendar days' notice of a hearing where the Debtors will seek to use, lease, or sell property of the estate outside the ordinary course of business.  Fed. R. Bankr. P. 2002(a); N.D. Tex. L.B.R. 2002-1(a).  Bankruptcy Rule 2002(c) requires any such notice to include the time and place of the auction and the hearing and the deadline for filing any objections to the relief requested therein.  Fed. R. Bankr. P. 2002(c).

42.     The Debtors submit that the Auction and Sale Notice constitutes good and adequate notice of the Auction and Sale and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002 and N.D. Tex. L.B.R. 2002. The Debtors will serve the Auction and Sale Notice on the Sale Notice Parties (as defined below) no later than March 23, 2022.  Accordingly, the Debtors submit that no further notice is necessary and the Debtors request that this Court approve the form and manner of the Auction and Sale Notice.

### IV.     The Assumption and Assignment Procedures Should be Approved.

43.     To facilitate and effectuate the proposed sales process, the Debtors are seeking approval of the Assumption and Assignment Procedures.  The Assumption and Assignment Procedures are reasonable and necessary to properly notify parties of potential assumptions and/or

US 8633219

assignments and provide the contract and lease counterparties with sufficient time to determine the accuracy of the proposed cure amount.

44.     The Debtors will demonstrate at the Sale Hearing that the requirements for assumption and assignment of the Assigned Contracts to the Successful Bidder will be satisfied. As required by the Bidding Procedures, the Debtors will evaluate the financial wherewithal of potential bidders before designating such party a Qualified Bidder or Successful Bidder. Further, the Assumption and Assignment Procedures provide the Court and other interested parties ample opportunity to evaluate and, if necessary, challenge the ability of the Successful Bidder to provide adequate assurance of future performance and object to the assumption of the Assigned Contracts or proposed cure amounts. Therefore, the Court will have a sufficient basis to authorize the Debtors to reject or assume and assign the Assigned Contracts.

45.     To the extent there are any consent rights or preferential purchase rights with respect to the Assets, the Debtors will send to the relevant parties, not later than March 23, 2022, the Cure, Consent, or Preferential Right Notice indicating that such parties must indicate any intent to (a) object to any transfer of any applicable lease, or (b) exercise any preferential right to purchase, in each case, by the Cure, Consent, or Preferential Right Objection Deadline.

46.     Accordingly, the Debtors submit that the Assumption and Assignment Procedures should be approved as reasonable and necessary measures to adequately notify parties in interest and conduct the proposed Sale in a fair, efficient, and proper manner.

**V.      The Proposed Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code.**

47.     In the interest of attracting the best and highest offers, the Assets should be sold free and clear of any and all liens, claims, interests, and encumbrances in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, interests, and encumbrances attaching

30

to the proceeds of the Sale. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if any one of the following conditions is satisfied:

> (a) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (b) such entity consents;
>
> (c) such interest is a lien at the price at which such property is to be sold is greater than the value of all liens on such property;
>
> (d) such interest is in bona fide dispute; or
>
> (e) such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 WL 4554276, at *3 (Bankr. E.D. Tex. Dec. 19, 2007) ("The language of § 363(f) is in the disjunctive such that a sale free and clear of an interest can be approved if any one of the aforementioned conditions contained in § 363(f) are satisfied.").

48.     Section 363(f) of the Bankruptcy Code is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105(a); *see In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *3, 6 (Bankr. D. Del. Mar. 27, 2001); *In re White Motor Credit Corp.*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of claims] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

49.     The Debtors submit that the Sale will satisfy the requirements of section 363(f) of the Bankruptcy Code. To the extent a party objects to Sale on the basis that it holds a lien or encumbrance on the Assets, the Debtors believe that any such party could be compelled to accept

a monetary satisfaction of such claims or that such lien is in *bona fide* dispute. In addition, to the extent the Debtors discover any party may hold a lien on all, or a portion of, the Assets, the Debtors will provide such party with notice of, and an opportunity to object to, the Sale. Absent objection, each such party will be deemed to have consented to the sale of the Assets.

50. Accordingly, the Debtors believe that the Sale (i) will satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code and (ii) should be approved free and clear of all liens, claims, interests and encumbrances.

**VI. A Successful Bidder Should Be Entitled to the Protection of Section 363(m) of the Bankruptcy Code.**

51. Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from a debtor, notwithstanding that the sale under section 363(b) of the Bankruptcy Code may subsequently be reversed or modified on appeal. Courts in this jurisdiction have recognized that "the purpose of [section] 363(m)'s stay requirement is in furtherance of the policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely." *In re TMT Procurement Corp.*, 764 F.3d 512, 521 (5th Cir. 2014) (citation and internal quotation marks omitted); *Matter of Gilchrist*, 891 F.2d 559, 560 (5th Cir. 1990).

52. Although the Bankruptcy Code does not define "good faith," the Fifth Circuit has defined the term in two ways in the context of section 363(m) of the Bankruptcy Code. First, it has "defined a 'good faith purchaser' as 'one who purchases the assets for value, in good faith, and without notice of adverse claims.'" *TMT Procurement Corp.*, 764 F.3d at 521 (citations omitted). Second, the Fifth Circuit has "noted that 'the misconduct that would destroy a purchaser's good

faith status . . . involves fraud, collusion between the purchaser and other bidders of the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Id.* (citations omitted).

53. The Debtors submit that the Successful Bidder would be a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code. The Bidding Procedures require each Qualified Bidder participating in the Auction to confirm that it has not engaged in any collusion with respect to any Bid or the Sale. Any asset purchase agreement with the Successful Bidder will be negotiated at arm's-length and in good faith. Further evidence, to the extent necessary, will be presented at the Sale Hearing. The Debtors believe that providing any Successful Bidder with such protection will ensure that the maximum price will be received by the Debtors for the Assets and closing of the same will occur promptly.

## VII. Assumption and Assignment of Executory Contracts and Unexpired Leases Should be Authorized.

54. Section 365(a) of the Bankruptcy Code provides that a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The standard governing approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtors' reasonable business judgment supports assumption or rejection. *In re Mirant Corp.*, 378 F.3d 511, 524-25 & n.5 (5th Cir. 2004); *Richmond Leasing*, 762 F.2d at 1309; *In re Gucci*, 193 B.R. 411 (S.D.N.Y. 1996); *In re Pisces Energy, LLC*, No. 09-36591H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009).

55. The "business judgment" test in this context only requires that a debtor demonstrate that assumption or rejection of an executory contract or unexpired lease benefits the estate. *See Pisces Energy*, 2009 WL 7227880, at *6; *In re Gunter Hotel Assocs.*, 96 B.R. 696, 698 (Bankr. W.D. Tex. 1988); *In re Food City, Inc.*, 94 B.R. 91, 93-94 (Bankr. W.D. Tex. 1988).

33

56.     Any more exacting scrutiny would slow the administration of a debtor's estates, increase costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten this Court's ability to control a case impartially.  *See Richmond Leasing*, 762 F.2d at 1311.  Prior to assuming an executory contract, however, section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under the contracts to be assumed be cured or that the Debtors provide adequate assurance that such defaults will be promptly cured.

57.     The Debtors respectfully submit that, prior to any assumption of an Assigned Contract, the Debtors and/or a Successful Bidder will cure any amounts necessary to assume the Assigned Contract.  Indeed, as required by the Bankruptcy Code, the Debtors' assumption and assignment of the Assigned Contracts will be contingent upon payment or reserve of Cure Costs in connection with the Sale.

58.     Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract and section 365(f) of the Bankruptcy Code specifically provides that contract provisions seeking to prohibit or limit assignment are unenforceable.  *See In re Amidee Capital Group, Inc.,* No. 10-20041, 2010 WL 5141276, at *5 (Bankr. S.D. Tex. Oct. 7, 2010) (treating such prohibitions or limitations as null and void under section 365(f) of the Bankruptcy Code); *In re Office Prods. of Am., Inc.*, 140 B.R. 407 (Bankr. W.D. Tex. 1992) (provisions that work as a restriction on assignment of leases should be struck down); *In re Rickel Home Center, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) ("The Code generally favors free assignability as a means to maximize the value of the debtor's estate.").

59.     Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided."  11 U.S.C. § 365(f)(2).

60. To the extent necessary, the Debtors will present facts at the Sale Hearing to show the financial credibility, willingness and ability of the Successful Bidder to perform under the Assigned Contracts. Indeed, the Bidding Procedures require that each Qualified Bid identify with particularity the Debtors' executory contracts and unexpired leases sought to be assumed and assigned in connection with the Bid and demonstrate that such bidder can provide adequate assurance of future performance under all such executory contracts and unexpired leases. Additionally, the Sale Hearing will afford the Court and other interested parties the opportunity to evaluate the ability of the Successful Bidder to provide adequate assurance of future performance under the Assigned Contracts, as required under section 365 (b)(1)(C) of the Bankruptcy Code. As set forth above, the Debtors will give notice to all parties to the Assigned Contracts, which notice will include the amounts the Debtors believe are necessary to cure any defaults in accordance with section 365(b) of the Bankruptcy Code.

61. Accordingly, the Debtors request approval under section 365 of the Bankruptcy Code of the Debtors' assumption and assignment of the Assigned Contracts in connection with the Sale. The Debtors further request that the Sale Order provide that the Assigned Contracts will be transferred to, and remain in full force and effect for the benefit of, the Successful Bidder notwithstanding any provisions in the Assigned Contracts, including those described in sections 365(b)(2) and (f)(1) and (f)(3) of the Bankruptcy Code that prohibit such assignment.

## REQUEST FOR IMMEDIATE RELIEF

62. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons set forth herein and in the First Day Declarations and the Bonebrake Declaration, the Debtors are seeking to consummate a Sale pursuant to the in-court marketing and sales process described herein within 80 days of the Petition Date. Obtaining approval of the Bidding

US 8633219

Procedures (and accompanying sale-related deadlines) on an emergency basis will encourage prospective bidders to engage in the sales process expeditiously and will provide certainty to potential bidders regarding the bid process and Sale Schedule. As such, the relief requested is necessary in order for the Debtors to pursue their restructuring goals swiftly and efficiently and preserve the ongoing value of the Debtors' estates and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## **WAIVER OF BANKRUPTCY RULE 6004(h) AND 6006(d)**

63. The Debtors request that, upon entry of the Bidding Procedures Order, the Court waive the 14-day stay requirements of Bankruptcy Rules 6004(h) and 6006(d) with respect to the Bidding Procedures Order (to the extent they may be applicable) and with respect to the Sale Order.

## **RESERVATION OF RIGHTS**

64. For the avoidance of doubt, nothing in this Motion is intended to be, nor should it be construed as (a) an implication or admission as to the validity or priority of any claim or lien against the Debtors, (b) an impairment or waiver of the Debtors' or any other party in interest's rights to contest or dispute any such claim or lien, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any proposed order, or (e) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law. In addition, nothing in this Motion or the relief requested herein should be interpreted as the assumption or rejection of any executory contract or unexpired lease under section 365 of the Bankruptcy Code.

US 8633219

## NOTICE

65.     Notice of this Motion has been provided by delivery to:  (a) the Office of the United States Trustee for the Northern District of Texas; (b) the Term Loan Agent; (c) the DIP Agent; (d) Cleary Gottlieb Steen & Hamilton, as counsel to the Term Loan Agent and the DIP Agent; (e) Shell; (f) Reed Smith LLP, as counsel to Shell; (g) the Debtors' 20 largest unsecured creditors (on a consolidated basis); (h) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002; (i) the Internal Revenue Service; (j) all state attorneys' generals in states where the Assets are located; (k) all other applicable government agencies to the extent required by the Bankruptcy Rules or the N.D. Tex. L.B.R. ((a) through (k), collectively,  the  "***Notice  Parties***");  (l) municipalities  in  which  the  Assets  are  located;  (m) all entities known to have asserted a lien or security interest against any of the Assets; (n) all potential bidders  previously  identified  or  solicited;  and  (o) those  parties  listed  on  the  Debtors'  creditor matrix (together with the Notice Parties, the "***Sale Notice Parties***").  In light of the nature of the relief requested in this Motion, the Debtors submit that no further notice is necessary.

## NO PRIOR REQUEST

66.     No prior motion for the relief requested herein has been made to this Court or any other court.

US 8633219

## PRAYER

The Debtors respectfully request that the Court (i) enter the Bidding Procedures Order, substantially in the form attached hereto as **Exhibit A**, (ii) enter the Sale Order following the conclusion of the Sale Hearing, and (iii) grant them such other and further relief to which the Debtors may be justly entitled.

Dated: March 10, 2022
Dallas, Texas

/s/ *Michael A. Garza*
**VINSON & ELKINS LLP**
Michael A. Garza (Texas Bar No. 24126797)
Matthew J. Pyeatt (Texas Bar No. 24086609)
Trevor G. Spears (Texas Bar No. 24106681)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
mgarza@velaw.com; mpyeatt@velaw.com;
tspears@velaw.com

- and -

David S. Meyer (*pro hac vice* pending)
George R. Howard (*pro hac vice* pending)
Lauren R. Kanzer (*pro hac vice* pending)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel: 212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; ghoward@velaw.com;
lkanzer@velaw.com

**PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 10, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

 */s/ Michael A. Garza*                 
One of Counsel

# EXHIBIT A

**Proposed Bidding Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22-9000 (MXM)** |
| | § | |
| **ROCKALL ENERGY HOLDINGS, LLC,** | § | **(Chapter 11)** |
| *et al.,* | § | |
| | § | **(Joint Administration Requested)** |
| | § | |
| **Debtors.¹** | § | **Re: Docket No. ___** |

**ORDER (I) APPROVING BIDDING PROCEDURES,**
**(II) SCHEDULING THE BID DEADLINE AND THE AUCTION,**
**(III) SCHEDULING HEARING AND OBJECTION DEADLINES**
**WITH RESPECT TO THE SALE, (IV) APPROVING THE FORM AND**
**MANNER OF NOTICE THEREOF, (V) APPROVING CONTRACT ASSUMPTION**
**AND ASSIGNMENT PROCEDURES, AND (VI) GRANTING RELATED RELIEF**

---

[1]     The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Arrow Rock Energy, LLC (7549), Petro Harvester Operating Company, LLC (2136), Rockall Agent Corp. (1653), Rockall Energy Holdings, LLC (5784), Rockall Energy, LLC (6340), Rockall EOR, LLC (4136), Rockall Exploration Company, LLC (0547), Rockall Intermediate, Inc. (9759), Rockall LA, LLC (4270), Rockall Laurel, LLC (1178), Rockall Midstream, LLC (0917), Rockall MS, LLC (0740), Rockall ND, LLC (9311), Rockall Pine Prairie, LLC (5799), White Marlin Investment Company, LLC (9987), and White Marlin Midstream, LLC (1466). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 5005 LBJ Freeway, Suite 700, Dallas, TX 75244.

Upon the Motion[2] filed by the above-referenced debtors and debtors in possession (collectively, the "*Debtors*") (a) seeking entry of an order (the "***Bidding Procedures Order***") (i) authorizing and approving the proposed bidding procedures (the "***Bidding Procedures***") attached to the Bidding Procedures Order as **Exhibit 1** in connection with one or more sales (each, a "*Sale*") of all, substantially all, or any combination of the Debtors' assets (collectively, the "*Assets*") free and clear of all claims, liens, and encumbrances; (ii) scheduling an auction in connection with the Sale (the "*Auction*"), hearing dates in connection with approval of the Sale (the "***Sale Hearing***"), and the objection deadline for the Sale Hearing (collectively, the "***Sale Schedule***"); (iii) approving the form and manner of notice of the Auction and Sale (the "***Auction and Sale Notice***"), attached to the Bidding Procedures Order as **Exhibit 2**; (iv) authorizing the Debtors' entry into a Stalking Horse Agreement, if any, and the provision of Bid Protections to any such Stalking Horse Bidder; (v) approving procedures (the "***Assumption and Assignment Procedures***") for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale (collectively, the "***Assigned Contracts***"), including notice of proposed cure amounts, and approving the form and manner of notice thereof (the "***Cure, Consent, or Preferential Right Notice***"), attached to the Bidding Procedures Order, as **Exhibit 3**; and (vi) granting related relief; and (b) seeking entry of an order (the "***Sale Order***")[3] (i) authorizing the Sale to the Successful Bidder free and clear of all liens, claims, interests and encumbrances; (ii) authorizing the assumption and assignment of the Assigned Contracts; and (iii) granting related relief, all as more fully set forth in the Motion, the First Day Declarations, and the Bonebrake

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Motion.

[3]    The Debtors will file the proposed form of Sale Order in advance of the Sale Hearing. For the avoidance of doubt, "*Sale Order*" means the order (a) approving the Sale(s) and/or (b) confirming the Chapter 11 Plan, as applicable.

US 8633219

Declaration; and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as contemplated by Bankruptcy Rule 6003; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors and their respective estates, creditors, and other parties in interest; and the Court having found that proper and adequate notice of the Motion and hearing thereon has been given and that no other or further notice is necessary; and the Court having found that good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation upon the Motion and all of the proceedings had before the Court in connection with the Motion, it is HEREBY ORDERED THAT:

1.       The Motion is **GRANTED** as set forth herein.

2.       Any objections to the Motion not resolved or otherwise withdrawn are **OVERRULED**.

## I.       Important Dates and Deadlines

3.       The Sale Schedule as set forth below and all other dates and deadlines set forth in the Bidding Procedures are approved, subject to modification in accordance with the Bidding Procedures.

      a.       **<u>Indication of Interest Deadline</u>**.  April 8, 2022, at 5:00 p.m. (prevailing Central Time), is the deadline by which any party interested in a transaction may submit a non-binding Indication of Interest (and by which any party must submit an Indication of Interest in order to be eligible to be selected as a Stalking Horse Bidder).

3

b. **<u>Stalking Horse Designation Deadline</u>**. April 18, 2022 is the deadline by which the Debtors may enter into a Stalking Horse Agreement with respect to some or all of the Assets.

c. **<u>Bid Deadline</u>**. April 29, 2022, at 5:00 p.m. (prevailing Central Time), is the deadline by which Bids for the Assets (as well as the deposit and all other documentation required under the Bidding Procedures for Qualified Bidders) must be submitted.

d. **<u>Cure, Consent, or Preferential Right Objection Deadline</u>**. April 29, 2022, at 5:00 p.m. (prevailing Central Time), is the deadline (the "***Cure, Consent, or Preferential Right Objection Deadline***") by which (i) any objections to the proposed assumption and assignment of an Assigned Contract on any grounds, including without limitation, the amount of proposed Cure Costs, but excluding any objection to Adequate Assurance or on the basis of the identity of the Successful Bidder, must be filed with the Court, and (ii) any holder of a consent right or preferential purchase right may (a) object to the transfer of a lease without its consent or (b) exercise any preferential right with respect to the Assets.

e. **<u>Auction</u>**. May 4, 2022, at 10:00 a.m. (prevailing Central Time), is the date and time that the Auction, if any, will be held at the offices of Vinson & Elkins LLP, 2001 Ross Ave, Suite 3900, Dallas, Texas 75201, or at such later date, time, and location, as selected by the Debtors in accordance with the Bidding Procedures.

f. **<u>Sale Objection Deadline</u>**. May 6, 2022, at 5:00 p.m. (prevailing Central Time), is the deadline (the "***Sale Objection Deadline***") by which all objections to the Sale (including to proposed Adequate Assurance and/or the identity of the Successful Bidder) must be filed with the Court.

g. **<u>Sale Hearing</u>**. The hearing approving the Sale to the Successful Bidder(s) shall take place before the Court on May 13, 2022, at [●]:00 [●].m. (prevailing Central Time).

## II.     **The Bidding Procedures.**

4. The Bidding Procedures, substantially in the form attached hereto as **<u>Exhibit 1</u>**, are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed sale of the Assets. Any party desiring to bid on one or more individual Assets or all or substantially all of the Assets shall comply with the Bidding Procedures and this Bidding Procedures Order. The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

US 8633219

### III. The Auction.

5. If the Debtors receive two or more Qualified Bids with respect to All Assets or the same or similar Asset Package, as applicable, then the Debtors may conduct the Auction to determine the Successful Bidder(s) with respect to such Assets. The Debtors and their advisors shall direct and preside over the Auction; *provided* that the Debtors shall consult with the Consultation Parties during the Auction to the extent reasonably practicable.

6. At the Auction, Qualified Bidders that have submitted Qualified Bids by the Bid Deadline will be entitled, but will not be obligated, to submit Overbids.

7. Any initial Overbid to the Baseline Bid(s) shall be no less than the value of the Baseline Bid(s)'s Purchase Price of the Assets, plus two percent (2%) of the Baseline Bid's Purchase Price of the Assets, plus the amount of the Bid Protections, if such Baseline Bid was a Stalking Horse Bid.

8. Any subsequent Overbids shall be in increments of value equal to one percent (1%) of the Minimum Initial Overbid, as determined by the Debtors in an exercise of their reasonable business judgment or such other amount as determined by the Debtors in consultation with the Consultation Parties.

9. The Auction shall continue until the Debtors select, in their reasonable business judgment, with the prior written consent of the Agent and following consultation with the other Consultation Parties, pursuant to the Bidding Procedures, the highest or otherwise best Qualified Bid for All Assets or each of the Asset Packages, as applicable. Such Qualified Bid shall be declared the Successful Bid, and such Qualified Bidder, the Successful Bidder, and at which point the Auction will be closed.

10. The Debtors may, with the prior written consent of the Agent and following consultation with the other Consultation Parties, reject any Bid (regardless of whether such Bid is

5

a Qualified Bid) that, in the Debtors' reasonable business judgment, is (a) inadequate, insufficient, or not the highest or best Bid, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or the Bidding Procedures, or (c) contrary to, or otherwise not in the best interests of the Debtors' estates, affected stakeholders, or other parties in interest.

**IV.     Stalking Horse Bidder and Bid Protections.**

11.     The Debtors are authorized to select, with the prior written consent of the Agent and following consultation with the other Consultation Parties, one or more parties to be a Stalking Horse Bidder with respect to some or all of the Debtors' Assets and enter into a Stalking Horse Agreement, which provides such Stalking Horse Bidder with the Bid Protections.  No person or entity, other than any Stalking Horse Bidder, is entitled to Bid Protections.

12.     In the event that the Debtors select one or more parties to serve as the Stalking Horse Bidder, upon such selection, the Debtors shall file notice of each such Stalking Horse Bidder, Bid Protections, and Stalking Horse Agreement(s) with the Court and provide parties in interest three (3) days' notice of and an opportunity to object to the designation of such Stalking Horse Bidder or any of the terms of the Stalking Horse Agreement, including the proposed Bid Protections.  After such notice, and absent timely objection, the Stalking Horse Bidder and Stalking Horse Agreement, including the Bid Protections, shall be deemed approved without further order of the Court.  In the event an objection to the designation of such Stalking Horse Bidder or any of the terms of the Stalking Horse Agreement is filed, the Court may hold a hearing on an emergency basis to consider such objection.

**V.      Notice Procedures.**

13.     The Auction and Sale Notice substantially in the form attached hereto as **Exhibit 2** is approved.

14.     The following notice with respect to the Sale, the Auction, the Sale Hearing, and the Bidding Procedures Order constitutes good and adequate notice in compliance with, and in satisfaction of, the applicable requirements of Bankruptcy Rule 2002:

    c.     By not later than March 23, 2022, the Debtors shall serve by first-class mail, postage prepaid: (i) copies of the Bidding Procedures Order and the Bidding Procedures on the Notice Parties and (ii) the Auction and Sale Notice on the Sale Notice Parties; and

    a.     By not later than April 6, 2022, or as soon as reasonably practicable thereafter, the Debtors will publish a notice (the "***Publication Notice***") substantially similar to the Auction and Sale Notice (or a summary thereof), in *The New York Times* (National Edition) and local publications in North Dakota, Louisiana, and Mississippi, to be determined by the Debtors.

15.     No other or further notice of the Auction, the Sale, or the Sale Hearing shall be required.

**VI.     The Assumption and Assignment Procedures.**

16.     The Assumption and Assignment Procedures are approved.

17.     The notice to be provided under the Assumption and Assignment Procedures shall constitute adequate and sufficient notice and no additional notice need be provided.  In addition, the Cure, Consent, or Preferential Right Notice is reasonably calculated to provide any holders of consent rights with respect to the Assets or holders of any preferential rights associated with the Assets with reasonable and proper notice of the potential deemed waiver of any such rights should such holders fail to timely object to the transfer of any lease subject to a hard consent or fail to indicate its intent to exercise any preferential right, as set forth in the Cure, Consent, or Preferential Right Notice.

18.     On or before March 23, 2022, the Debtors shall file with the Court, and serve on the Contract Counterparties and any third parties that may hold hard consent or preferential rights

7

with respect to the Assets, the Cure, Consent, or Preferential Right Notice, substantially in the form attached hereto as **Exhibit 3**, including the Assigned Contracts Schedule.

19. Service of a Cure, Consent, or Preferential Right Notice shall not constitute any admission or agreement of the Debtors or a finding by the Court that such Assigned Contract is an executory contract or unexpired lease or that such Assigned Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Successful Bid.

20. Assigned Contract Objections, if any, must comply with the requirements set forth in the Motion and be filed with the Court no later than: (a) the Cure, Consent, or Preferential Right Objection Deadline or (b) the Sale Objection Deadline, as applicable. Each Contract Counterparty or holder of a hard consent right or any preferential right with respect to the Assets shall have until the Cure, Consent, or Preferential Right Objection Deadline (a) to object to the transfer of a lease without its consent or (b) to exercise any preferential right with respect to the Assets.

21. Any Assigned Contract Objection that remains unresolved as of the Sale Hearing, shall be resolved at the Sale Hearing, but such Assigned Contract shall be assumed and assigned only upon satisfactory resolution of the Assigned Contract Objection, to be determined in the Successful Bidder's discretion. If an Assigned Contract Objection is not satisfactorily resolved, the Successful Bidder may determine that such Assigned Contract should be rejected and not assigned, in which case the Successful Bidder will not be responsible for any Cure Costs or Adequate Assurance with respect to such contract.

22. If at any time: (a) the Debtors discover contracts inadvertently omitted from the Assigned Contracts Schedule; (b) the Successful Bidder identifies other executory contracts or unexpired leases that it desires to assume and assign in connection with the Sale; or (c) any proposed Cure Cost requires modification, then the Debtors may, at any time after the Assumption

8

and Assignment Notice Date but before the Sale Hearing: (x) supplement the Assigned Contracts Schedule with previously omitted Assigned Contracts; (y) remove any Assigned Contracts from the list of executory contracts and unexpired leases ultimately selected as Assigned Contracts that the Successful Bidder proposes be assumed and assigned to it in connection with the Sale or add to such list; and/or (z) modify the proposed Cure Costs.

23. Supplemental Assigned Contract Objections, if any, must comply with requirements set forth in the Motion and be filed with the Court no later than the applicable Supplemental Assigned Contract Objection Deadline. Each Contract Counterparty or holder of a hard consent right or any preferential right with respect to the Assets shall have until the applicable Supplemental Cure, Consent, or Preferential Right Objection Deadline (a) to object to the transfer of a lease without its consent or (b) to exercise any preferential right with respect to the Assets.

24. Any Supplemental Assigned Contract Objection that remains unresolved as of the Sale Hearing or Supplemental Assigned Contract Hearing, as applicable, shall be resolved at such hearing, but such Assigned Contract shall be assumed and assigned only upon satisfactory resolution of the Supplemental Assigned Contract Objection, to be determined in the Successful Bidder's discretion. If a Supplemental Assigned Contract Objection is not satisfactorily resolved, the Successful Bidder may determine that such Assigned Contract should be rejected and not assigned, in which case the Successful Bidder will not be responsible for any Cure Costs or Adequate Assurance with respect to such contract.

25. If a Contract Counterparty does not file an Assigned Contract Objection or Supplemental Assigned Contract Objection, and absent a subsequent order of the Court establishing an alternative Cure Cost: (a) the Cure Costs, if any, set forth in the Cure, Consent, or Preferential Right Notice (or Supplemental Cure, Consent, or Preferential Right Notice) shall be

controlling, notwithstanding anything to the contrary in any Assigned Contract or any other document; and (b) the Contract Counterparty will be deemed to have consented to the assumption and assignment of the Assigned Contract and the Cure Costs, if any, and will be forever barred from objecting to the assumption and assignment of such Assigned Contract and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such Assigned Contract against the Debtors or the Successful Bidder. In addition, any holder of a consent right or a preferential right with respect to the Debtors' Assets that receives the Auction and Sale Notice or the Cure, Consent, or Preferential Right Notice and fails to provide notice to the Debtors by the Cure, Consent, or Preferential Right Objection Deadline of such holder's denial of consent or intent to exercise such preferential right at the Auction, as applicable, shall be deemed to consent to the Sale and not elect to exercise such preferential right, as applicable, for purposes of the conveyance of the Assets to the Successful Bidder in consummation of the Sale(s).

26.     The inclusion of an Assigned Contract on the Assigned Contract Schedule or Supplemental Assigned Contract Schedule, will not: (a) obligate the Debtors to assume any Assigned Contract listed thereon or obligate the Successful Bidder to take assignment of such Assigned Contract; or (b) constitute any admission or agreement of the Debtors that such Assigned Contract is an executory contract or unexpired lease. Only those Assigned Contracts that are included on a schedule of assumed and assigned contracts attached to the definitive sale agreement with the Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement) will be assumed and assigned to the Successful Bidder.

**VII.    Miscellaneous.**

27.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

US 8633219

28.     The failure to include or reference a particular provision of the Bidding Procedures specifically in this Bidding Procedures Order shall not diminish or impair the effectiveness or enforceability of such provision.

29.     In the event of any inconsistency between this Bidding Procedures Order and the Motion and/or the Bidding Procedures, the Bidding Procedures shall govern in all respects.

30.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Bidding Procedures Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against the Debtors, a waiver of the Debtors' rights to subsequently dispute such claim or lien, or the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

31.     Bankruptcy Rule 6003(b) has been satisfied.

32.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the N.D. Tex. L.B.R. are satisfied by such notice.

33.     The requirements of Bankruptcy Rules 6004(h) and 6006(d) are hereby waived.

34.     The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Bidding Procedures Order.

# # # **End of Order** # # #

**Order submitted by:**

**VINSON & ELKINS LLP**
Michael A. Garza (Texas Bar No. 24126797)
Matthew J. Pyeatt (Texas Bar No. 24086609)
Trevor G. Spears (Texas Bar No. 24106681)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
mgarza@velaw.com
mpyeatt@velaw.com
tspears@velaw.com

- and -

David S. Meyer (*pro hac vice* pending)
George R. Howard (*pro hac vice* pending)
Lauren R. Kanzer (*pro hac vice* pending)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel: 212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com
ghoward@velaw.com
lkanzer@velaw.com

**PROPOSED ATTORNEYS FOR
THE DEBTORS AND DEBTORS IN POSSESSION**

## **EXHIBIT 1**

BIDDING PROCEDURES

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22-90000 (MXM)** |
| | § | |
| **ROCKALL ENERGY HOLDINGS, LLC,** | § | **(Chapter 11)** |
| ***et al.*,** | § | |
| | § | **(Joint Administration Requested)** |
| | § | |
| **Debtors.**[1] | § | |

**BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS**

On March 9, 2022 (the "***Petition Date***"), the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Northern District of Texas (the "***Court***"). On the Petition Date, the Debtors filed the *Motion of Debtors for Entry of Orders (A)(I) Approving Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief; and (B)(I) Approving the Sale of the Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. [●]] (the "***Bidding Procedures Motion***") seeking approval of, among other things, the procedures by which the Debtors are authorized to conduct an auction (the "***Auction***"), if any, for the sale (the "***Sale***") of all, substantially all, or any combination of the Debtors' assets (the "***Assets***") to a Successful Bidder (as defined below) to the extent there is one Sale of Assets, or multiple Successful Bidders to the extent there are multiple Sales of Assets.[2]  On [●], 2022, the Court entered an order with respect to the Bidding Procedures Motion [Docket No. [●]] (the "***Bidding Procedures Order***") approving the procedures contemplated herein (the "***Bidding Procedures***"), and granting certain related relief.

---

[1]     The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are:  Arrow Rock Energy, LLC (7549), Petro Harvester Operating Company, LLC (2136), Rockall Agent Corp. (1653), Rockall Energy Holdings, LLC (5784), Rockall Energy, LLC (6340), Rockall EOR, LLC (4136), Rockall Exploration Company, LLC (0547), Rockall Intermediate, Inc. (9759), Rockall LA, LLC (4270), Rockall Laurel, LLC (1178), Rockall Midstream, LLC (0917), Rockall MS, LLC (0740), Rockall ND, LLC (9311), Rockall Pine Prairie, LLC (5799), White Marlin Investment Company, LLC (9987), and White Marlin Midstream, LLC (1466).  The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is:  5005 LBJ Freeway, Suite 700, Dallas, TX 75244.

[2]     Capitalized terms used but not defined herein have the meaning given to such terms in the Bidding Procedures Motion.

## Marketing Process and Participation Requirements

**A.  Overview of Marketing Process and Assets to be Sold.**

On the Petition Date, the Debtors entered into that certain *Restructuring Support Agreement* dated as of March 9, 2022 with the Term Loan Agent and the Term Loan Lenders (each as defined below) (the "**RSA**").  The RSA contemplates that the Debtors will pursue confirmation of the *Debtors' Joint Prepackaged Chapter 11 Plan* [Docket No. 14] (as amended, modified, or supplemented from time to time, the "**Chapter 11 Plan**"), and reflects the agreement reached by the Debtors, the Term Loan Agent, and the Term Loan Lenders pursuant to which the Debtors will seek to sell their Assets in accordance with these Bidding Procedures.

The Chapter 11 Plan contemplates that the Debtors will continue their prepetition marketing process and pursue a Sale under these Bidding Procedures.  In the event that the proposed purchase price under the highest or otherwise best Qualified Bid from a third-party Qualified Bidder (or combination of Qualified Bids from third-party Qualified Bidders for multiple Asset Packages (each as defined below)) received by the Debtors is not sufficient to pay in full, in cash, all DIP Claims[3] and Secured Parties Claims[4], the Agent (as defined below) shall have the right to elect for the Debtors to proceed with a Sale in lieu of the Equitization Restructuring (as defined below).  Upon such election, the Debtors shall take all steps reasonably necessary to consummate such Sale(s) pursuant to the Chapter 11 Plan.  If the Agent does not elect for the Debtors to proceed with such a Sale, the Term Loan Lenders have agreed, subject to certain terms and conditions, to equitize all or a portion of the Term Loan Claims[5] pursuant to the Chapter 11 Plan (the "**Equitization Restructuring**").

As currently contemplated, any Sale shall be implemented through the Chapter 11 Plan, although in certain circumstances a Sale to a Successful Bidder may be implemented pursuant to section 363 of the Bankruptcy Code and a sale order, with the prior written consent of the Agent and the consent of the Debtors (such consent of the Debtors not to be unreasonably withheld, delayed, or conditioned).[6]  Accordingly, the Debtors are marketing for Sale and will consider Bids (as defined below):  (i)(A) for all or substantially all of the Debtors' Assets ("**All Assets**") to a Successful Bidder (as defined below) or (B) to the extent that, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties (as defined below), separating the Assets into more than one potential Sale is in the best interest of their estates, for subsets of the Debtors' Assets (each, an "**Asset Package**") to two or more Successful Bidder(s); and (ii) in the form of a reorganization or acquisition of the Debtors' equity interests, or a merger or other combination with one or more Successful Bidders.  Additionally, the Debtors may, in their reasonable business judgment, with the prior written consent of the Agent and following consultation with the other

---

[3]     "**DIP Claim**" has the meaning set forth in the Chapter 11 Plan.

[4]     "**Secured Parties Claim**" has the meaning set forth in the Chapter 11 Plan.

[5]     "**Term Loan Claim**" has the meaning set forth in the Chapter 11 Plan.

[6]     Any Sale implemented pursuant to (a) section 363 of the Bankruptcy Code and effectuated in accordance with the 363 Toggle (as defined in the RSA) or (b) pursuant to a Payout Event shall incorporate a wind-down budget in form and substance satisfactory to the Debtors, the DIP Agent, and the Majority Consenting Term Loan Lenders (as defined in the Chapter 11 Plan), as set forth in the Approved Budget (as defined in the DIP Credit Agreement).

2

Consultation Parties, consummate a Sale(s) of any Asset Package(s) and also pursue the Equitization Restructuring with respect to the Debtors' remaining Assets that are not subject to such Sale(s). References to the "Sale Hearing" (as defined below) shall also mean the hearing to confirm the Chapter 11 Plan via the plan sale provisions or the equitization provisions set forth therein.

If the Debtors do not receive any Qualified Bid (or any combination of Qualified Bids, when taken together, for separate Asset Packages) by the Bid Deadline (each as defined below) that is acceptable to the Agent, the Debtors may cancel the Auction and proceed to consummation of the Equitization Restructuring.

In connection with the marketing and Sale process set forth in these Bidding Procedures, the Debtors shall consult with (i) counsel to Goldman Sachs Bank USA, in its capacity as administrative agent and collateral agent (in such capacity, the "***Term Loan Agent***") under the Term Loan Credit Agreement,[7] in its capacity as administrative agent and collateral agent (in such capacity, the "***Intercreditor Agent***") under the Intercreditor Agreement,[8] and in its capacity as administrative agent and collateral agent (in such capacity, the "***DIP Agent***" and together in its capacity as Term Loan Agent and Intercreditor Agent, the "***Agent***") under the Debtors' proposed DIP Credit Agreement;[9] (ii) counsel to Shell Trading Risk Management, LLC ("***Shell***") as counterparty under the Shell Master Agreement[10] and the Intercreditor Agreement; and (iii) counsel to any official committee of unsecured creditors appointed in these chapter 11 cases (the "***Committee***") (counsel to the Agent, Shell, and the Committee, collectively, the "***Consultation Parties***"), as explicitly provided for in these Bidding Procedures.

**B.  Confidentiality Agreement.**

The Debtors, in consultation with their proposed investment banker, Lazard Frères & Co. LLC ("***Lazard***"), developed a list of Persons[11] whom they believe may be interested in, and whom the Debtors reasonably believe would have the financial resources to consummate, a Sale. The Debtors have distributed, or shall distribute (to the extent not already distributed), to each such Person and any other interested Person an "Information Package" consisting of: (i) a copy of these Bidding Procedures, the Bidding Procedures Order, and the Bidding Procedures Motion; (ii) a

---

[7]  "***Term Loan Credit Agreement***" means that certain *Credit and Guaranty Agreement*, dated as of September 20, 2018, among Rockall Energy, LLC, as borrower, Rockall Energy Holdings, LLC and certain of their respective subsidiaries, as guarantors, the Term Loan Agent, and the lenders party thereto from time to time (the "***Term Loan Lenders***") (as amended, modified, or supplemented from time to time).

[8]  "***Intercreditor Agreement***" means that certain *Intercreditor Agreement*, dated as of October 29, 2018, among the Rockall Energy Holdings, LLC, Rockall Energy, LLC, the Intercreditor Agent, and the counterparties thereto (as amended, modified, or supplemented from time to time).

[9]  "***DIP Credit Agreement***" means the proposed debtor-in-possession financing credit facility, with any such accompanying order(s) the "***Proposed DIP Order***".

[10]  "***Shell Master Agreement***" means that certain *ISDA Master Agreement*, dated as of October 19, 2018, between Shell and Rockall Energy, LLC (as amended, modified, or supplemented from time to time).

[11]  "***Person***" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

form confidentiality agreement (a "***Confidentiality Agreement***"); and (iii) such other materials as the Debtors deem appropriate under the circumstances.

To receive due diligence information, including full access to the Debtors' electronic data room and additional non-public information regarding the Debtors, a Person must (a) deliver an executed Confidentiality Agreement on terms acceptable to the Debtors (to the extent not already executed and delivered) and (b) demonstrate to the Debtors that the Person has, or can obtain, the financial wherewithal and ability to consummate a potential Sale, to each of: (i) the Debtors, c/o Rockall Energy Holdings, LLC, 5005 LBJ Freeway, Suite 700, Dallas, Texas 75244, Attn: Lewis Gillies; (ii) proposed counsel to the Debtors, (a) Vinson & Elkins LLP, 1114 Avenue of the Americas, 32nd Floor, New York, New York 10036, Attn: David S. Meyer (dmeyer@velaw.com) and Lauren Kanzer (lkanzer@velaw.com), (b) Vinson & Elkins LLP, 1001 Fannin Street, Suite 2500, Houston, Texas 77002, Attn: Mike Garza (mgarza@velaw.com), and (c) Vinson & Elkins LLP, 2001 Ross Ave, Suite 3900, Dallas, Texas 75201, Attn: Matthew J. Pyeatt (mpyeatt@velaw.com); (iii) proposed investment banker for the Debtors, (a) Lazard Frères & Co. LLC, 30 Rockefeller Plaza, New York, New York 10112, Attn: Christian Tempke (christian.tempke@lazard.com) and Stephen Golmont (stephen.golmont@lazard.com), and (b) Lazard Frères & Co. LLC, 600 Travis Street, 33rd Floor, Houston, Texas 77002, Attn: Kevin Bonebrake (kevin.bonebrake@lazard.com) and Zac Scotton (zac.scotton@lazard.com); and (iv) the proposed chief restructuring officer for the Debtors, Ankura Consulting Group, LLC, 2021 McKinney Avenue, Suite 240, Dallas, Texas 75201, Attn: Scott M. Pinsonnault (scott.pinsonnault@ankura.com) (collectively, the "***Debtor Notice Parties***").

**C.      Electronic Data Room and Due Diligence.**

After a Person delivers the executed Confidentiality Agreement in accordance with these Bidding Procedures, the Debtors will provide such Person with access to an electronic data room and due diligence information, as reasonably requested by such Person, and the Debtors shall post substantially all written due diligence provided to any such party to the Debtors' electronic data room. To the extent necessary and reasonably practicable, Lazard will also facilitate meetings between any such Person and the Debtors' other restructuring advisors and management team. The Debtors and their advisors will coordinate all reasonable requests from such Persons for additional information and due diligence access; *provided* that the Debtors may decline to provide such information to any Person in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, including if such Person has not established that it intends in good faith to, or has the capacity to, consummate a Sale, and the Debtors will have no further obligation to furnish due diligence information to any such Person or respond to any such Person's due diligence requests.

The due diligence period will end on the Bid Deadline (as defined below), and, after the Bid Deadline, the Debtors will have no obligation to furnish or update any due diligence information.

For any Person that the Debtors, in consultation with the Consultation Parties, determine to be a competitor of the Debtors or affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold or modify, or to delay providing, any due diligence information that the Debtors determine is business-sensitive or otherwise inappropriate for disclosure to such

Person at such time.

**All due diligence requests must be directed to Stephen Golmont (stephen.golmont@lazard.com) and Zac Scotton (zac.scotton@lazard.com).**

**D.  Non-Binding Indications of Interest.**

In order to be eligible to be selected as a Stalking Horse Bidder (as defined below), a Person must submit a non-binding indication of interest (an "***Indication of Interest***") in writing to the Debtor Notice Parties by no later than April 8, 2022, at 5:00 p.m. (prevailing Central Time) (the "***Indication of Interest Deadline***") (which deadline may be extended by the Debtors without notice or hearing before the Court); *provided*, *however*, that the Debtors reserve the right to waive the requirement for a Person to submit an Indication of Interest in order to be selected as a Stalking Horse Bidder in the Debtors' discretion, in consultation with the Consultation Parties, without further order from the Court.

The Indication of Interest must:  (i) identify the interested Person, including details on the acquisition structure, ownership structure, as well as legal form and jurisdiction of the interested Person; (ii) identify with reasonable specificity the Assets the party is interested in acquiring; (iii) set forth a proposed purchase price for the proposed Sale, including by identifying any cash and assumed liability consideration of the proposed Sale consideration; (iv) provide evidence of such interested Person's financial capacity to close a proposed Sale, which may include financial statements of, or verified financial commitments obtained by, such Person; (v) provide detailed information regarding the proposed financing sources; (vi) outline remaining due diligence requirements; and (vii) identify any proposed conditions to closing the Sale, including, but not limited to, required approvals.

The submission of an Indication of Interest by a party does not (i) obligate such Person to submit a Bid or to participate in the sale process, or (ii) exempt such Person from also having to submit a Bid by the Bid Deadline to participate in the Auction.

<u>**Selecting a Stalking Horse Bidder and Bid Protections**</u>

No later than April 18, 2022 (the "***Stalking Horse Designation Deadline***"), the Debtors may, as an exercise of their reasonable business judgment, with the prior written consent of the Agent and following consultation with the other Consultation Parties, enter into an agreement (a "***Stalking Horse Agreement***"), with one or more Persons that have submitted an Indication of Interest and have subsequently submitted a Bid that complies with the Bid Requirements (each as defined below) to act as a stalking horse bidder (the "***Stalking Horse Bidder***," and the Bid of such Stalking Horse Bidder, the "***Stalking Horse Bid***") with respect to some or all of the Debtors' Assets and provide such Stalking Horse Bidder with the Bid Protections (as defined below).

In connection with any Stalking Horse Agreement with a Stalking Horse Bidder and as approved by the Bidding Procedures Order, the Debtors shall be authorized (but not obligated), in an exercise of their reasonable business judgment, in consultation with the Consultation Parties, to (i) provide a break-up fee for a Stalking Horse Bidder in an amount not to exceed 2.5% of the cash portion of the purchase price and (ii) agree to reimburse the reasonable and documented out-of-pocket fees and expenses of such Stalking Horse Bidder in an aggregate amount not to exceed

$400,000.00 (collectively, the "***Bid Protections***"); *provided that* if there are multiple Stalking Horse Bidders for separate Asset Packages then the expense reimbursement component of the Bid Protections shall be pro-rated between each such Stalking Horse Bidder based on the total consideration of each Bid. The Debtors shall not provide a break-up fee to any Stalking Horse Bidder on account of the portion of such Bid that is a credit bid.

In the event that the Debtors select one or more Persons to serve as the Stalking Horse Bidder, upon such selection, the Debtors shall file notice of each such Stalking Horse Bidder, Bid Protections, and Stalking Horse Agreement(s) (the "***Stalking Horse Designation Notice***") with the Court and provide parties in interest three (3) days' notice of and an opportunity to object to the designation of such Stalking Horse Bidder or any of the terms of the Stalking Horse Agreement, including the proposed Bid Protections. After such notice, and absent timely objection, the Stalking Horse Bidder and Stalking Horse Agreement, including the Bid Protections, shall be deemed approved without further order of the court.

## Bidding and Auction Process

**A.    Bid Deadline.**

Any Person that desires to make a binding proposal, solicitation, or offer (each, a "***Bid***") shall transmit the Bid to the Debtor Notice Parties so as to be **actually received** on or before April 29, 2022, at 5:00 p.m. (prevailing Central Time) (the "***Bid Deadline***") (which deadline may be extended by the Debtors, with the prior written consent of the Agent, without notice or hearing before the Court).

**B.    Bid Requirements.**

All Bids must be submitted in writing and satisfy the following requirements (collectively, the "***Bid Requirements***"):

     i.    *Purchase Price.*

Each Bid must clearly set forth the purchase price to be paid, specifying (a) the cash and (b) assumed liability consideration, in sufficient detail satisfactory to the Debtors, in consultation with the Consultation Parties (the "***Purchase Price***"). Each Bid for a combination of Assets, other than for all or substantially all of the Assets, must: (x) provide a breakdown of the share of the Purchase Price allocable to each of the Assets included in the Bid; (y) state whether the Bid is conditioned upon the Bid being a Successful Bid (as defined below) for any of the other Assets included in the Bid (and, if so, which Assets); and (z) state whether the Person is willing to purchase any of the Assets included in the Bid individually, and if so, the price such Person would pay for each such Asset.

     ii.    *Deposit.*

Each Bid (other than the Equitization Restructuring) must be accompanied by a cash deposit in an amount equal to 10% of the cash portion of the Purchase Price (*i.e.*, the aggregate value of the cash and non-cash assumed liability consideration) (the "***Deposit***"), to be submitted by wire transfer to an escrow account to be identified and established by the Debtors.

   iii.    *Marked Asset Purchase Agreement.*

Each Bid (other than the Equitization Restructuring) must include a draft asset purchase agreement substantially in the form of the Form of Asset Purchase Agreement as provided in the electronic data room, or such other form as may be acceptable to the Debtors, in consultation with the Consultation Parties (together with a redline version against the Form of Asset Purchase Agreement), including the exhibits and schedules related thereto and any related documents or other material documents necessary to consummate the Sale contemplated by the Bid (collectively, the "***Sale Documents***").

   iv.    *Ability to Close/Committed Financing.*

Each Bid (other than the Equitization Restructuring) must affirmatively state that the Person is capable of consummating a Sale within fifteen (15) calendar days of such Bid being declared a Successful Bid (and contain evidence acceptable to the Debtors, in consultation with the Consultation Parties, of the same); *provided*, *however*, that failure to provide such an affirmative statement will not disqualify a Bid from being considered a Qualified Bid, but will be a factor considered by the Debtors, the Agent, and the other Consultation Parties in determining whether such Bid is a Qualified Bid.  To the extent that a Bid is not accompanied by evidence of such Person's capacity to consummate the Sale set forth in its Bid with cash on hand, each Bid must include committed financing, documented to the Debtors' satisfaction, in consultation with the Consultation Parties, that demonstrates that such Person has received sufficient debt and/or equity funding commitments to satisfy the Bid's Purchase Price and other obligations thereunder. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have only those covenants and conditions acceptable to the Debtors, in consultation with the Consultation Parties.

   v.    *No Financing or Diligence Outs.*

A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, or on the receipt of any regulatory or third-party approvals (except as provided herein), but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions.

   vi.    *Identity.*

Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Person if such Person is an entity formed for the purpose of consummating the proposed Sale contemplated by such Bid), and the complete terms of any such participation.  Each Bid must also include contact information for the specific person(s) and counsel whom the Debtors' advisors should contact regarding such Bid.

   vii.    *Authorization.*

Each Bid must contain sufficient evidence that the Person has obtained authorization or

7

approval from its board of directors (or a comparable governing body) with respect to the submission of its Bid and the consummation of the Sale contemplated in such Bid.

> *viii.* *Assumed Liabilities.*

Each Bid must identify the Debtors' liabilities that the Person seeks to assume.

> *ix.* *Adequate Assurance of Future Performance.*

Each Bid must: (a) identify any executory contracts and unexpired leases to be assumed and assigned in connection with such Bid; (b) provide for the payment by the Person of all cure costs related to such executory contracts and unexpired leases; and (c) demonstrate, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, that the Person can provide adequate assurance of future performance under all such executory contracts and unexpired leases.

> *x.* *Government and Third-Party Approvals.*

Each Bid must include a description of all governmental, licensing, regulatory, or other third-party approvals or consents that are required to consummate the proposed Sale, together with evidence satisfactory to the Debtors, in consultation with the Consultation Parties, of the ability to obtain such approvals or consents in a timely manner, as well as a description of any material contingencies, conditions, or other obligations that will be imposed upon, or that will otherwise apply to, obtaining any such approvals or consents (or written certification of the absence thereof). To the extent consummation of the proposed Sale would require approval or consent from a surety as to the transfer, assumption, or assignment of existing surety bonds issued on behalf of the Debtors, a Bid must contain evidence of the Person's ability to secure a surety bond(s) or any adequate alternative that will fully release and discharge such surety from any obligation it may have under the current bonds.

> *xi.* *Government and Third-Party Approvals Timeframe.*

Each Bid must set forth an estimated timeframe for obtaining any required governmental, licensing, regulatory, or other third-party approvals or consents for consummating any proposed Sale.

> *xii.* *As-Is, Where-Is.*

Each Bid must include a written acknowledgement and representation that the Person: (a) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever,

whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction.

      *xiii.*     *Honoring the Bid Procedures.*

Each Bid must affirmatively state agreement, and by submitting its Bid, each Person is so agreeing, to abide by and honor the terms of these Bidding Procedures (including if such Person is declared a Successful Bidder or Backup Bidder (each as defined below)) and to refrain from submitting a Bid or seeking to reopen the Auction after conclusion of the Auction. The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Assets reflected in such Bid.

      *xiv.*     *Additional Diligence.*

Each Person shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding the Bid.

      *xv.*     *Expenses.*

No Bid, except for a Stalking Horse Bid, shall contemplate or request (and no Person that is not a Stalking Horse Bidder shall receive) any break-up fee, transaction fee, termination fee, expense reimbursement, or any similar type of payment or reimbursement, and by submitting its Bid, each Person is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including any substantial contribution claim or any other claim under section 503(b) of the Bankruptcy Code.

## C.    Information to be Provided to the Consultation Parties.

The Debtors will promptly (but in any event no later than three (3) business days) notify the Consultation Parties upon the occurrence of any Person executing a Confidentiality Agreement. The Debtors will promptly (but in any event no later than one (1) business day) notify the Consultation Parties upon the occurrence of any Person submitting an Indication of Interest. The Debtors will promptly (but in any event no later than one (1) business day following the submission of Bids) provide the Consultation Parties with a copy of each Bid received; *provided* that any confidential information shall only be shared with the Consultation Parties on a professional-eyes'-only basis; *provided further* that the Debtors shall not be required to consult with any Consultation Party whose client submits a Bid (other than, in the case of the Agent, the Equitization Restructuring) or has a Bid submitted on its behalf for so long as such Bid remains open, or if the Debtors determine, in their reasonable business judgment, that consulting with such Consultation Party regarding any issue, selection, or determination would be likely to have a chilling effect on potential bidding or otherwise be contrary to goal of maximizing value for the Debtors' estates from the sale process.

**D.** **Designation of Qualified Bidders.**

    *i.* *Qualified Bidder.*

A Bid will be considered a "***Qualified Bid***," and each Person that submits a Qualified Bid will be considered a "***Qualified Bidder***," if the Debtors determine in their reasonable business judgment, with the prior written consent of the Agent and following consultation with the other Consultation Parties, that such Bid: (a) satisfies the Bid Requirements and (b) is reasonably likely to be consummated, if selected as a Successful Bid, within a timeframe acceptable to the Debtors, in consultation with the Consultation Parties.

Notwithstanding anything to the contrary herein, (a) the Equitization Restructuring shall be considered a Qualified Bid, and the Agent shall be a Qualified Bidder with respect thereto; and (b) any timely Bid submitted in the form of a reorganization or acquisition of the Debtors' equity interests, or a merger or other combination with a third party will be deemed a Qualified Bid, and any such bidder shall be considered a Qualified Bidder, if it otherwise complies with the requirements set forth herein.

    *ii.* *Notification.*

Within four (4) days after the Bid Deadline, the Debtors will notify each Person whether such Person is a Qualified Bidder.

    *iii.* *Bid Modifications.*

Between the date that the Debtors notify a Person that it is a Qualified Bidder and the Auction: (a) the Debtors, in consultation with the Consultation Parties, may discuss, negotiate, or seek clarification or enhancement of any Qualified Bid from a Qualified Bidder; and (b) a Qualified Bidder may not, without the prior written consent of the Debtors (which shall consult with the Consultation Parties before granting such consent), modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid; *provided* that any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

    *iv.* *Combination of Bids; Overlapping Bids.*

Notwithstanding anything herein to the contrary, the Debtors reserve the right, in consultation with the Consultation Parties, to work with: (a) Persons and Qualified Bidders to aggregate two or more Indications of Interest or Bids into a single consolidated Bid prior to the Bid Deadline; (b) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction; and (c) any Person in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid. The Debtors, in consultation with the Consultation Parties, may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Assets such that, if taken together in the aggregate, the Bids would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction).

**E.     Bid Selection and Criterion.**

     *i.     Baseline Bid.*

No later than one (1) business day before the Auction, the Debtors will notify all Qualified Bidders of the highest or otherwise best Qualified Bid with respect to: (a) All Assets or (b) one or more Asset Packages.  Each such highest or otherwise best Qualified Bid, which Qualified Bid may be a Stalking Horse Bid, shall be a "***Baseline Bid***" and the Debtors shall provide copies of the documents supporting each Baseline Bid to all Qualified Bidders.

     *ii.     Bid Assessment Criteria.*

The Debtors' determination, with the prior written consent of the Agent, of which Qualified Bid(s) constitutes a Baseline Bid and, ultimately, a Successful Bid shall take into account any factors the Debtors, in consultation with the Consultation Parties, deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things:  (a) the type and amount of Assets sought to be purchased and obligations to be assumed; (b) the amount and nature of the Purchase Price; (c) the Qualified Bidder's ability to consummate a Sale and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the Qualified Bid; (e) the effect on the Debtors' ability to wind down their estates or confirm the Chapter 11 Plan in accordance with applicable law; and (f) the tax consequences of such Qualified Bid.

**F.     Auction Procedure.**

     *i.     Time and Place.*

If the Debtors receive two or more Qualified Bids with respect to All Assets or the same or similar Asset Package, as applicable, then the Debtors will conduct the Auction to determine the Successful Bidder(s) with respect to such Assets.  The Auction shall take place at 10:00 a.m. (prevailing Central Time) on May 4, 2022, at the offices of Vinson & Elkins LLP, 2001 Ross Ave, Suite 3900, Dallas, Texas 75201 and by videoconference, or at such later date, time, or other location (including by videoconference), as selected by the Debtors, in consultation with the Consultation Parties.  If the Debtors receive only one Qualified Bid with respect to All Assets or the same or similar Asset Package, as applicable, then the Debtors, with the prior written consent of the Agent in consultation with the other Consultation Parties, may select such Qualified Bid as the Successful Bid and notify all other Qualified Bidders promptly thereafter.

     *ii.     Conducting the Auction.*

The Debtors and their advisors shall direct and preside over the Auction, *provided* that the Debtors shall consult with the Consultation Parties during the Auction to the extent reasonably practicable.  At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid(s) and, if applicable, the Asset Packages.  Any Bids made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid(s) shall be "***Overbids***" and must comply with the conditions set forth below and shall be made and received on an open basis, with all material terms of each Overbid fully disclosed to all other Qualified Bidders.  The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline

Bid(s), all Overbids, and the Successful Bid(s). The Debtors may, with the prior written consent of the Agent and following consultation with the other Consultation Parties, (a) select, in their reasonable business judgment, pursuant to these Bidding Procedures, the highest or otherwise best Bid(s) and the Successful Bidder(s) or Backup Bidder(s); and (b) reject any Bid (regardless of whether such Bid is a Qualified Bid) that, in the Debtors' reasonable business judgment, is (x) inadequate, insufficient, or not the highest or best Bid, (y) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or these Bidding Procedures, or (z) contrary to, or otherwise not in the best interests of, the Debtors' estates, affected stakeholders, or other parties in interest. Notwithstanding anything herein to the contrary, the Debtors may, in their reasonable business judgment, in consultation with the Consultation Parties, add or modify any procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction.

     *iii.*    *Terms of Overbids.*

     1.   <u>Minimum Initial Overbid</u>: Any initial Overbid to the Baseline Bid(s) shall be no less than the value of the Baseline Bid(s)'s Purchase Price of the Assets, plus 2% of the Baseline Bid(s)'s Purchase Price of the Assets, plus the amount of the Bid Protections, if such Baseline Bid was a Stalking Horse Bid.

     2.   <u>Minimum Overbid Increments</u>: Any subsequent Overbids shall be in increments of value equal to 1% of the Minimum Initial Overbid, as determined by the Debtors in an exercise of their reasonable business judgment or such other amount as determined by the Debtors in consultation with the Consultation Parties. Notwithstanding anything herein to the contrary, the Debtors reserve the right, in their reasonable business judgment, in consultation with the Consultation Parties, to adjust the minimum Overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis.

     3.   <u>Announcing Highest Bid</u>: After each Overbid, the Debtors shall announce the material terms of the Overbid, including the value attributed to the Overbid.

     *iv.*    *Eligibility.*

Only Qualified Bidders that have submitted Qualified Bids by the Bid Deadline are eligible to participate in the Auction, subject to other limitations as may be imposed by the Debtors in accordance with these Bidding Procedures; *provided* that such other limitations are (a) not inconsistent with the Bidding Procedures Order, any other order of the Court, or the Bankruptcy Code, (b) disclosed orally or in writing to all Qualified Bidders, and (c) determined by the Debtors, with the prior written consent of the Agent and following consultation with the other Consultation Parties, to further the goals of these Bidding Procedures. Notwithstanding anything herein to the contrary, if, at or prior to the Auction, a Qualified Bidder withdraws from participating in the Auction, the Debtors may, in their discretion, in consultation with the Consultation Parties, permit such Qualified Bidder to rejoin and participate in the Auction.

*v.*     *Attendance.*

Qualified Bidders participating in the Auction must appear in person (which may be by videoconference) at the Auction or through a duly authorized representative. If a Qualified Bidder appears through a duly authorized representative, such representative must have been granted a valid and enforceable power of attorney or have other written proof evidencing his or her ability to bind such Person, which document(s) shall be delivered to the Debtors at least one (1) business day before the Auction. The Consultation Parties, the U.S. Trustee, and, representatives of Shell and the Committee may attend the Auction in person, telephonically, or by videoconference.

*vi.*     *No Collusion; Good-Faith Bona Fide Offer.*

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that: (a) it has not engaged in any collusion with respect to the bidding; (b) it has not entered into any exclusivity arrangements with any of the Debtors' vendors or contract counterparties in connection with its Bid; and (c) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed Sale if selected as a Successful Bidder. For the avoidance of doubt, any prospective bidder may contact Lazard if it desires to seek to obtain financing from one or more Term Loan Lenders. Any such prospective bidder may, with the prior written consent of Lazard (email being sufficient), engage in non-exclusive discussions and enter into non-exclusive financing arrangements with one or more Term Loan Lenders, it being understood that any such discussions and arrangements can take place without further notice to or involvement of the Debtors or their advisors; *provided* that the Term Loan Lenders shall maintain and provide to Lazard a weekly log of such discussions, including the date and time of the contact, the names of the individuals who attend such discussions, and a summary of the topics discussed.

*vii.*     *Adjourning and Reopening the Auction.*

Notwithstanding anything else herein to the contrary, the Debtors reserve the right, in their reasonable business judgment, in consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things: (a) facilitate discussions between the Debtors and Qualified Bidders; (b) allow Qualified Bidders to consider how they wish to proceed; (c) alter or combine Asset Packages; and (d) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Sale at the prevailing Overbid amount.

The Debtors are authorized, in consultation with the Consultation Parties, to reopen the Auction with respect to all or a portion of the Assets at any time prior to the selection and announcement by the Debtors of one or more Successful Bids for such Assets.

*viii.*     *Closing the Auction.*

The Auction shall continue until the Debtors select, in their reasonable business judgment, with the prior written consent of the Agent and following consultation with the other Consultation Parties, pursuant to these Bidding Procedures, the highest or otherwise best Qualified Bid for All Assets or each of the Asset Packages, as applicable. Each such Qualified Bid shall be declared a

13

"***Successful Bid***," and each such Qualified Bidder, a "***Successful Bidder***," and the Auction will be closed.  The Debtors may also select, in their reasonable business judgment, in consultation with the Consultation Parties, pursuant to these Bidding Procedures, the next-highest or otherwise second-best Qualified Bid for All Assets or each Asset Package, as applicable, to be a "***Backup Bidder***."  As soon as reasonably practicable after closing the Auction, the Debtors shall finalize definitive documentation to implement the terms of each Successful Bid and, as applicable, cause such definitive documentation, as the Debtors determine to be relevant, to be filed with the Court. The acceptance by the Debtors of any Successful Bid is conditioned upon approval by the Court of such Successful Bid.

   ix.  *Backup Bidder.*

   1.  <u>Designation of Backup Bidder</u>:  If the Auction is conducted, any Qualified Bidder designated by the Debtors as a Backup Bidder shall be required to serve as a Backup Bidder until such time as the applicable Sale is consummated, and each Qualified Bidder shall agree and be deemed to agree to be a Backup Bidder if so designated by the Debtors.

   2.  <u>Identity of Backup Bidder</u>:  The identity of each Backup Bidder and the amount and material terms of the Qualified Bid of each such Backup Bidder shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder(s).  Each Backup Bidder shall be required to keep its Qualified Bid (or if such Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until such time as the applicable Sale is consummated.

   3.  <u>Consummating a Sale with Backup Bidder</u>:  If a Successful Bidder fails to consummate the approved Sale contemplated by its Successful Bid, then the Debtors may select the applicable Backup Bidder as a Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes.  The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder, as disclosed at the Sale Hearing (as defined below), following notice to the Consultation Parties and without further order of the Court or notice to any other Person.

   x.  *Return of Deposit.*

   The Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to any Successful Bidder and any Backup Bidder) within three (3) business days after the Auction is closed, or as soon as is reasonably practicable thereafter.  Upon the return of the Deposits, the applicable Qualified Bidders shall receive any interest that will have accrued thereon.

   The Deposit of any Successful Bidder (including a Backup Bidder which becomes a Successful Bidder) shall be applied to the purchase price of the applicable Sale at closing.  If a Successful Bidder (including a Backup Bidder which becomes a Successful Bidder) fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors

14

will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any rights, remedies, or causes of action that may be available to the Debtors. If a Successful Bidder consummates a proposed transaction or fails to consummate a proposed transaction but the Debtors elect to not consummate the proposed transaction with the applicable Backup Bidder, then such Backup Bidder's Deposit shall be returned within three (3) business days thereof, or as soon as is reasonably practicable thereafter.

> xi.    *Modification of Bidding Procedures.*

The Debtors reserve their rights to amend, modify, supplement, or waive these Bidding Procedures in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, with the prior written consent of the Agent and following consultation with the other Consultation Parties, without further order from the Court, in any manner that will best promote the goals of these Bidding Procedures, or impose, at or prior to the Auction, additional customary terms and conditions on a Sale, including, without limitation: (a) extending or modifying any of the dates and deadlines set forth in these Bidding Procedures and (b) adjourning or canceling the Auction.

> xii.    *Consent to Jurisdiction.*

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction or the construction and enforcement of these Bidding Procedures.

## G.    **Sale Hearing and Confirmation Hearing**

A hearing to consider approval of the Sale(s) to one or more Successful Bidders pursuant to the Chapter 11 Plan (or, with the prior written consent of the Agent and the consent of the Debtors (such consent of the Debtors not to be unreasonably withheld, delayed, or conditioned), pursuant to a sale order under section 363 of the Bankruptcy Code) (the "***Sale Hearing***") will be held at [●]:[●] [●].m. (prevailing Central Time) on May 13, 2022. The Sale Hearing may be the hearing to consider approval of the Chapter 11 Plan or a separate hearing, in each case depending on the terms of the Successful Bid(s). The Sale Hearing will be conducted before the Honorable Judge Mullin, via videoconference or at the Court, Room 128, U.S. Courthouse, 501 W. Tenth Street, Fort Worth, Texas 76102. The Sale Hearing may be continued to a later date by the Debtors, with the prior written consent of the Agent, by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any Person.

15

Dated:  March [●], 2022
Dallas, Texas

/s/ *DRAFT*

**VINSON & ELKINS LLP**
Michael A. Garza (Texas Bar No. 24126797)
Matthew J. Pyeatt (Texas Bar No. 24086609)
Trevor G. Spears (Texas Bar No. 24106681)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel:  713.758.2222
Fax: 713.758.2346
mgarza@velaw.com; mpyeatt@velaw.com;
tspears@velaw.com

- and -

David S. Meyer (*pro hac vice* pending)
George R. Howard (*pro hac vice* pending)
Lauren R. Kanzer (*pro hac vice* pending)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel:  212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; ghoward@velaw.com;
lkanzer@velaw.com

**PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

## **EXHIBIT 2**

AUCTION AND SALE NOTICE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22-90000 (MXM)** |
| | § | |
| **ROCKALL ENERGY HOLDINGS, LLC,** | § | **(Chapter 11)** |
| ***et al.*,** | § | |
| | § | **(Joint Administration Requested)** |
| | § | |
| **Debtors.**[1] | § | |

### NOTICE OF THE AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that, on March 9, 2022, the above-captioned debtors and debtors in possession (collectively, the "***Debtors***"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Northern District of Texas (the "***Court***").

**PLEASE TAKE FURTHER NOTICE** that, on March 9, 2022, the Debtors filed the *Emergency Motion for Entry of Orders (A)(I) Approving Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Scheduling Hearings and Objection Deadlines With Respect to the Sale, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures; and (B)(I) Approving the Sale of the Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. [●]] (the "***Motion***").[2]

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2022, the Court entered the *Order (I) Approving Bidding Procedures, (II) Scheduling the Bid Deadline and the Auction, (III) Scheduling Hearing and Objection Deadlines With Respect to the Sale, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief* [Docket No. [●]] (the "***Bidding Procedures Order***") granting the Motion as more fully set forth therein and, among other things, approving the Bidding Procedures. A final hearing to approve the Auction and Sale is scheduled to take place on

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Arrow Rock Energy, LLC (7549), Petro Harvester Operating Company, LLC (2136), Rockall Agent Corp. (1653), Rockall Energy Holdings, LLC (5784), Rockall Energy, LLC (6340), Rockall EOR, LLC (4136), Rockall Exploration Company, LLC (0547), Rockall Intermediate, Inc. (9759), Rockall LA, LLC (4270), Rockall Laurel, LLC (1178), Rockall Midstream, LLC (0917), Rockall MS, LLC (0740), Rockall ND, LLC (9311), Rockall Pine Prairie, LLC (5799), White Marlin Investment Company, LLC (9987), and White Marlin Midstream, LLC (1466). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 5005 LBJ Freeway, Suite 700, Dallas, TX 75244.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Bidding Procedures Order (as defined herein), as applicable. Copies of the Motion, the Bidding Procedures Order, and all other pleadings filed in these chapter 11 cases can be obtained free of charge on the website of the Debtors' claims and noticing agent at: http://cases.stretto.com/Rockall.

US 8633219

May 13, 2022, at [●]:00 [●].m. (prevailing Central Time). **All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.**

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures Order, the Debtors are authorized to enter into one or more Stalking Horse Agreement(s) (if any) in connection with the Sale(s). In the event the Debtors select one or more parties to serve as a Stalking Horse Bidder, upon such selection, the Debtors shall provide parties in interest three (3) business days' notice of and an opportunity to object to the designation of such Stalking Horse Bidder or any of the Bid Protections set forth in the Stalking Horse Agreement, and absent objection, the Debtors' selection of such Stalking Horse Bidder shall be deemed designated without further order of the Court.

**PLEASE TAKE FURTHER NOTICE** that, to ensure that the Auction and Sales process maximizes value for the benefit of the Debtors' estates, certain key dates and deadlines have been established by the Debtors, pursuant to the Bidding Procedures Order, and are as follows:

a. **Indication of Interest Deadline**. April 8, 2022, at 5:00 p.m. (prevailing Central Time), is the deadline by which any party interested in a transaction may submit a non-binding Indication of Interest (and by which any party must submit an Indication of Interest in order to be eligible to be selected as a Stalking Horse Bidder).

b. **Stalking Horse Designation Deadline**. April 18, 2022 is the deadline by which the Debtors may enter into a Stalking Horse Agreement with respect to some or all of the Assets.

c. **Bid Deadline**. April 29, 2022, at 5:00 p.m. (prevailing Central Time), is the deadline by which Bids for the Assets (as well as the deposit and all other documentation required under the Bidding Procedures for Qualified Bidders) must be submitted.

d. **Cure, Consent, or Preferential Right Objection Deadline**. April 29, 2022, at 5:00 p.m. (prevailing Central Time), is the deadline (the "***Cure, Consent, or Preferential Right Objection Deadline***") by which (i) any objections to the proposed assumption and assignment of an Assigned Contract on any grounds, including without limitation, the amount of proposed Cure Costs, but excluding any objection to Adequate Assurance or on the basis of the identity of the Successful Bidder, must be filed with the Court, and (ii) any holder of a consent right(s) and/or preferential purchase right(s) shall (a) object to the transfer of a lease without its consent or (b) exercise any preferential right with respect to the Assets.

e. **Auction**. May 4, 2022, at 10:00 a.m. (prevailing Central Time), is the date and time that the Auction, if any, will be held at the offices of Vinson & Elkins LLP, 2001 Ross Ave, Suite 3900, Dallas, Texas 75201, or at such later date, time, and location, as selected by the Debtors in accordance with the Bidding Procedures.

f. **Sale Objection Deadline**. May 6, 2022, at 5:00 p.m. (prevailing Central Time), is the deadline (the "***Sale Objection Deadline***") by which all objections to the Sale

(including to proposed Adequate Assurance and/or the identity of the Successful Bidder) must be filed with the Court.

g.   **Sale Hearing**.  The hearing approving the Sale to the Successful Bidder(s) shall take place before the Court on May 13, 2022, at [●]:00 [●].m. (prevailing Central Time).

**PLEASE TAKE FURTHER NOTICE** that, objections, if any, to the proposed assumption and assignment of, and/or Cure Costs under, a potential Assigned Contract must be (a) in writing; (b) comply with the applicable provisions of the Bankruptcy Rules, the N.D. Tex. L.B.R., and any order governing the administration of these chapter 11 cases; (c) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; (d) be filed with the Court **no later than the Cure, Consent, or Preferential Right Objection Deadline**, or **April 29, 2022 at 5:00 p.m. (prevailing Central Time)**; and (e) be served on the following parties (the "***Objection Notice Parties***"):

a.   Proposed counsel to the Debtors: (a) Vinson & Elkins LLP, 1114 Avenue of the Americas, 32nd Floor, New York, New York 10036, Attn: David S. Meyer (dmeyer@velaw.com) and Lauren Kanzer (lkanzer@velaw.com), (b) Vinson & Elkins LLP, 845 Texas Ave., Suite 4700, Houston, Texas 77002, Attn: Mike Garza (mgarza@velaw.com), and (c) Vinson & Elkins LLP, 2001 Ross Ave, Suite 3900, Dallas, Texas 75201, Attn: Matthew J. Pyeatt (mpyeatt@velaw.com);

b.   The Office of the United States Trustee for the Northern District of Texas: Earle Cabell Federal Bldg., 1100 Commerce St., Room 976, Dallas, Texas 75242;

c.   Counsel to the DIP Agent: (a) Cleary Gottlieb Steen & Hamilton, One Liberty Plaza, New York, New York, 10006, Attn: Sean A. O'Neal; and (b) Bonds Ellis Eppich Schafer Jones LLP, 420 Throckmorton Street, Suite 1000, Fort Worth, Texas 76102, Attn: Joshua N. Eppich and H. Brandon Jones;

d.   Counsel to Shell: Reed Smith, LLP, 2850 N. Harwood Street, Suite 1500, Dallas, TX 75201, Attn:  Michael P. Cooley and Devan Dal Col;

e.   Counsel to any statutory committee appointed in these chapter 11 cases; and

f.   Any parties who have filed requests for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE** that, any party holding a hard consent right or any preferential purchase right with respect to the Assets shall (a) object to the transfer of a lease without such party's consent or (b) indicate their intent to exercise any preferential right with respect to the Assets by notifying the Debtors, in each case, **no later than the Cure, Consent, or Preferential Right Objection Deadline**, or **April 29, 2022 at 5:00 p.m. (prevailing Central Time).**

US 8633219

**PLEASE TAKE FURTHER NOTICE** that, objections, if any, to any proposed Sale or the proposed Adequate Assurance or to the identity of the Successful Bidder, must be (a) in writing; (b) comply with the applicable provisions of the Bankruptcy Rules, the N.D. Tex. L.B.R., and any order governing the administration of these chapter 11 cases; (c) state with specificity the nature of the objection and the adequate assurance amount purportedly required, together with any applicable and appropriated documentation in support thereof; (d) be filed with the Court **no later than the Sale Objection Deadline**, or **May 6, 2022 at 5:00 p.m. (prevailing Central Time)**; and (e) be served on the Objection Notice Parties.

**PLEASE TAKE FURTHER NOTICE THAT, UNLESS AN OBJECTION IS TIMELY FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT AND THE COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.**

US 8633219

Dated:  March [●], 2022
Dallas, Texas

/s/  *DRAFT*

**VINSON & ELKINS LLP**
Michael A. Garza (Texas Bar No. 24126797)
Matthew J. Pyeatt (Texas Bar No. 24086609)
Trevor G. Spears (Texas Bar No. 24106681)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel:  713.758.2222
Fax: 713.758.2346
mgarza@velaw.com; mpyeatt@velaw.com;
tspears@velaw.com

- and -

David S. Meyer (*pro hac vice* pending)
George R. Howard (*pro hac vice* pending)
Lauren R. Kanzer (*pro hac vice* pending)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel:  212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; ghoward@velaw.com;
lkanzer@velaw.com

**PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

## **EXHIBIT 3**

CURE, CONSENT, OR PREFERENTIAL RIGHT NOTICE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22-90000 (MXM)** |
| | § | |
| **ROCKALL ENERGY HOLDINGS, LLC,** | § | **(Chapter 11)** |
| ***et al.*,** | § | |
| | § | **(Joint Administration Requested)** |
| | § | |
| **Debtors.**[1] | § | |

**NOTICE TO CONTRACT COUNTERPARTIES
AND THIRD-PARTY HOLDERS OF CONSENT RIGHTS AND
PREFERENTIAL PURCHASE RIGHTS OF (I) POTENTIAL ASSUMPTION
AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (II) CURE
AMOUNTS AND ADEQUATE ASSURANCE IN CONNECTION THEREWITH**

      **You are receiving this notice because you may be a counterparty to a contract or lease with the above-captioned debtors and debtors in possession.  Please read this notice carefully as your rights may be affected by the potential transactions described herein.**

      **PLEASE TAKE NOTICE** that, on March 9, 2022, the above-captioned debtors and debtors in possession (collectively, the "***Debtors***"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Northern District of Texas (the "***Court***").

      **PLEASE TAKE FURTHER NOTICE** that, on March 9, 2022, the Debtors filed the *Emergency Motion for Entry of Orders (A)(I) Approving Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Scheduling Hearings and Objection Deadlines With Respect to the Sale, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures; and (B)(I) Approving the Sale of the Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. [●]] (the "***Motion***").[2]

---

[1]     The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are:  Arrow Rock Energy, LLC (7549), Petro Harvester Operating Company, LLC (2136), Rockall Agent Corp. (1653), Rockall Energy Holdings, LLC (5784), Rockall Energy, LLC (6340), Rockall EOR, LLC (4136), Rockall Exploration Company, LLC (0547), Rockall Intermediate, Inc. (9759), Rockall LA, LLC (4270), Rockall Laurel, LLC (1178), Rockall Midstream, LLC (0917), Rockall MS, LLC (0740), Rockall ND, LLC (9311), Rockall Pine Prairie, LLC (5799), White Marlin Investment Company, LLC (9987), and White Marlin Midstream, LLC (1466).  The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is:  5005 LBJ Freeway, Suite 700, Dallas, TX 75244.

[2]     All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Bidding Procedures Order (as defined herein), as applicable.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2022, the Court entered an order approving, among other things, the implementation of the Bidding Procedures in connection with one or more sale of all, substantially all, or any combination of the Debtors' assets [Docket No. [●]] (the "***Bidding Procedures Order***"). Pursuant to the Bidding Procedures Order, the Court approved certain relief requested in the Motion, including (i) the Bidding Procedures (ii) procedures for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale (collectively, the "***Assigned Contracts***"), and (iii) the Debtors' entry into one or more Stalking Horse Agreement(s) (if any). Pursuant to the Bidding Procedures Order, a final hearing to approve the Sale is scheduled to take place on May 13, 2022, at [●]:00 [●].m. (prevailing Central Time).

**PLEASE TAKE FURTHER NOTICE** that, the Debtors hereby provide notice that they may assume and assign all or any Assigned Contracts listed on **Exhibit 1** attached hereto (the "***Assigned Contracts Schedule***"), to a purchaser of the Debtors' Assets. The Debtors' records reflect that all postpetition amounts owing under the Assigned Contracts have been paid and that, other than the cure amounts listed on the Assigned Contracts Schedule (the "***Cure Costs***"), there are no other defaults under such Assigned Contracts..

**PLEASE TAKE FURTHER NOTICE** that, objections, if any, to the proposed assumption and assignment of, and/or Cure Costs under, a potential Assigned Contract must be (a) in writing; (b) comply with the applicable provisions of the Bankruptcy Rules, the N.D. Tex. L.B.R., and any order governing the administration of these chapter 11 cases; (c) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; (d) be filed with the Court **no later than the Cure, Consent, or Preferential Right Objection Deadline**, or **April 29, 2022 at 5:00 p.m. (prevailing Central Time)**; and (e) be served on the following parties (the "***Objection Notice Parties***"):

    a.    Proposed counsel to the Debtors: (a) Vinson & Elkins LLP, 1114 Avenue of the Americas, 32nd Floor, New York, New York 10036, Attn: David S. Meyer (dmeyer@velaw.com) and Lauren Kanzer (lkanzer@velaw.com), (b) Vinson & Elkins LLP, 845 Texas Ave., Suite 4700, Houston, Texas 77002, Attn: Mike Garza (mgarza@velaw.com), and (c) Vinson & Elkins LLP, 2001 Ross Ave, Suite 3900, Dallas, Texas 75201, Attn: Matthew J. Pyeatt (mpyeatt@velaw.com);

    b.    The Office of the United States Trustee for the Northern District of Texas: Earle Cabell Federal Bldg., 1100 Commerce St., Room 976, Dallas, Texas 75242;

    c.    Counsel to the DIP Agent: (a) Cleary Gottlieb Steen & Hamilton, One Liberty Plaza, New York, New York, 10006, Attn: Sean A. O'Neal; and (b) Bonds Ellis Eppich Schafer Jones LLP, 420 Throckmorton Street, Suite 1000, Fort Worth, Texas 76102, Attn: Joshua N. Eppich and H. Brandon Jones;

    d.    Counsel to Shell: Reed Smith LLP, 2850 N. Harwood Street, Suite 1500, Dallas, TX 75201, Attn: Michael P. Cooley and Devan Dal Col;

e.      Counsel to any statutory committee appointed in these chapter 11 cases; and

f.      Any parties who have filed requests for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE** that, objections, if any, to any proposed Sale or the proposed Adequate Assurance or to the identity of the Successful Bidder, must be (a) in writing; (b) comply with the applicable provisions of the Bankruptcy Rules, the N.D. Tex. L.B.R., and any order governing the administration of these chapter 11 cases; (c) state with specificity the nature of the objection and the adequate assurance amount purportedly required, together with any applicable and appropriated documentation in support thereof; (d) be filed with the Court **no later than the Sale Objection Deadline**, or **May 6, 2022 at 5:00 p.m. (prevailing Central Time)**; and (e) be served on the Objection Notice Parties.

**PLEASE TAKE FURTHER NOTICE** that, if any objection to a proposed assumption and assignment of the Assigned Contracts or the proposed Cure Cost is timely filed, and the parties are unable to consensually resolve the dispute, such objection will be resolved at a hearing on [●], 2022, at [●]:00 [●].m. (prevailing Central Time) before the Honorable Judge Mullin, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Northern District of Texas, Room 128, 501 W. Tenth Street, Fort Worth, Texas 76102.

**PLEASE TAKE FURTHER NOTICE** that, if any Assigned Contract Objection is not satisfactorily resolved, the Successful Bidder may determine that such Assigned Contract should be rejected and not assigned, in which case the Successful Bidder will not be responsible for any Cure Costs or Adequate Assurance with respect to such contract.

**PLEASE TAKE FURTHER NOTICE** that, if you do not timely file and serve an objection as stated above, the Court may grant the relief requested in the Motion with no further notice or hearing and any party to an Assigned Contract that is so assumed will be deemed to have consented to the assumption and assignment of the assigned contract and the Cure Costs, if any, and will be forever barred from objecting to the assumption and assignment of such assigned contract and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such assigned contract against the Debtors or the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that, notwithstanding the foregoing, the inclusion of Assigned Contracts on **Exhibit 1** hereto, does not:  (a) obligate the Debtors to assume any Assigned Contract listed thereon or obligate the Successful Bidder to take assignment of such Assigned Contract; or (b) constitute any admission or agreement of the Debtors that such Assigned Contract is an executory contract or unexpired lease.  Only those Assigned Contracts that are included on a schedule of assumed and assigned contracts attached to the definitive sale agreement with the Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement) will be assumed and assigned to the Successful Bidder.

### NOTICE TO HOLDERS OF CONSENT RIGHTS AND
### PREFERENTIAL PURCHASE RIGHTS OF DEADLINE TO OBJECT

**PLEASE TAKE NOTICE** that, this Cure, Consent, or Preferential Right Notice shall serve to commence the period in which any party holding a (a) consent right with respect to the Debtors' Assets may provide, waive, satisfy, or withhold such consent to assignment of the applicable Asset and/or (b) preferential purchase right with respect to the Debtors' Assets may indicate their intent to exercise such rights.

**PLEASE TAKE FURTHER NOTICE** that, any party holding a hard consent right or any preferential purchase right with respect to the Debtors' Assets shall (a) object to the transfer of a lease without such party's consent or (b) indicate their intent to exercise any preferential right with respect to the Assets by notifying the Debtors, in each case, **no later than the Cure, Consent, or Preferential Right Objection Deadline**, or **April 29, 2022 at 5:00 p.m. (prevailing Central Time).**

**PLEASE TAKE FURTHER NOTICE** that, any party holding a consent right and/or preferential purchase right that fails to timely (a) file and serve an objection to the transfer of the applicable agreement or (b) notify the Debtors of such party's intent to exercise their preferential purchase right may be deemed as having consented to the transfer of the applicable agreement and/or having elected not to exercise such preferential purchase right, as applicable.

**PLEASE TAKE FURTHER NOTICE** that, all of the rights of the Debtors and other parties in interest to challenge any asserted consent right and/or preferential purchase right in the context of the Sale(s) of the Debtors' Assets by order of the Court are hereby expressly reserved.

US 8633219

Dated: March [●], 2022
Dallas, Texas

/s/ *DRAFT*

**VINSON & ELKINS LLP**
Michael A. Garza (Texas Bar No. 24126797)
Matthew J. Pyeatt (Texas Bar No. 24086609)
Trevor G. Spears (Texas Bar No. 24106681)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 713.758.2222
Fax: 713.758.2346
mgarza@velaw.com; mpyeatt@velaw.com;
tspears@velaw.com

- and -

David S. Meyer (*pro hac vice* pending)
George R. Howard (*pro hac vice* pending)
Lauren R. Kanzer (*pro hac vice* pending)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel: 212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; ghoward@velaw.com;
lkanzer@velaw.com

**PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

## **EXHIBIT 1**

ASSIGNED CONTRACTS SCHEDULE