



**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 3, 2022**

**United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22-90000 (MXM)** |
| | § | |
| **ROCKALL ENERGY HOLDINGS, LLC,** | § | **(Chapter 11)** |
| *et al.*, | § | |
| | § | **(Jointly Administered)** |
| | § | **Re: Dkt. Nos. 21, 22, 62, & 72** |
| **Debtors.** [1] | | |

#### FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) AND (B) USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364

Upon the *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) Use Cash Collateral Pursuant to 11 U.S.C.*

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of their respective federal tax identification numbers are: Arrow Rock Energy, LLC (7549), Petro Harvester Operating Company, LLC (2136), Rockall Agent Corp. (1653), Rockall Energy Holdings, LLC (5784), Rockall Energy, LLC (6340), Rockall EOR, LLC (4136), Rockall Exploration Company, LLC (0547), Rockall Intermediate, Inc. (9759), Rockall LA, LLC (4270), Rockall Laurel, LLC (1178), Rockall Midstream, LLC (0917), Rockall MS, LLC (0740), Rockall ND, LLC (9311), Rockall Pine Prairie, LLC (5799), White Marlin Investment Company, LLC (9987), and White Marlin Midstream, LLC (1466). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 5005 LBJ Freeway, Suite 700, Dallas, TX 75244.

§ 363, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364, and (III) Scheduling a Final Hearing (the "**Motion**"),[2] (i) seeking entry of a final order (this "**Final Order**"); and (ii) requesting related relief (collectively, the "**Requested Relief**") and the Debtors having requested on the record at the final hearing on the Motion (the "**Final Hearing**") that the Court enter this Final Order, *inter alia:*

(a)     authorizing Rockall Energy, LLC ("**Rockall Energy**") and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**") to obtain secured postpetition financing on a superpriority basis pursuant to the terms and conditions of that certain *Super-priority Senior Secured Debtor-in-Possession Credit and Guaranty Agreement*, in substantially the form attached hereto (without exhibits or schedules) as **Exhibit A** (as the same may be amended, supplemented, restated or otherwise modified from time to time in accordance with its terms and this Final Order, the "**DIP Credit Agreement**"), by and among Rockall Energy, as a borrower, Rockall Energy Holdings, LLC ("**Rockall**"), as a Guarantor, each of their respective direct and indirect Subsidiaries, each as a Guarantor, Goldman Sachs Bank USA ("**GS Bank**"), as Administrative Agent and Collateral Agent (in such capacities, the "**DIP Agent**"), and each Lender party thereto (collectively, the "**DIP Lenders**", and together with the DIP Agent, collectively, the "**DIP Secured Parties**"), in an aggregate principal amount not to exceed $51.0 million (the "**DIP Facility**", and any draws on the DIP Facility, the "**DIP Loans**"), of which (a) $5.0 million was made available immediately upon entry of the Interim Order (as defined below) and (b) subject to the terms herein and in the DIP Credit Agreement (including, without limitation, the condition precedent that any draws on the DIP Facility requested by the Debtors shall be within the Approved Budget, unless

---

[2]     Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the DIP Credit Agreement (as defined below).

such condition precedent is waived in accordance with the DIP Credit Agreement), $12.0 million will be made available immediately upon entry of this Final Order. Such DIP Facility includes a roll-up of the Prepetition Secured Parties Claims (as defined below) in the aggregate principal amount of (i) $10.0 million upon entry of the Interim Order and (ii) $34.0 million upon entry of this Final Order (inclusive of any amounts "rolled up" under clause (i)), which Prepetition Secured Parties Claims shall, upon entry of the Interim Order or this Final Order, as applicable, be treated as having been issued under the DIP Credit Agreement, constitute part of the Credit Extensions and Obligations and be entitled to all of the benefits and security of the DIP Facility Documents, the DIP Collateral, the Interim Order and this Final Order, in each case as provided in the DIP Facility Documents, the Interim Order and this Final Order, and the Prepetition Secured Parties Claims shall be reduced by such amount on a dollar-for-dollar basis concurrently therewith;

(b)	authorizing the Debtors on a final basis to execute the DIP Credit Agreement and all other documents, agreements and instruments delivered pursuant thereto or executed or filed in connection therewith, all as may be reasonably requested by the DIP Agent (as the same may be amended, restated, supplemented or otherwise modified from time to time in accordance with their respective terms, and collectively with the DIP Credit Agreement, the "***DIP Facility Documents***");

(c)	authorizing the Debtors on a final basis to use the proceeds from the DIP Facility as permitted in the DIP Facility Documents and in accordance with the Interim Order, this Final Order and the Approved Budget (as defined below) (subject to the Permitted Variances);

(d)	granting on a final basis to the DIP Agent, for itself and for the benefit of the DIP Lenders, first priority security interests in and liens on all assets that constitute the DIP Collateral (as defined below) to secure the DIP Facility and all obligations owing and outstanding thereunder and under the DIP Facility Documents, the Interim Order and this Final Order, as applicable

3

(collectively, and including all "Obligations" as described in the DIP Credit Agreement, the "***DIP Claims***"), which shall rank senior in priority to all other liens other than (i) Permitted Priority Liens (other than the Prepetition Liens and the Primed Liens) (as defined below) and (ii) the Carve-Out (as defined below);

(e)    granting on a final basis superpriority administrative expense claims against each Debtor's estate to the DIP Agent and the DIP Lenders with respect to the DIP Claims in accordance with Section 364(c)(1) of the Bankruptcy Code over any and all administrative expenses of any kind or nature subject and subordinate only to the Carve-Out;

(f)    authorizing the Debtors on a final basis to use Cash Collateral (as defined below);

(g)    authorizing the Debtors on a final basis to grant adequate protection to the Intercreditor Agent (as defined below) on behalf of the Prepetition Secured Parties (as defined below) to the extent of any diminution in value of their interest in the Prepetition Collateral (as defined below) and subject and subordinate to the Carve-Out;

(h)    vacating and modifying on a final basis the automatic stay pursuant to section 362 of the Bankruptcy Code (the "***Automatic Stay***") to the extent provided in the Interim Order, this Final Order and the DIP Facility Documents;

(i)    waiving on a final basis any applicable stay with respect to the effectiveness and enforceability of this Final Order (including under Rule 6004 of the Federal Rules of Bankruptcy Procedure

(the "***Bankruptcy Rules***"));

(j)    and the interim hearing on the Requested Relief (the "***Interim Hearing***") having been held on March 10, 2022; and the Court having entered on March 11, 2022 the *Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361,*

4

*362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) Use Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364 and (III) Scheduling Final Hearing* [Dkt. No. 72] (the "***Interim Order***"); and the Final Hearing having been held on April 27, 2022; and upon all of the pleadings filed with the Court and the evidence proffered or adduced at the Interim Hearing and the Final Hearing; and the Court having heard and resolved or overruled any and all objections to the Requested Relief; and it appearing that the Requested Relief is in the best interests of the Debtors, their estates and creditors; and upon the record herein and at the Interim Hearing; and after due deliberation thereon, and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.     Petition Date.  On March 9, 2022 (the "***Petition Date***"), the Debtors commenced their chapter 11 cases (these "***Chapter 11 Cases***") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "***Court***").  The Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee or examiner has been appointed in any of these Chapter 11 Cases.  On March 18, 2022, the U.S. Trustee appointed an official committee of creditors holding unsecured claims (the "***Creditors' Committee***").  *See Appointment of the Official Unsecured Creditors' Committee* [Dkt. No. 130].

B.     Jurisdiction; Venue.  The Court has jurisdiction over these Chapter 11 Cases, the parties and the Debtors' property pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as applicable, pursuant to Bankruptcy Rule 7052.

US 8754589

to 28 U.S.C. §157(b)(2)(D).  The Court is a proper venue of these Chapter 11 Cases and the Requested Relief under 28 U.S.C. §§ 1408 and 1409.

      C.    <u>Notice</u>.  Proper, timely, adequate and sufficient notice under the circumstances of the Motion and the Final Hearing has been provided in accordance with the Interim Order, the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014 and the Local Bankruptcy Rules for the Northern District of Texas, and no other or further notice of the Motion with respect to the relief requested at the Final Hearing or the entry of this Final Order shall be required.

      D.    <u>Debtors' Acknowledgments and Stipulations</u>.  The Debtors acknowledge, represent, stipulate and agree, subject to the terms and provisions of Paragraph 15 below:

      (i)    *Term Loan Claims*.  Pursuant to that certain *Credit and Guaranty Agreement*, dated as of September 20, 2018 (as has been amended, restated, modified, supplemented or replaced from time to time prior to the Petition Date, the "***Term Loan Credit Agreement***", and together with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, instruments, amendments and any other agreements delivered pursuant thereto or in connection therewith, the "***Term Loan Credit Documents***"), among (a) Rockall Energy, as borrower (in such capacity, the "***Term Loan Borrower***"), (b) Rockall, as a guarantor, (c) certain subsidiaries of Rockall Energy and Rockall, as guarantors (together with Holdings, collectively, the "***Term Loan Guarantors***"), (d) GS Bank, as administrative agent, collateral agent, lead arranger, syndication agent and documentation agent (in such capacities, the "***Term Loan Agent***"), and (e) each lender party thereto (collectively, the "***Term Loan Lenders***" and, together with the Term Loan Agent, collectively, the "***Term Loan Secured Parties***"), the Term Loan Lenders provided term loan commitments and other financial

6

accommodations to, or for the benefit of, the Term Loan Borrower and the Term Loan Guarantors (such facility, the "***Term Loan Facility***"). As of the Petition Date, the Debtors were jointly and severally indebted to the Term Loan Secured Parties in the aggregate principal amount of $99,716,115.28 (together with accrued and unpaid interest with respect thereto and any additional fees, costs, expenses (including any attorneys', financial advisors' and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, make-whole premiums, call premiums, yield maintenance premiums and other charges of whatever nature, whether or not contingent, whenever arising, due or owing, that would constitute Obligations (as defined in the Term Loan Credit Agreement) owing under or in connection with the Term Loan Credit Documents, the "***Term Loan Claims***").

(ii)     *Shell Hedge Claims*.  Pursuant to that certain *International Swap Dealers Association Inc. Master Agreement*, dated as of October 19, 2018 (as has been amended, restated, modified, supplemented or replaced from time to time prior to the Petition Date, the "***Shell Master Agreement***" and together with the Term Loan Credit Agreement, the "***Prepetition Secured Agreements***"), between Shell Trading Risk Management, LLC (in its capacity as counterparty under the Shell Master Agreement, "***Shell***" and, together with the Term Loan Secured Parties, the "***Prepetition Secured Parties***") and Rockall Energy, Shell entered into certain Secured Hedge Transactions (as defined in the Term Loan Credit Agreement) (the "***Shell Hedge Transactions***"). As of the Petition Date, the Debtors were jointly and severally indebted to Shell in the aggregate Swap Termination Value (as defined in the Term Loan Credit Agreement) of $46,218,397.56 (the "***Shell Hedge Claims***" and, together with the Term Loan Claims, the "***Prepetition Secured Parties Claims***").

(iii)    *Prepetition Liens and Collateral.*  As more fully set forth in the Term Loan Credit Documents, the Shell Master Agreement and that certain *Intercreditor Agreement*, dated October 29, 2018 (as amended, restated, modified, supplemented or replaced from time to time, the "***Intercreditor Agreement***" and, together with the Term Loan Credit Documents and the Shell Master Agreement, the "***Prepetition Credit Documents***") by and among Shell, the other Approved Counterparties (as defined therein), Rockall Energy, Rockall, and GS Bank, in its capacity as the Administrative Agent and Collateral Agent (as such terms are defined in the Intercreditor Agreement) (in such capacity, the "***Intercreditor Agent***"), the Prepetition Secured Parties Claims are secured by first priority liens on and security interests in the "Collateral" under and as defined in the Intercreditor Agreement (such liens and security interests, collectively, the "***Prepetition Liens***", and the collateral securing the Prepetition Liens, the "***Prepetition Collateral***").

(iv)    *Validity, Perfection and Priority of Prepetition Liens and Prepetition Secured Parties Claims.*  The Debtors represent, acknowledge and agree that, as of the Petition Date, (a) the Prepetition Liens constitute valid, binding, enforceable and perfected liens with priority over any and all other liens (other than the Permitted Priority Liens (other than the Primed Liens), as defined below) and the Debtors shall not raise or join any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, recoupments, objections, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity; (b) the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to liens senior by operation of law or permitted by the Prepetition Credit Documents, and solely to the extent any such liens were valid, enforceable, properly perfected, non-avoidable and senior in priority to the

8

Prepetition Liens as of the Petition Date (including valid liens in existence on the Petition Date that are perfected after the Petition Date as permitted by § 546(b) of the Bankruptcy Code); (c) the Prepetition Secured Parties Claims are unconditionally owing by the Debtors and constitute legal, valid, binding and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition Credit Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Secured Parties Claims exist, and no portion of the Prepetition Secured Parties Claims is subject to any challenge or defense including, without limitation, avoidance, disallowance, reductions, set-off, offset, disgorgement, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges pursuant to the Bankruptcy Code or any applicable law or regulation; (e) the Debtors shall not raise or join in any assertion of any claims, objections, challenges, causes of action and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Term Loan Facility or the Shell Hedge Transactions; and (f) the Debtors have waived, discharged and released any right to challenge any of the Prepetition Secured Parties Claims, the priority of any of the Prepetition Secured Parties Claims and the validity, extent and priority of the Prepetition Liens; *provided*, *however*, certain Prepetition Collateral comprised of real property interests (representing less than 5% of the discounted present value of the Debtors' proved oil and gas properties) are not subject to recorded mortgages.

(v)     *No Control*. None of the Prepetition Secured Parties or the DIP Secured Parties controls the Debtors or their operations, has authority to determine the manner in which any of the Debtors' operations are conducted or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to or arising from this Final Order, the DIP Facility, the DIP Facility Documents, the Shell Hedge Transactions, the Term Loan Facility and/or the Prepetition Credit Documents.

(vi)    *Payments in Respect of Prepetition Secured Parties Claims*.  Any payments made on account of the Prepetition Secured Parties Claims prior to the Petition Date were (a) payments out of the Prepetition Collateral and/or (b) made in the ordinary course of business, and did not diminish any property otherwise available for distribution to unsecured creditors;

(vii)   *Cash Collateral*.  All of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, other than cash held in Excluded Accounts (as defined in the Term Loan Credit Agreement) constitutes Cash Collateral securing the Prepetition Secured Parties Claims;

(viii)  *Necessary Approvals*.  Upon approval of the Interim Order by the Court, the Debtors obtained all authorizations, consents and approvals required to be obtained from, and have made all filings with and given all notices required to be given to, all federal, state and local governmental agencies, authorities and instrumentalities in connection with the execution, delivery, validity and enforceability of the DIP Facility Documents to which any Debtor is a party and the use of Cash Collateral as provided herein;

(ix)    *DIP Liens and Obligations*.  Other than with respect to the Carve-Out: (a) until such time as all DIP Claims are indefeasibly paid in full in cash, the Debtors shall not in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the liens and

10

security interests provided to the DIP Secured Parties by offering a subsequent lender or any party-in-interest a superior or *pari passu* lien or claim pursuant to section 364(d) of the Bankruptcy Code, or otherwise, except with respect to the Permitted Priority Liens (other than the Prepetition Liens and the Primed Liens) as described herein; and (b) until such time as all DIP Claims are indefeasibly paid in full in cash, the Debtors shall not in any way or at any time permit to exist an administrative expense claim against the Debtors of any kind or nature whatsoever, including, without limitation, claims for any administrative expenses (I) on account of any break-up fee and expense reimbursement authorized to be paid to any person or entity or (II) of the kind specified in, or arising or ordered under, sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 of the Bankruptcy Code, that is superior to or *pari passu* with the DIP Superpriority Claim (as defined below) provided herein;

(x) the Debtors have requested that the Prepetition Secured Parties consent to, among other things, (a) the Debtors' use of Cash Collateral securing the Prepetition Secured Parties Claims and the other Prepetition Collateral, (b) the incurrence of the DIP Claims by the Debtors and the Debtors' guarantees of the DIP Claims under the DIP Facility Documents and (c) the Debtors' granting of the priming DIP Liens (as defined below) in connection therewith. The Intercreditor Agent and the other Prepetition Secured Parties are entitled, pursuant to sections 361, 363(e) and 364(d)(l) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral securing the Prepetition Secured Parties Claims, (x) in exchange for their consent to allow the Debtors' use of such Prepetition Collateral, including the Cash Collateral securing the Prepetition Secured Parties Claims, and (y) for any diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral securing the Prepetition Secured Parties Claims and any other Prepetition Collateral, the

US 8754589

priming of the Prepetition Liens by the DIP Agent and DIP Lenders pursuant to the Interim Order and this Final Order, the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, or otherwise.

E.    Cash Collateral.  For purposes of this Final Order, the term "***Cash Collateral***" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which the DIP Agent or the Intercreditor Agent have, for the benefit of the DIP Lenders or the Prepetition Secured Parties, respectively, a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests) whether existing on the Petition Date, arising pursuant to the Interim Order or this Final Order or otherwise and shall include, without limitation:

(i)    all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any real or personal property, including insurance policies, in or on which the DIP Secured Parties or the Prepetition Secured Parties have a lien or a replacement lien (if any), whether as part of the DIP Collateral or the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of these Chapter 11 Cases or arose or was generated thereafter;

(ii)    all of the respective deposits, refund claims and rights in retainers of the Debtors on which the DIP Secured Parties or the Prepetition Secured Parties hold a lien or replacement lien (if any), whether as part of the DIP Collateral or the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise; and

(iii)    the proceeds of any sale of DIP Collateral or Prepetition Collateral, including any Asset Sales.

F. <u>Adequate Protection</u>. Each of the Prepetition Secured Parties is entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral securing the Prepetition Secured Parties Claims, in exchange for the Debtors' use of such Prepetition Collateral, to the extent of any diminution in value of the Prepetition Collateral, including, without limitation, any diminution in value resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral securing the Prepetition Secured Parties Claims and any other Prepetition Collateral, the priming of the Prepetition Liens of the Intercreditor Agent on and in the Prepetition Collateral, for itself and for the benefit of the other Prepetition Secured Parties, by the DIP Agent or the DIP Lenders, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

G. <u>Roll-Up</u>. Upon the entry of the Interim Order, (a) Term Loan Claims in an aggregate principal amount of approximately $7.6 million and (b) Shell Hedge Claims in an aggregate principal amount of approximately $2.4 million were converted into DIP Loans (such Term Loan Claims and Shell Hedge Claims, collectively, the "***Interim Roll-Up Obligations***"), and the Term Loan Claims and Shell Hedge Claims, respectively, were reduced by such applicable amounts, on a dollar-for-dollar basis concurrently therewith. Upon the entry of this Final Order, (x) Term Loan Claims in an aggregate principal amount of $26.0 million and (y) Shell Hedge Claims in an aggregate principal amount of $8.0 million shall be converted into DIP Loans (in each case under the foregoing clauses (x) and (y), inclusive of any amounts "rolled up" under the immediately preceding sentence) (such Term Loan Claims and Shell Hedge Claims, collectively, the "***Final Roll-Up Obligations***" and, together with the Interim Roll-Up Obligations, the "***DIP Roll-Up Obligations***"), and the Term Loan Claims and Shell Hedge Claims, respectively, shall be

reduced by such applicable amounts (to the extent not previously rolled-up pursuant to the Interim Order), on a dollar-for-dollar basis concurrently therewith.  Such conversion shall be authorized as compensation and consideration for the DIP Loans and the DIP Lenders' extension of credit, and not as payments under the Prepetition Credit Documents.  The Prepetition Secured Parties would not otherwise consent to the use of their Cash Collateral securing the Prepetition Secured Parties Claims or the subordination of their liens to the DIP Liens, and the DIP Lenders would not be willing to provide the DIP Loans or extend credit to the Debtors thereunder without the inclusion of the DIP Roll-Up Obligations in the DIP Claims.

H.  <u>Purpose and Necessity of Financing</u>. The Debtors require the financing described in the Requested Relief (i) for working capital and general corporate purposes of the Debtors, (ii) to pay interest, premiums, fees and expenses payable to the DIP Secured Parties in connection with the DIP Credit Agreement and the other DIP Facility Documents as provided therein, (iii) to pay restructuring costs and the professional fees of the Debtors relating solely to these Chapter 11 Cases, (iv) to effectuate the roll-up of the DIP Roll-Up Obligations, (v) to pay the Transaction Costs under the DIP Facility Documents, (vi) to make adequate protection payments to the Prepetition Secured Parties as provided in the Interim Order and this Final Order and (vii) for other purposes as provided in, and subject to the terms of, the DIP Credit Agreement, and in all cases, subject to compliance with the Approved Budget (subject to the Permitted Variances).  If the Debtors do not obtain authorization to borrow under the DIP Credit Agreement, they will suffer immediate and irreparable harm. The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other sufficient financing under sections 364(c) or (d) of the Bankruptcy Code, on more favorable terms than those set forth in the DIP Facility Documents, based on the totality of the

14

circumstances. A loan facility in the amount provided by the DIP Facility Documents is not available to the Debtors without granting the DIP Agent, for the benefit of the DIP Lenders, superpriority claims, liens and security interests, pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, as provided in the Interim Order, this Final Order and the DIP Facility Documents. After considering all alternatives, the Debtors have concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to them at this time under the circumstances.

I. _Good Cause Shown_. Good cause has been shown for entry of this Final Order. The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Facility Documents is vital to the Debtors' estates and creditors. The liquidity to be provided under the DIP Facility Documents will enable the Debtors to continue to operate their businesses in the ordinary course, preserve the value of the Debtors' assets, and conduct a robust and value-maximizing sales process. Among other things, entry of this Final Order is necessary to maximize the value of the Debtors' assets and to avoid immediate and irreparable harm to the Debtors and their estates, and, accordingly, is in the best interests of the Debtors, their estates and their creditors. The terms of the DIP Facility are fair and reasonable, reflect each Debtor's exercise of its respective business judgment, and are supported by reasonably equivalent value and fair consideration.

J. _Sections 506(c) and 552(b) Waivers_. In light of (i) the DIP Agent's and the DIP Lenders' consent for the DIP Liens and DIP Superiority Claim (as defined below) to be subject and subordinate to the Carve-Out, and in exchange for and as a material inducement to the DIP Agent and DIP Lenders to agree to provide the DIP Facility and (ii) the Intercreditor Agent's and the other Prepetition Secured Parties' consent for the Prepetition Liens, Replacement Liens (as

US 8754589

defined below) and Adequate Protection Superpriority Claim (as defined below) to be subject and subordinate to the Carve-Out, the DIP Liens, and the DIP Superpriority Claim and to permit the use of their Cash Collateral securing the Prepetition Secured Parties Claims for payments made in accordance with the Approved Budget (subject to the Permitted Variances) and the terms of the Interim Order and this Final Order, the DIP Agent, the DIP Lenders, the Intercreditor Agent and the other Prepetition Secured Parties are each entitled to (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

K.     <u>Good Faith</u>.   The terms of the DIP Facility Documents, including, without limitation, the interest rates and fees applicable, and intangible factors relevant thereto, are more favorable to the Debtors than any available from alternative sources.  Based upon the record before the Court, the DIP Facility Documents have been negotiated in good faith and at arm's-length among the Debtors, the DIP Lenders and the DIP Agent.  Any DIP Loans and other financial accommodations made to the Debtors by the DIP Agent and the DIP Lenders pursuant to the DIP Facility Documents, the Interim Order and this Final Order shall be deemed to have been extended by the DIP Agent and the DIP Lenders in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders shall be entitled to all protections afforded thereby.

L.     <u>Fair Consideration and Reasonably Equivalent Value</u>.   Each of the Debtors has received and will receive fair and reasonable consideration in exchange for access to the DIP Loans and all other financial accommodations provided under the DIP Facility Documents, the Interim Order and this Final Order.  The terms of the DIP Facility Documents are fair and reasonable,

reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

M. <u>Immediate Entry of Final Order</u>. The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2). The permission granted herein to enter into the DIP Facility Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Final Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for access to the financing necessary for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing businesses and further enhance the Debtors' prospects for a successful sale of their assets. Based upon the foregoing findings, acknowledgements and conclusions, and upon the record made before this Court at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. <u>Motion Approved</u>. The Motion is granted on a final basis as set forth herein, and the Debtors' incurrence of the DIP Facility and use of Cash Collateral on a final basis is authorized, subject to the terms of this Final Order.

2. <u>Objections Overruled</u>. Any objections, reservations of rights or other statements with respect to the Motion and entry of this Final Order, to the extent not withdrawn or resolved, are overruled on the merits. This Final Order shall become effective immediately upon its entry.

US 8754589

## AUTHORIZATION FOR DIP FINANCING AND USE OF CASH COLLATERAL

3.      Authorization for DIP Financing and Use of Cash Collateral Pursuant to Approved Budget.

(a)      The Debtors were by the Interim Order, and hereby are, authorized on a final basis to immediately incur DIP Claims, subject to the terms of this Final Order, the Approved Budget (subject to the Permitted Variances) and the DIP Facility Documents in the aggregate principal amount of up to $51.0 million (inclusive of the amount that the Debtors were authorized to borrow under the Interim Order), which amount includes the DIP Roll-Up Obligations.  The Borrower is hereby authorized, on a final basis, to borrow money pursuant to the DIP Credit Agreement and this Final Order, and each Guarantor under the DIP Credit Agreement is hereby authorized to provide a guaranty of payment in respect of the Debtors' obligations with respect to such borrowings, subject to any limitations on borrowing under the DIP Facility Documents, which shall be used for only those purposes permitted under the DIP Facility Documents, subject to and in accordance with the Approved Budget (subject to the Permitted Variances).

(b)      Prior to the Maturity Date, the Debtors are authorized to use Cash Collateral subject to and in accordance with the terms, conditions and limitations set forth in this Final Order, the Approved Budget (subject to the Permitted Variances) and the DIP Facility Documents, without further approval by the Court, including, for the avoidance of doubt, the use of Net Asset Sale Proceeds to fund the Wind-Down Budget and to prepay the Loans and/or permanently reduce the Commitments, in each case consistent with the DIP Facility Documents.

(c)      On the Closing Date and on each Friday of every other calendar week thereafter, the Debtors shall deliver to the DIP Agent and the Office of the United States Trustee (the "***U.S. Trustee***") a weekly budget, including any detail in such budget regarding the Wind-Down Budget,

US 8754589

for the subsequent 13-week period for the Debtors on a consolidated basis, in form and detail satisfactory to the DIP Agent in its sole discretion and in accordance with the terms of the DIP Credit Agreement, setting forth, among other things, the projected cash receipts and cash disbursements, a copy of which is attached hereto as **Exhibit B** (such budget, as updated, amended, supplemented or modified with the prior written approval of the DIP Agent (which consent may be granted by email), the "***Approved Budget***") (it being understood that the 13-week budget attached to this Final Order shall constitute an Approved Budget); *provided*, *however*, that if the DIP Agent does not provide notice of approval or disapproval of any such budget within five (5) business days of such receipt thereof, the DIP Agent will be deemed to have approved such budget as the Approved Budget; *provided further* that the Debtors may carry forward or backward budgeted but unused disbursements and excess operating receipts over the budgeted amounts in such Testing Period set forth in each Approved Budget for use in any subsequent or prior Testing Period. From and after the entry of this Final Order, the Debtors shall deliver a copy of each Approved Budget to the Creditors' Committee. The Debtors shall provide such other financial reporting with respect to the Debtors, in accordance with the terms of the DIP Facility Documents, and shall provide the Creditors' Committee with a copy of any such reporting. Funds borrowed under the DIP Credit Agreement and Cash Collateral used under this Final Order shall be used by the Debtors in accordance with the Approved Budget (subject to the Permitted Variances), the DIP Facility Documents, and this Final Order; *provided* that, notwithstanding the foregoing, neither the payment of restructuring costs and professional fees and expenses of the Debtors related to these Chapter 11 Cases nor the Carve-Out shall be subject to the Approved Budget. The consent of the DIP Lenders to any Approved Budget shall not be construed as a commitment to provide DIP Loans or to permit the use of Cash Collateral (subject to the Carve-Out) after the occurrence

of the Maturity Date, regardless of whether the aggregate funds shown on the Approved Budget have been expended.

(d)     Any amendments, supplements or modifications to, and any waiver of, the Approved Budget must be consented to in writing by the Requisite Lenders, in their sole discretion in accordance with the DIP Credit Agreement, prior to the implementation thereof and shall not require further notice, hearing or court order; *provided* that (i) the Debtors will provide prior written notice to the Creditors' Committee regarding any such amendment, supplement, modification or waiver to the Approved Budget and (ii) any reduction to the Creditors' Committee's professional fees line item in the Approved Budget, or any increase to the "Pre-Pet. AP Paydown" line item in the Approved Budget above $3.75 million, shall require the prior written consent of the Creditors' Committee and the Requisite Lenders.

(e)     The DIP Secured Parties (i) may assume the Debtors will comply with the Approved Budget (subject to the Permitted Variances), (ii) shall have no duty to monitor such compliance and (iii) subject to Paragraph 13, shall not be obligated to pay (directly or indirectly from the DIP Collateral or Prepetition Collateral) any unpaid expenses incurred or authorized to be incurred pursuant to any Approved Budget.  All advances and extensions of credit shall be subject to the terms and conditions of the DIP Facility Documents, as the same may be adjusted from time to time.

(f)     Notwithstanding anything in this Final Order to the contrary, the DIP Facility Documents shall expire, the DIP Loans made pursuant to the Interim Order, this Final Order and the DIP Facility Documents will mature, and the DIP Claims, together with all interest thereon and any other obligations accruing under the DIP Facility Documents, will become due and payable

(unless such obligations become due and payable earlier pursuant to the terms of the DIP Facility Documents and this Final Order by way of acceleration or otherwise) on the Maturity Date.

4. <u>Authority to Execute and Deliver Necessary Documents</u>.

(a) Each of the Debtors is authorized to negotiate, prepare, enter into and deliver the DIP Facility Documents, in each case including any amendments thereto. Each of the Debtors is further authorized to negotiate, prepare, enter into and deliver any UCC financing statements, pledge and security agreements, mortgages or deeds of trust, or similar documents or agreements encumbering all of the DIP Collateral and securing all of the Debtors' obligations under the DIP Facility Documents, each as may be reasonably requested by the DIP Secured Parties.

(b) Each of the Debtors is further authorized to (i) perform all of its obligations under the DIP Facility Documents and such other agreements as may be required by the DIP Facility Documents to give effect to the terms of the financing provided for therein and in this Final Order and (ii) perform all acts required under the DIP Facility Documents and this Final Order.

5. <u>Prepetition Secured Parties Claims Roll-Up</u>. The DIP Liens shall secure the DIP Roll-Up Obligations, which shall be deemed to be incurred by the Debtors under the DIP Facility Documents and subject to the terms and conditions set forth in the DIP Facility Documents. Notwithstanding the foregoing or anything to the contrary in this Final Order, if (a) the Court enters an order in favor of a party in a timely and properly filed adversary proceeding or contested matter sustaining a Challenge (as defined below) finding that any portion of the Prepetition Collateral was not, as of the Petition Date, subject to valid, enforceable and unavoidable Prepetition Liens (such portion of the Prepetition Collateral, the ***"Challenged Collateral"***) and (b) such order becomes final and non-appealable, then the DIP Liens in the Challenged Collateral shall not secure the DIP Roll-Up Obligations; *provided* that, for the avoidance of doubt, (i) the DIP Liens in the

21

DIP Collateral (other than the Challenged Collateral) shall continue to secure the DIP Roll-Up Obligations and (ii) the DIP Liens in the Challenged Collateral shall continue to secure the DIP Obligations (other than the DIP Roll-Up Obligations), in each case, with the priority and to the extent set forth in this Final Order.

6. <u>Valid and Binding Obligations</u>. All obligations under the DIP Facility Documents shall constitute valid, binding and nonavoidable obligations of each of the Debtors, enforceable against each of them and each of their successors and assigns, in accordance with their terms, the terms of the Interim Order and the terms of this Final Order, and no obligation, payment, transfer or grant of a lien or security interest under the DIP Facility Documents, the Interim Order or this Final Order shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

7. <u>Authorization for Payment of DIP Financing Fees and Expenses</u>. All fees paid and payable, and all costs and/or expenses reimbursed or reimbursable (including, without limitation, reasonable costs and out-of-pocket expenses referred to in the DIP Facility Documents and the DIP Agent's and DIP Lenders' attorneys' fees and expenses), under the DIP Facility Documents (the "***DIP Fees and Expenses***") by the Debtors to the DIP Secured Parties are hereby approved and shall not be subject to disgorgement by any party for any reason. Subject to the notice provision below, the Debtors are hereby authorized to pay all such fees, costs and expenses in accordance with the terms of the DIP Facility Documents and this Final Order, without any requirement that the Debtors, the DIP Agent, the DIP Lenders or any of their respective counsel

US 8754589

file any further application or other pleading, notice or document with the Court for approval or payment of such fees, costs or expenses. Subject to the notice provision below, the Debtors agree to pay promptly (without further order of or application to the Court) (a) all of the DIP Agent's actual, reasonable, and documented costs and out-of-pocket expenses incurred in connection with the negotiation, preparation and execution of the DIP Facility Documents, any consents, amendments, waivers or other modifications thereto, and any other documents prepared in connection therewith and in connection with any transaction contemplated thereby; (b) all of the reasonable and documented fees and out-of-pocket expenses and disbursements of counsel to the DIP Agent and the DIP Lenders in connection with the negotiation, preparation, execution and administration of the DIP Facility Documents and any consents, amendments, waivers or other modifications thereto and any other documents or matters requested by any Obligor; (c) all of the actual, documented, and reasonable costs and out-of-pocket expenses of creating, perfecting, recording, maintaining and preserving Liens in favor of the DIP Agent, for the benefit of the DIP Secured Parties, including filing and recording fees, expenses and Taxes, stamp or documentary Taxes, search fees, title insurance premiums and reasonable fees, and documented expenses and disbursements of counsel to the DIP Agent and of counsel providing any opinions that the DIP Agent or the DIP Lenders may request in respect of the DIP Collateral or the DIP Liens created pursuant to the Collateral Documents; (d) all of the DIP Agent's actual, documented, and reasonable costs, fees, and out-of-pocket expenses for and disbursements of any of the DIP Agent's auditors, accountants, consultants or appraisers whether internal or external, and all actual, documented, and reasonable attorneys' fees (including allocated costs of internal counsel and expenses and disbursements of outside counsel) incurred by the DIP Agent in connection with the negotiation, preparation, execution and administration of the DIP Facility Documents; (e) all of

23

the actual, documented, and reasonable costs and out-of-pocket expenses (including the reasonable and documented fees, expenses and disbursements of any appraisers, consultants, advisors and agents employed or retained by the DIP Agent and its counsel) in connection with the custody or preservation of any of the DIP Collateral; (f) all of the other actual, documented, and reasonable costs and out-of-pocket expenses incurred by the DIP Agent and/or DIP Lenders in connection with the negotiation, preparation and execution of the DIP Facility Documents and any consents, amendments, waivers or other modifications thereto and the transactions contemplated thereby; (g) after the occurrence of a Default or an Event of Default, all costs and expenses, including all attorneys' fees (including allocated costs of internal counsel) and costs of settlement, incurred by the DIP Agent and/or the DIP Lenders in enforcing any DIP Claims of or in collecting or preparing to collect any payments due from any Obligor under the DIP Facility Documents by reason of such Default or Event of Default (including in connection with the sale of, collection from or other realization upon any of the DIP Collateral or the enforcement of the Guaranty) or in connection with any refinancing or restructuring of the credit arrangements provided thereunder in the nature of a "work out" or pursuant to any insolvency or bankruptcy cases or proceedings (including these Chapter 11 Cases), including the engagement of a restructuring advisor or consultant satisfactory to the DIP Agent in its sole discretion (it being understood and agreed that all such costs and expenses, including, without limitation, costs and expenses of legal counsel and financial advisors, incurred by the DIP Agent and the DIP Lenders from and after the occurrence of the first Event of Default shall be payable by the Obligors pursuant to this clause (g) until all DIP Claims have been paid in full in Cash); and (h) any other fees or expenses as required by the DIP Facility Documents. Subject to the notice provision below, the foregoing fees, costs and expenses of the DIP Agent and the DIP Lenders authorized by the Interim Order and this Final Order, whether incurred prior to

US 8754589

or after the Petition Date, including, without limitation, all fees referred to in the DIP Facility Documents, shall be deemed fully earned, non-refundable and irrevocable as of the date of the Interim Order. None of the DIP Agent's or DIP Lenders' attorneys, financial advisors and accountants' fees and disbursements shall be subject to the prior approval of this Court or the guidelines of the Office of the U.S. Trustee for this region, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. Any such fees, costs and expenses shall be evidenced by a summary invoice (redacted, as necessary, to protect any applicable privilege) and delivered to the Debtors, the U.S. Trustee and the Creditors' Committee. The U.S. Trustee and the Creditors' Committee shall have fourteen (14) business days from the date of such delivery within which to object in writing to such payment. Following the expiration of such period, the applicable professional shall notify the Debtors in writing of the expiration of such period and the absence of any objection by the U.S. Trustee or the Creditors' Committee, and the Debtors shall pay such invoice within five (5) business days[4] of such written notice, without the need for further application to or order of the Court. In the event that, within such period, the U.S. Trustee or the Creditors' Committee raises an objection to a particular invoice, the applicable professional shall notify the Debtors in writing of the objection and the Debtors shall pay the fees and expenses not subject to the objection within five (5) business days of such written notice, without the need for further application to or order of the Court. Notwithstanding the foregoing, the Debtors are authorized and directed to pay on the Closing Date and any Credit Date (as defined in the DIP Credit Agreement) the DIP Fees and Expenses incurred on or prior to such date without the need for any professional engaged by, or

---

[4] Unless specifically stated otherwise, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed under this Final Order and the DIP Facility Documents.

US 8754589

on behalf of, the DIP Secured Parties to first deliver a copy of its invoice or other supporting documentation to the U.S. Trustee or the Creditors' Committee, and such DIP Fees and Expenses can be net funded from the proceeds of any Credit Extension under the DIP Credit Agreement.

8. <u>Amendments, Consents, Waivers and Modifications</u>. The Debtors, subject to the terms of the DIP Credit Agreement and in accordance with the DIP Credit Agreement, may enter into any non-material amendments, consents, waivers or modifications to the DIP Facility Documents without the need for further notice and hearing or any order of this Court.

## <u>DIP LIENS AND DIP SUPERPRIORITY CLAIMS</u>

9. <u>DIP Liens</u>

(a) To secure the DIP Claims, the DIP Agent is hereby granted for the benefit of the DIP Secured Parties (i) pursuant to section 364(c)(2), a perfected first-priority lien on the DIP Collateral (as defined below) to the extent that such DIP Collateral was not subject to any Permitted Priority Liens[5]; (ii) pursuant to section 364(c)(3), a perfected lien on the DIP Collateral junior to any Permitted Priority Liens (other than the Prepetition Liens and the Primed Liens) on such DIP Collateral, and (iii) pursuant to section 364(d) of the Bankruptcy Code, a perfected first-priority, priming and senior security interest and lien on the DIP Collateral that was Prepetition Collateral subject only to any Permitted Priority Liens (other than the Prepetition Liens and the Primed Liens) ((i)-(iii) collectively, the "***DIP Liens***"), in each case subject and subordinate to the Carve-Out.

(b) The DIP Liens shall attach to all of the property, assets or interests in property or assets of each Debtor, and all "property of the estate" (within the meaning of the Bankruptcy Code) of each Debtor, of any kind or nature whatsoever, real or personal, tangible or intangible or mixed,

---

[5] "***Permitted Priority Liens***" means valid non-avoidable and perfected liens in existence on the Petition Date (including valid liens in existence on the Petition Date that are perfected after the Petition Date as permitted by § 546(b) of the Bankruptcy Code).

now existing or hereafter acquired or created, including, without limitation, all of each Debtor's now owned or hereafter acquired right, title, and interest in and to: (u) all of the property, assets or interests in property or assets of each Debtor and all "property of the estate" (other than avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents (the "Avoidance Actions") and the proceeds thereof (other than any Avoidance Actions against Krewe Energy, LLC and the proceeds thereof) and the Excluded Collateral (as defined in the Pledge and Security Agreement)), including, without limitation, the Prepetition Collateral, all leases (to the extent not included in the Prepetition Collateral) and, to the extent any property, assets or interests of any Debtor are excluded from the DIP Collateral, the proceeds of such property, assets or interests; (v) the proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the foregoing, and any money or other tangible or intangible property resulting from the sale, exchange, collection or other disposition of any of the foregoing, or any portion thereof or interest therein, and the proceeds thereof; (w) all other property and assets (other than the Excluded Accounts), including, without limitation, Cash Collateral and all cash and non-cash proceeds, rents, products, substitutions, accessions, offspring and profits of any of the collateral described above; (x) commercial tort claims and claims that may constitute commercial tort claims (known or unknown); (y) the avoidance actions under chapter 5 of the Bankruptcy Code or applicable state law against Krewe Energy, LLC (the "***Krewe Avoidance Actions***" and the proceeds of such avoidance actions, the "***Krewe Avoidance Actions Proceeds***"); and (z) a pledge of 100% of the Capital Stock of each Debtor's respective Subsidiaries, (collectively with (u)-(z), the "***DIP Collateral***"); subject and subordinate only to (i) the Permitted Priority Liens (other than the Prepetition Liens and the Primed Liens) and (ii) the Carve-Out.

27

(c)     The DIP Liens were effective immediately upon the entry of the Interim Order (and remain effective upon the entry of this Final Order) and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than (i) the Permitted Priority Liens (other than the Prepetition Liens and the Primed Liens) as provided herein; and (ii) the Carve-Out.

(d)     The DIP Liens were, immediately upon the entry of the Interim Order (and ratified and continuing with this Final Order), deemed fully perfected liens and security interests, effective and perfected without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements or any other agreements or instruments, such that no additional actions need be taken by the DIP Agent or the DIP Lenders to perfect such interests. Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document or other instrument or agreement that requires the consent or approval of one or more landlords, licensors or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any of the Debtors to pledge, grant, mortgage, sell, assign or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the transactions granting the DIP Agent, for the benefit of the DIP Secured Parties, a security interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by any of the Debtors in favor of the DIP Agent, for the benefit of itself and the DIP Lenders, in accordance with the terms of the DIP Credit Agreement and the other DIP Facility Documents. Any physical property, including any securities

US 8754589

or notes, held by the Collateral Agent (as such term is defined in the Intercreditor Agreement) under the Term Loan Credit Documents shall be and hereby is held also for the DIP Agent.

(e)     Those certain control agreements (collectively, the "***Prepetition Control Agreements***"), entered into by and among the certain Debtors, the Intercreditor Agent and the Bank (as defined in the *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System and Maintain Existing Bank Accounts, (B) Continue Using Existing Checks and Business Forms, (C) Maintain Their Corporate Card Program, and (D) Continue Intercompany Transactions, and (II) Granting Related Relief* (the "***Cash Management Motion***")) shall inure to the benefit of the DIP Agent and the DIP Lenders.  The Bank shall comply with instructions given to it by the DIP Agent (including at the direction of the Requisite Lenders in accordance with the DIP Credit Agreement), without the further consent of any other party to the applicable Prepetition Control Agreement.  The Interim Order amended (and this Final Order ratifies and continues such amendment) each Prepetition Control Agreement so that, until such time as the Bank receives written notice from the DIP Agent (including at the direction of the Requisite Lenders in accordance with the DIP Credit Agreement), each reference to "Collateral Agent" in the applicable Prepetition Control Agreement is replaced by the DIP Agent.

10.     <u>DIP Lenders' Superpriority Claim</u>.  The DIP Agent, for the benefit of the DIP Secured Parties, is hereby granted an allowed superpriority administrative expense claim (the "***DIP Superpriority Claim***") pursuant to section 364(c)(1) of the Bankruptcy Code in each of the Debtors' Chapter 11 Cases and in any successor case(s) under the Bankruptcy Code (including any case or cases under chapter 7 of the Bankruptcy Code, the "***Successor Case(s)***") for all DIP Claims, having priority over any and all other Administrative Expense Claims, Other Priority

Claims, Priority Tax Claims and General Unsecured Claims (each as defined in the Bankruptcy Plan) against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claim shall be payable from and have recourse to all pre- and postpetition property of the Debtors, including all cash and cash equivalents, and all proceeds thereof including, without limitation, any Krewe Avoidance Actions Proceeds; *provided* that the DIP Secured Parties shall not have an allowed DIP Superpriority Claim against any Avoidance Actions or the proceeds thereof (other than the Krewe Avoidance Actions and the Krewe Avoidance Actions Proceeds). The DIP Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to prior payment of the Carve-Out. Except as referenced in this Final Order, no other superpriority claims that are senior or *pari passu* with the DIP Superpriority Claim shall be granted or allowed in these Chapter 11 Cases or in any Successor Case(s). The DIP Superpriority Claim shall be senior in all respects to any superpriority claims granted in these Chapter 11 Cases including, without limitation, on account of any break-up fee or expense reimbursement that may be granted by the Court in connection with any sale of the Debtors' assets and the Adequate Protection Superpriority Claim.

11.     <u>Survival of DIP Liens and DIP Superpriority Claim</u>.     The DIP Liens, DIP Superpriority Claim and other rights and remedies granted under the Interim Order and this Final Order to the DIP Agent, for the benefit of the DIP Secured Parties, shall continue in this and any Successor Case(s) and shall be valid and enforceable against any trustee appointed in any or all of

the Debtors' Chapter 11 Cases and/or upon the dismissal of any or all of the Debtors' Chapter 11 Cases or any Successor Case(s) and such liens and security interests shall maintain their priority as provided in the Interim Order and this Final Order until all the DIP Claims have been indefeasibly paid in full in cash and the DIP Lenders' commitments have been terminated in accordance with the DIP Facility Documents.

## ADEQUATE PROTECTION FOR PREPETITION COLLATERAL USE

12.     Adequate Protection for the Prepetition Secured Parties.  As adequate protection for and to the extent of any diminution in the value of the Prepetition Collateral resulting from the incurrence of the DIP Claims, the use of Cash Collateral securing the Prepetition Secured Parties Claims, the granting of DIP Liens and the agreement of the Prepetition Secured Parties to subordinate their right to receive payment from the proceeds of Prepetition Collateral to the Carve-Out (collectively, the "***Diminution Claim***"), the Intercreditor Agent (on behalf of the Prepetition Secured Parties) is hereby granted (in each case subject and subordinate to the DIP Liens, the DIP Superpriority Claim and the Carve-Out) the following adequate protection:

(a)     Adequate Protection Liens.  Subject to Paragraph 15 hereof, to secure the Diminution Claim, the Intercreditor Agent, for the benefit of the Prepetition Secured Parties, was, solely to the extent of the Diminution Claim, granted (effective and perfected upon the date of the Interim Order, and ratified and continuing with this Final Order, and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements and/or other agreements or instruments) valid, perfected, postpetition security interests and liens (the "***Replacement Liens***") in and on all of the Prepetition Collateral, *provided*, *however*, that the Replacement Liens shall only be and remain subject and subordinate to (i) the DIP Liens

and/or payment of any DIP Claims on account thereof, (ii) the Permitted Priority Liens (other than the Prepetition Liens and the Primed Liens) and (iii) the Carve-Out.

(b)    <u>Adequate Protection Superpriority Claims</u>.    Subject to Paragraph 15 hereof, as further adequate protection for and solely to the extent of the Diminution Claim, the Intercreditor Agent, for the benefit of the Prepetition Secured Parties, was granted (effective upon the date of the Interim Order and ratified and continuing with this Final Order) a superpriority claim with priority over all other Administrative Expense Claims, Other Priority Claims, Priority Tax Claims and General Unsecured Claims (each as defined in the Bankruptcy Plan) against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 and any other provision of the Bankruptcy Code (the "***Adequate Protection Superpriority Claim***"), which allowed Adequate Protection Superpriority Claim shall be payable from and have recourse to all pre- and postpetition property of the Debtors, including all cash and cash equivalents, and all proceeds thereof, including, without limitation, any Krewe Avoidance Actions Proceeds; *provided* that the Prepetition Secured Parties shall not have an allowed Adequate Protection Superpriority Claim against any Avoidance Actions or the proceeds thereof (other than the Krewe Avoidance Actions and the Krewe Avoidance Actions Proceeds).  The Adequate Protection Superpriority Claim shall be subject and subordinate only to the DIP Superpriority Claim and the Carve-Out.

(c)    <u>Prepetition Secured Parties' Legal Fees and Expenses</u>.  As additional adequate protection, the Debtors shall pay all reasonable and documented outstanding fees and out-of-pocket expenses (the "***Prepetition Fee Payments***"), including, but not limited to, reasonable and documented fees and out-of-pocket expenses of legal counsel, incurred by the Prepetition Secured

US 8754589

Parties, to the extent provided for under the Prepetition Credit Documents, whether incurred prior to or after the Petition Date. The prior or simultaneous payment of all invoiced and outstanding Prepetition Fee Payments as of the Petition Date shall be a condition to funding of any portion of the DIP Loans. The Prepetition Fee Payments were approved (effective upon the date of the Interim Order and ratified and continuing with this Final Order) and shall not be subject to disgorgement by any party for any reason.

(d)　　Relief from the Automatic Stay. In the event a circumstance exists that would (i) cause the RSA to terminate automatically or (ii) give the Majority Consenting Term Loan Lenders (as defined in the RSA) the right to deliver a written notice of termination of the RSA, in each case notwithstanding any other provision of this Final Order, the Automatic Stay is hereby modified to permit the Consenting Term Loan Lenders (as defined in the RSA) to immediately terminate the RSA.

(e)　　As additional adequate protection, the Prepetition Secured Parties shall be entitled to (i) payment in kind in respect of post-petition interest on the Prepetition Secured Parties Claims as such interest becomes due and payable at the applicable non-default rate under the Term Loan Credit Agreement, which post-petition interest shall be automatically capitalized and added to the amount of the outstanding Prepetition Secured Parties Claims; *provided*, for the avoidance of doubt, Shell will be entitled to payment in kind in respect of post-petition interest at the same rate as the Term Loan Lenders, and (ii) the additional benefits set forth in this Final Order, including Paragraphs 14 (Restrictions on Use of Funds); 15 (Challenge Period); 19 (Section 506(c) Waiver); 20 (No Marshaling); 21 (Equities of the Case Waiver); and 35(Sale/Conversion/Dismissal) hereof.

(f)　　Consent to Priming and Adequate Protection. The Prepetition Secured Parties consent to the Debtors' use of Cash Collateral securing the Prepetition Secured Parties Claims and

the priming provided for herein; *provided*, *however*, that such consent to the priming, the use of Cash Collateral securing the Prepetition Secured Parties Claims and the sufficiency of the adequate protection provided for herein is expressly conditioned upon the entry of this Final Order relating to the DIP Facility Documents and DIP Loans set forth herein, and such consent shall not be deemed to extend to any replacement or other debtor in possession financing other than the DIP Loans provided under the DIP Facility Documents; *provided*, *further*, that such consent shall be of no force and effect in the event this Final Order is not entered and the DIP Facility Documents and DIP Loans as set forth herein are not approved.

## **CARVE-OUT; RESTRICTIONS ON USE OF FUNDS**

13. Carve-Out.

(a) "***Carve-Out***" means the sum of: (i) all fees required to be paid to the clerk of the Bankruptcy Court and all statutory fees payable to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below) (the "***U.S. Trustee Carve-Out***"); (ii) all reasonable fees and expenses in an aggregate amount not to exceed $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below) (the "***Chapter 7 Trustee Carve-Out***"); (iii) to the extent allowed at any time, whether by the interim order, procedural order, final order, or otherwise, all unpaid fees, costs, and expenses (the "***Allowed Professional Fees***") of persons or firms retained by the Debtors pursuant to section 327, 328 or 363 of the Bankruptcy Code (the "***Debtor Professionals***") and the Creditors' Committee (the "***Creditors' Committee Professionals***" and, together with the Debtor Professionals, the "***Professional Persons***") appointed in the Chapter 11 Cases pursuant to section 1103 of the Bankruptcy Code incurred at any time on or before the first business day

US 8754589

following delivery by the DIP Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after such date; and (iv) Allowed Professional Fees of the Debtor Professionals and the Committee Professionals in an aggregate amount not to exceed (x) $750,000 (including any fees, costs, and expenses incurred by the Creditors' Committee Professionals to investigate liens of the Prepetition Agent and the Prepetition Lenders within the Challenge Period (as defined below) up to an amount not to exceed $150,000) incurred after the first business day following delivery by the DIP Agent of a Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, final order, or otherwise, *plus* (y) the amount of any Allowed Professional Fees arising from any restructuring, sale, completion, success, or other similar fees of Lazard Frères & Co. LLC as investment banker to the Debtors, to the extent allowed at any time, whether by interim order, procedural order, final order, or otherwise (the amounts set forth in this clause (iv) being the "***Post-Carve-Out Trigger Notice Cap***"). For the avoidance of doubt and notwithstanding anything to the contrary contained in the DIP Orders, the DIP Documents, the Prepetition Credit Documents, or any related documents, the Carve-Out shall be senior in priority to all liens and claims securing the DIP Obligations, all claims arising under the Term Loan Credit Agreement, the Shell Master Agreement, or any related documents and all liens securing the claims thereunder, the Adequate Protection Liens, all adequate protection superpriority claims, any and all other forms of adequate protection securing or on account of the claims arising under the Term Loan Credit Agreement, the Shell Master Agreement, or any related documents, and any other obligations of the Debtors, including any post-petition intercompany claims among the Debtors.

(b)    For purposes of the foregoing, "***Carve-Out Trigger Notice***" means a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, Vinson & Elkins LLP as lead restructuring counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP as counsel to the Creditors' Committee, and the U.S. Trustee, which notice may be delivered upon the expiration of the Remedies Notice Period (as defined below), following the occurrence and during the continuation of an Event of Default under this Final Order or the DIP Credit Agreement, stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

(c)    On the date of delivery by the DIP Facility Agent of a Carve-Out Trigger Notice in accordance with the terms of this Final Order (the "***Carve-Out Trigger Date***"), the Carve-Out Trigger Notice shall constitute (i) a demand to the Debtors as of such date to fund a reserve from all cash on hand (including Cash Collateral) as of such date and any available cash thereafter held by any Debtors in an amount equal to: (x) the U.S. Trustee Carve-Out, (y) the Chapter 7 Trustee Carve-Out, and (z) the then-unpaid amounts of the Allowed Professional Fees (whether allowed by the Court prior to or after the Carve-Out Trigger Date) incurred through the first business day following the Carve-Out Trigger Date; and (ii) be deemed a draw request and notice of borrowing by the Borrowers under the DIP Credit Agreement in an amount equal to the lesser of (x) the amounts of (x), (y), and (z) in clause (i) of this sentence, (y) the amount the Debtors are permitted to draw pursuant to the condition precedent in section 3.2(a)(vi) of the DIP Credit Agreement and (z) the amount of the undrawn Term Loan Commitments under the DIP Credit Agreement, in each case, to the extent in excess of the amounts funded pursuant to clause (i) of this sentence.  The Debtors shall deposit and hold any such amounts in a segregated account in trust to pay the amounts set forth in the preceding sentence (the "***Pre-Carve-Out Trigger Notice Reserve***").

(d)    On the Carve-Out Trigger Date, the Carve-Out Trigger Notice shall also be deemed (i) a demand to the Debtors as of such date to fund a reserve from all cash on hand (including Cash Collateral) as of such date and any available cash thereafter held by any Debtors in an amount equal to the Post-Carve-Out Trigger Notice Cap and (ii) a draw request and notice of borrowing by the Borrowers under the DIP Credit Agreement in an amount equal to the lesser of (x) the Post-Carve-Out Trigger Notice Cap, (y) the amount the Debtors are permitted to draw pursuant to the condition precedent in section 3.2(a)(vi) of the DIP Credit Agreement and (z) the amount of the undrawn Term Loan Commitments under the DIP Credit Agreement, in each case, to the extent in excess of the amounts funded pursuant to clause (i) of this sentence.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay Allowed Professional Fees incurred after the Carve-Out Trigger Date up to the amount of the Post-Carve-Out Trigger Notice Cap (the "***Post-Carve-Out Trigger Notice Reserve***" and, together with the Pre-Carve-Out Trigger Notice Reserve, the "***Carve-Out Reserves***").

(e)    Notwithstanding anything to the contrary in this Final Order, in no event shall the DIP Secured Parties be obligated to pay any amounts in excess of the amount of the Term Loan Commitments approved by this Final Order (excluding any DIP Loans in respect of the DIP Roll-Up Obligations).  Any payment or reimbursement made on or after the occurrence of the Carve-Out Trigger Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.  None of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Persons incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order shall be construed to obligate the DIP Agent, the DIP Lenders or the Prepetition Secured

Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f) The Debtors shall deposit the amounts in the Carve-Out Reserves in full prior to the payment of any DIP Collateral (including Cash Collateral) to the DIP Agent or any DIP Lender or the payment of any amount to any of the Prepetition Agent or the Prepetition Lenders, and the DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders shall not sweep or foreclose on cash or Cash Collateral (including cash received as a result of the disposition of any property of the Debtors or the DIP Collateral) of the Debtors until the Carve-Out Reserves have been fully funded.

(g) The Pre-Carve-Out Trigger Notice Reserve shall be held for the benefit of the U.S. Trustee to pay the U.S. Trustee Carve-Out, the Chapter 7 Trustee (if any) to pay the Chapter 7 Trustee Carve-Out, and the Professional Persons to pay the Allowed Professional Fees benefiting from the Carve-Out, and other obligations benefiting from the Pre-Carve-Out Trigger Notice Reserve, and shall be available only to satisfy such obligations until paid in full. The Post-Carve-Out Trigger Notice Reserve shall be held for the benefit of the Professional Persons to pay the Allowed Professional Fees and other obligations benefiting from the Post-Carve-Out Trigger Notice Reserve, and shall be available only to satisfy such obligations until paid in full. The failure of the Carve-Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out, and none of the Carve-Out, the Post-Carve-Out Trigger Notice Cap, the Carve-Out Reserves, the Approved Budget, nor any of the foregoing shall be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors or that may be allowed by the Bankruptcy Court.

US 8754589

(h)     Nothing contained in this Final Order shall be construed:  (i) to exempt those persons hereafter receiving compensation payments or reimbursement of expenses pursuant to any such Court-approved procedure from the applicable provisions of bankruptcy law, including the requirements that such compensation or reimbursement be allowed on a final basis after the filing of appropriate fee applications, and, if applicable, any subsequent order of this Court requiring that such payments be disgorged, and/or (ii) as consent to the allowance of any fees and expenses referred to above, and shall not affect any right of the DIP Agent or the DIP Lenders to object to the reasonableness of such amounts.

(i)     The Creditors' Committee professional fees in the Approved Budget shall be increased to $2,000,000 in the aggregate.  Notwithstanding the foregoing, the Carve-Out Reserves shall not be construed as a cap or limitation on the amount of the Allowed Professional Fees that may be due and payable by the Debtors.  Commencing on March 22, 2022 and continuing on every other Tuesday thereafter, each Professional Person shall provide to the Debtors and lead restructuring counsel to the DIP Agent (x) a summary of fees and expenses accrued by such Professional Person for the prior two-week period ended on the preceding Friday (excluding fees and expenses accrued on or prior to the Petition Date) and for which such Professional Person intends to submit applications for compensation and reimbursement and (y) a forecast (on an accrual basis) of estimated fees and expenses for such Professional Person for the two-week period starting on the preceding Saturday (each such forecast, a "***Fee Estimate***").  In the event the amount of accrued fees and expenses for such Professional Person for such two-week period exceeds the amount set forth in the Professional Person's Fee Estimate for such period plus a 15% variance, the DIP Agent shall meet and confer with the Debtors and such Professional Person to discuss a good-faith modification to the Approved Budget and the Fee Estimate regarding the fees and

expenses of such Professional Person; *provided*, *however*, that if the parties are unable to reach a consensual resolution regarding such modification to the Approved Budget and the Fee Estimate, then the DIP Agent may, subject to the terms and procedures hereof and the DIP Credit Agreement, deliver to the U.S. Trustee, the Debtors, and the Creditors' Committee through their respective counsel, a Remedies Notice declaring the occurrence of an Event of Default; *provided further*, *however*, that the fees and expenses of the Professional Persons that have accrued through the date of delivery of a Remedies Notice and a Carve-Out Trigger Notice, if any, in connection with any such Event of Default shall not be subject to the Approved Budget. For the avoidance of doubt, nothing in this paragraph shall alter or affect (i) any Professional Person's right to seek allowance or payment of the amount of a Professional Person's fees and expenses or (ii) any party in interest's right to object to such allowance or payment. To the extent the amount of the actual fees and expenses of the Professional Persons for any calendar month is less than the Fee Estimate for such calendar month, such excess amount may be rolled forward to increase the amount of the Fee Estimate in any subsequent calendar month.

14. <u>Restrictions on Use of Funds</u>. Notwithstanding anything in this Final Order or the DIP Facility Documents to the contrary, no proceeds of the DIP Facility, any DIP Collateral or Prepetition Collateral (including, without limitation, Cash Collateral) or any portion of the Carve-Out may be used in any manner to (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code or otherwise, other than from the DIP Agent or the DIP Lenders, unless the proceeds of such loans or accommodations are or will be sufficient, and will be used, to indefeasibly pay in full in cash all DIP Claims and the adequate protection obligations set forth in Paragraph 12 hereof, (b) pay any amount for any use not provided for under <u>Section 2.3</u> of the DIP Credit Agreement and as set

forth in the Approved Budget (subject to the Permitted Variances), (c) object, contest or raise any defense to the validity, perfection, priority, extent or enforceability of any amount due under, or the Liens or security interests granted under, the DIP Facility Documents or the Prepetition Credit Documents, (d) investigate (except as set forth in Paragraph 15 below), initiate, assert, join, commence, support or prosecute any cause of action or claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief against the DIP Agent, the DIP Lenders, the Intercreditor Agent, the Term Loan Agent, the Term Loan Lenders or Shell (in their respective capacities as such or under or relating to any other loan or extensions of credit provided to any of the Debtors or their respective Affiliates) or any of their respective Related Parties (in their respective capacities as such), including, without limitation, with respect to any transaction, occurrence, omission or action related to the DIP Liens, the DIP Claims, the Prepetition Liens or the Prepetition Secured Parties Claims, including, without limitation, (i) any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (ii) any action relating to any act or omission related to, or aspect of, the relationship between or among any of the DIP Agent, the DIP Lenders, the Intercreditor Agent, the Term Loan Agent, the Term Loan Lenders or Shell (in their respective capacities as such), on the one hand, and the Debtors or any of their affiliates, on the other; (iii) any action with respect to the validity and extent of the DIP Claims or the Prepetition Secured Parties Claims or the validity, perfection, extent, enforceability and/or priority of the DIP Liens, the Prepetition Liens or the Replacement Liens; (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Liens, the Prepetition Liens or the Replacement Liens; or (v) any action that has the effect of preventing, hindering or delaying, whether directly or indirectly, the DIP Agent, the DIP Lenders, the Intercreditor Agent, the Term Loan Agent or the

Term Loan Lenders in respect of the enforcement of their liens and security interests in the DIP Collateral, Cash Collateral or the Prepetition Collateral; (e) pay any Claim of a Creditor (as such terms are defined in the Bankruptcy Code) without the prior written consent of the Requisite Lenders in accordance with the DIP Credit Agreement unless otherwise permitted hereby, by the DIP Facility Documents or approved by the Court; and/or (f) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral, unless otherwise permitted hereby or by the DIP Facility Documents, without the consent of the Requisite Lenders in accordance with the DIP Credit Agreement. Notwithstanding the foregoing, up to $150,000 in the aggregate of Cash Collateral or proceeds of the DIP Facility may be used by a Creditors' Committee to investigate (but not to commence or pursue any litigation, objection or challenge to) the Prepetition Secured Parties Claims, the Prepetition Liens and/or claims against the Released Parties prior to the Challenge Period Termination Date (as each is defined below).

15.     Reservation of Certain Third Party Rights and Bar of Challenges and Claims.

(a)     The Debtors' acknowledgements, agreements and stipulations set forth in Paragraph D above (the "***Debtors' Stipulations***") were binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) upon entry of the Interim Order (and are ratified and continuing with this Final Order) in all circumstances and for all purposes.

(b)     The Debtors' Stipulations shall be binding upon each other party in interest, including the Creditors' Committee unless such Creditors' Committee or any other party in interest having standing other than the Debtors (or if these Chapter 11 Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period (as defined below), the chapter 7 trustee in such Successor Case(s)), first, commences, by the later of (x) the date that

42

is forty-five (45) calendar days from the entry of the Interim Order and (y) any later date as has been agreed to, in writing, by the Intercreditor Agent and the DIP Agent (with the consent of the Requisite Lenders) (such time period established by the later of clauses (x) and (y), the "***Challenge Period***," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period or (ii) such Challenge is fully and finally adjudicated, shall be referred to as the "***Challenge Period Termination Date***"), (A) a contested matter, adversary proceeding or other action or "claim" (as defined in the Bankruptcy Code) challenging or otherwise objecting to the admissions, stipulations, findings or releases included in the Debtors' Stipulations or (B) a contested matter, adversary proceeding or other action against any or all of the Intercreditor Agent or the Prepetition Secured Parties in connection with or related to the Prepetition Secured Parties Claims or the actions or inactions of the Intercreditor Agent or the Prepetition Secured Parties arising out of or related to the Prepetition Secured Parties Claims or otherwise, including, without limitation, any claim against the Intercreditor Agent or any or all of the Prepetition Secured Parties in the nature of a "lender liability" cause of action, setoff, counterclaim or defense to the Prepetition Secured Parties Claims (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code (in each case including a contested matter, adversary proceeding or other action or "claim" brought derivatively on behalf of one or more Debtors' estates but excluding those under section 506(c) of the Bankruptcy Code) ((A) and (B) collectively, the "***Challenges***" and, each individually, a "***Challenge***"), and second, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding or other action. A motion by the Creditors' Committee for standing to pursue a Challenge on

43

behalf of one or more of the Debtors' estates (a "**Standing Motion**"), provided that it is timely filed during the Challenge Period and such filing includes an exhibit with a draft complaint, shall toll the Challenge Period Termination Date only as to the Creditors' Committee and solely with respect to the Challenge specifically identified in such Standing Motion.  In addition, nothing in this Final Order shall limit the ability of the Creditors' Committee to (x) file a motion to pursue a Challenge for which it cannot obtain standing as a matter of law because the applicable Debtor is a limited liability company and (y) seek a mechanism by which to prosecute such Challenge.

(c)    Upon the Challenge Period Termination Date and for all purposes in these Chapter 11 Cases and any Successor Case(s), (i) all payments made to or for the benefit of the Intercreditor Agent or the Prepetition Secured Parties pursuant to, or otherwise authorized by, the Interim Order, this Final Order or otherwise (whether made prior to, on or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense or avoidance, (ii) any and all such Challenges by any party in interest shall be deemed to be forever released, waived and barred, (iii) the Prepetition Secured Parties Claims shall be deemed to be a fully allowed claim within the meaning of section 506 of the Bankruptcy Code and (iv) the Debtors' Stipulations in Paragraph D hereof and the releases in Paragraph 17 hereof shall be binding on all parties in interest, including the Creditors' Committee, as if such parties had made such Debtors' Stipulations.

(d)    No later than three (3) days after the earlier of (a) the Effective Date (as defined in the Bankruptcy Plan) or (b) if there is a 363 Toggle (as defined in the RSA), the

closing of a Sale (as defined in the Bidding Procedures)[6] pursuant to section 363 of the Bankruptcy Code and not as part of the Bankruptcy Plan (the date of such closing, the "***Sale Closing Date***"), and after the funding of all Global Settlement Obligations (as defined below) that are then due on the Effective Date or the Sale Closing Date, as applicable, the Creditors' Committee will withdraw, with prejudice, the *Motion by the Official Committee of Unsecured Creditors for Entry of an Order Granting Standing to the Official Committee of Unsecured Creditors and Authorizing the Prosecution of Certain Lien Challenge Claims on Behalf of the Bankruptcy Estates* [Dkt. No. 305]. Any and all discovery and other actions by the Creditors' Committee in respect of its Challenge shall be stayed until the Effective Date or, if there is a 363 Toggle, the Sale Closing Date, and the funding of all Global Settlement Obligations that are then due on the Effective Date or the Sale Closing Date, as applicable.

16. <u>Prohibition on Granting of Additional Liens and Interests</u>. No liens, claims, interests or priority status, other than the Carve-Out or Permitted Priority Liens, if any, having a lien or administrative priority superior to, *pari passu* with or, in the case of liens only, junior to that of the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Superpriority Claims or the Replacement Liens granted by the Interim Order and this Final Order, shall be granted while any portion of the DIP Claims remain outstanding, or any commitment under the DIP Facility Documents remains in effect, without the prior written consent of the DIP Agent and the Requisite Lenders in accordance with the DIP Credit Agreement (or all affected Lenders to the extent required by the DIP Credit Agreement).

---

[6]  "***Bidding Procedures***" means those bidding procedures attached as Exhibit 1 to the *Order (I) Approving Bidding Procedures, (II) Scheduling the Bid Deadline and the Auction, (III) Scheduling Hearing and Objection Deadlines with Respect to the Sale, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief* [Dkt. No. 92].

US 8754589

17. <u>Release</u>.   The release, discharge, waivers, settlements, compromises and agreements set forth in this Paragraph 17, which were deemed effective upon entry of the Interim Order and remain effective under this Final Order, are subject only to the rights set forth in Paragraph 15 above.   The Debtors forever and irrevocably (a) release, discharge and acquit the DIP Agent, the DIP Lenders, the Intercreditor Agent, the Term Loan Agent and the Prepetition Secured Parties (in their respective capacities as such), and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates and successors and predecessors in interest (in their respective capacities as such) (collectively, the "***Released Parties***") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every type, including, without limitation, any claims arising prior to entry of this Final Order from any actions relating to any aspect of the relationship among the DIP Agent, the DIP Lenders, the Intercreditor Agent, the Term Loan Agent or the Prepetition Secured Parties (in their respective capacities as such) and the Debtors and their affiliates, including any equitable subordination or recharacterization claims or defenses, with respect to or relating to the DIP Claims, the DIP Liens, the DIP Facility Documents, the Prepetition Secured Parties Claims, the Prepetition Liens, the Prepetition Credit Documents, the Debtors' attempts to restructure the Prepetition Secured Parties Claims, any and all claims and causes of action arising under title 11 of the United States Code and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the DIP Secured Parties and the Prepetition Secured Parties; and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as

to the validity, perfection, priority, enforceability and non-avoidability of the DIP Claims, the DIP Liens, the Prepetition Secured Parties Claims and the Prepetition Liens.

### REMEDIES; MODIFICATION OF AUTOMATIC STAY

18. <u>Remedies and Stay Modification</u>. The automatic stay provisions of section 362 of the Bankruptcy Code are, to the extent applicable, vacated and modified without further application or motion to, or order from, the Court, to the extent necessary so as to permit the following, and neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies regardless of any change in circumstances (whether or not foreseeable):

(a) Whether or not a Default or an Event of Default under the DIP Facility Documents or a default by any of the Debtors of any of their obligations under this Final Order has occurred, (i) all cash, checks or other collections or proceeds from DIP Collateral received by any of the Debtors shall be required to be deposited in accordance with the requirements of the DIP Facility Documents, and any amounts so deposited and other amounts paid to or received by the DIP Agent and the DIP Lenders under the DIP Facility Documents shall be applied in accordance with any requirements of the DIP Facility Documents, (ii) the DIP Agent, for the DIP Secured Parties, shall have the right to (A) file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral, (B) charge and collect any interest, fees, costs and other expenses accruing at any time under the DIP Facility Documents as provided therein and (C) give the Debtors any notice provided for in any of the DIP Facility Documents, the Interim Order or this Final Order.

(b) Subject to subparagraph (d) below, the DIP Agent, for the DIP Secured Parties, shall be permitted, upon the occurrence and during the continuance of an Event of Default,

US 8754589

and without any interference from the Debtors or any other party in interest, to (i) (A) deliver a notice of an Event of Default to the Debtors (the "**Remedies Notice**"), (B) terminate the commitments under the DIP Facility Documents and (C) declare all DIP Claims then outstanding immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are expressly waived by the Debtors, and file the Remedies Notice on the docket of the Court and (ii) subject to five (5) business days' prior written notice (which may be delivered by electronic mail) (the "**Remedies Notice Period**") to the Debtors, Vinson & Elkins LLP as their lead restructuring counsel, Pachulski Stang Ziehl & Jones LLP as counsel to the Creditors' Committee, and the U.S. Trustee, to exercise all rights and remedies provided for in the DIP Facility Documents, this Final Order or under other applicable bankruptcy and non-bankruptcy law including, without limitation, the right to (A) take any actions reasonably calculated to preserve or safeguard the DIP Collateral or to prepare the DIP Collateral for sale; (B) foreclose or otherwise enforce the DIP Liens on any or all of the DIP Collateral; (C) immediately set off any and all amounts held as Cash Collateral (including, without limitation, in any Cash Collateral account held for the benefit of the DIP Agent and DIP Lenders); and/or (D) exercise any other default-related rights and remedies under the under the DIP Facility Documents, this Final Order or applicable law.

(c)     Upon the occurrence of an Event of Default or a default by any of the Debtors of any of their obligations under this Final Order, (i) the DIP Agent, for the DIP Secured Parties, may immediately charge interest at the default rate set forth in the DIP Facility Documents and (ii) seventy-two (72) hours after the DIP Agent delivers the Remedies Notice Period to Rockall Energy (the "**Cash Collateral Notice Period**"), the DIP Agent shall, subject to the Carve-Out, have no further obligation to permit the continued use of Cash Collateral, *provided*, *however*, that during

48

the Cash Collateral Notice Period, the Debtors shall be permitted to use Cash Collateral in accordance with this Final Order and the Approved Budget.

(d)     The automatic stay of section 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, the Creditors' Committee, any other party in interest and/or the U.S. Trustee have not obtained an order from this Court to the contrary prior to the expiration of the Remedies Notice Period.

(e)     If the Requisite Lenders are entitled, and have elected in accordance with the provisions hereof, to direct the DIP Agent to enforce the DIP Liens or exercise any other default-related remedies following expiration of the Remedies Notice Period, the Debtors shall cooperate with the DIP Agent and the Requisite Lenders in connection with such enforcement by, among other things, (i) providing at all reasonable times access to the Debtors' premises to representatives or agents of the DIP Agent or the Requisite Lenders (including any collateral liquidator or consultant), (ii) providing the DIP Agent and the Requisite Lenders and their representatives or agents, at all reasonable times access to the Debtors' books and records and any information or documents requested by the DIP Agent or the Requisite Lenders or their respective representatives, (iii) performing all other obligations set forth in the DIP Facility Documents and (iv) taking reasonable steps to safeguard and protect the DIP Collateral, and the Debtors shall not otherwise interfere with or actively encourage others to interfere with the DIP Agent's or the Requisite Lenders' enforcement of rights.

(f)     Upon the occurrence and during the continuance of a Default or an Event of Default under the DIP Facility Documents, a violation of the terms of or an event of default under this Final Order or the occurrence of the Maturity Date, the DIP Agent, at the direction of the Requisite

Lenders in accordance with the DIP Credit Agreement (or all affected Lenders to the extent required by the DIP Credit Agreement), shall have no further obligation to provide financing under the DIP Facility Documents.

(g)     This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Final Order and relating to the application, re-imposition or continuance of the automatic stay of section 362(a) of the Bankruptcy Code or other injunctive relief requested.

## **MISCELLANEOUS**

19.     <u>Limitation on Section 506(c) Claims</u>. As additional adequate protection for the use of Cash Collateral, no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases or any Successor Case(s) at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against, the DIP Secured Parties, the Prepetition Secured Parties or any of their respective claims, the Carve-Out, the DIP Collateral or the Prepetition Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent, as applicable, of the DIP Agent and the Requisite Lenders in accordance with the DIP Credit Agreement (or all affected Lenders to the extent required by the DIP Credit Agreement); *provided* that the foregoing waiver shall only apply to costs and expenses of administration (including, without limitation, any professional fees, commissions or transaction, success or similar fees) that have been or may be incurred or accrued in these Chapter 11 Cases or any Successor Case at any time, or costs and expenses incurred in connection with the preservation, protection, disposal or enhancement of, or realization by the Prepetition Secured Parties upon, the DIP Collateral or the Prepetition Collateral, in each case prior to the date that is the earlier of (x) the termination of the commitments under the DIP Facility Documents, and (y) the termination of the Debtors' consensual right to use Cash Collateral

50

following expiration of the Cash Collateral Notice Period, unless the Debtors' right to use Cash Collateral is renewed or extended upon the agreement of the Prepetition Secured Parties, subject to all parties' rights at such time to seek and/or defend against further waiver. No action, inaction or acquiescence by the DIP Secured Parties or the Prepetition Secured Parties shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the DIP Secured Parties, the Prepetition Secured Parties, any of their respective claims, the Carve-Out, the DIP Collateral or the Prepetition Collateral.

20. <u>No Marshaling</u>. The DIP Secured Parties and the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral; *provided*, *however*, that, until the earlier of (a) the Effective Date (as defined in the Bankruptcy Plan) or (b) if there is a 363 Toggle (as defined in the RSA), the Sale Closing Date, and the funding of all Global Settlement Obligations that are then due on the Effective Date or the Sale Closing Date, as applicable, prior to seeking payment of any DIP Claims or Adequate Protection Superpriority Claims from assets that are not subject to the Prepetition Liens, the DIP Secured Parties and the Prepetition Secured Parties shall use reasonable efforts to first satisfy such claims from all other DIP Collateral. Without limiting the generality of the immediately preceding sentence, no party shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the DIP Collateral after an Event of Default under the DIP Facility Documents or a termination or breach under the DIP Facility Documents.

21. <u>Equities of the Case Waiver</u>. The DIP Agent, the DIP Secured Parties and the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and no person may assert an "equities of the case" claim under section

552(b) of the Bankruptcy Code against the DIP Secured Parties or the Prepetition Secured Parties with respect to proceeds, product, offspring or profits of any of the DIP Collateral or the Prepetition Collateral.

22. <u>Additional Perfection Measures</u>. The DIP Liens and the Replacement Liens were perfected by operation of law immediately upon entry of the Interim Order (and are ratified and continuing with this Final Order). None of the Debtors, the DIP Secured Parties or the Prepetition Secured Parties shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or any other waiver or consent, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property or filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the DIP Liens or the Replacement Liens.

(a) If the DIP Agent (including at the direction of the Requisite Lenders in accordance with the DIP Credit Agreement) chooses to take any action to obtain consents from any landlord, licensor or other party in interest to file mortgages, financing statements, notices of lien or similar instruments or to otherwise record or perfect such security interests and liens, the DIP Agent is hereby authorized, but not directed, to take such action or to request that the Debtors take such action on its behalf (and the Debtors are hereby authorized and directed to take such action), and:

(i) any such documents or instruments shall be deemed to have been recorded and filed as of the time and on the date of entry of the Interim Order; and

(ii)     no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(b)     In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the DIP Agent may choose to file a true and complete copy of the Interim Order or this Final Order in any place at which any such instruments would or could be filed, together with a description of the DIP Collateral, and such filing by the DIP Agent shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of the Interim Order.

23.     <u>Application of Collateral Proceeds</u>.  To the extent required by this Final Order and the DIP Facility Documents, after an Event of Default, the Debtors are hereby authorized and directed to remit to the DIP Agent, subject and subordinate to the provisions of the Carve-Out and allowed claims secured by Permitted Priority Liens (other than the Prepetition Liens and Primed Liens) as described herein, one-hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the DIP Agent or the DIP Lenders to retain and apply all collections, remittances and proceeds of the DIP Collateral in accordance with the DIP Facility Documents. In furtherance of the foregoing:

(a)     all cash, securities, investment property and other items of any Debtor deposited with any bank or other financial institution, other than the Excluded Accounts, shall be subject to a perfected, first priority security interest in favor of the DIP Agent (or its designee);

(b)     upon the occurrence of the Maturity Date and the expiration of the Remedies Notice Period, each bank or other financial institution with an account of any Debtor is hereby authorized

and instructed, other than with respect to the Excluded Accounts, to (i) comply at all times with any instructions originated by the DIP Agent (or its designee) to such bank or financial institution directing the disposition of cash, securities, investment property and other items from time to time credited to such account, without further consent of any Debtor, including, without limitation, any instruction to send to the DIP Agent (or its designee) by wire transfer (to such account as the DIP Agent (or its designee) shall specify, or in such other manner as the DIP Agent (or its designee) shall direct) all such cash, securities, investment property and other items held by it and (ii) waive any right of set off, banker's lien or other similar lien, security interest or encumbrance as against the DIP Agent (or its designee);

(c)     any Deposit Account Control Agreement executed and delivered by any bank or other financial institution, any Debtor and the DIP Agent in connection with the DIP Facility Documents shall establish control in favor of the DIP Agent of any and all accounts subject thereto and any and all cash, securities, investment property and other items of any Debtor deposited therein to secure the DIP Claims; and

(d)     any deposit account control agreement executed and delivered by any bank or other financial institution, any Debtor and the Intercreditor Agent prior to the Petition Date in connection with the Prepetition Credit Documents shall establish co-control in favor of the DIP Agent of any and all accounts subject thereto and any and all cash, securities, investment property and other items of any Debtor deposited therein to secure the DIP Claims (provided that primary control rights shall vest in the DIP Agent), and all rights thereunder in favor of the Intercreditor Agent shall inure also to the benefit of, and shall be exercisable exclusively by, the DIP Agent, until all of the DIP Claims have been indefeasibly paid in full in cash, at which time exclusive control shall automatically revert to the Intercreditor Agent.

US 8754589

24.    <u>Access to Collateral</u>. Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agent or the DIP Lenders contained in this Final Order or the DIP Facility Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Facility Documents, upon three (3) business days' written notice to the landlord, lienholder, licensor or other third party owner of any leased or licensed premises that an Event of Default under the DIP Facility Documents, or a default by any of the Debtors of any of their obligations under this Final Order, has occurred and is continuing or that the Maturity Date has occurred, the DIP Agent (including at the direction of the Requisite Lenders in accordance with the DIP Credit Agreement), (i) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor and the DIP Agent or the Intercreditor Agent (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of any of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon; and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable lease or license and to use any and all similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this paragraph, without interference from lienholders, landlords or licensors thereunder, subject to such lienholders', landlords' or licensors' rights under applicable law; *provided*, *however*, that the DIP Lenders shall pay only base rent payable during the period of such occupancy or use by the DIP Agent, calculated on a *per diem* basis. Nothing herein shall require the Debtors, the DIP Agent or the DIP Lenders to assume any lease or license under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the DIP Agent and the DIP Lenders in this paragraph.

US 8754589

25. <u>Delivery of Documentation.</u> The Debtors (and/or their legal or financial advisors) shall deliver to the DIP Agent, counsel to the DIP Agent and, after the Maturity Date and the repayment of the DIP Claims in full in cash, the Intercreditor Agent and counsel to the Intercreditor Agent, all financial reports, budgets, forecasts and all other legal or financial documentation, pleadings and/or filings that are either (i) required to be provided (by the Debtors and/or their legal or financial advisors) to the DIP Agent and/or the DIP Lenders pursuant to the DIP Facility Documents or the Intercreditor Agent, as the case may be, or (ii) reasonably requested by the DIP Agent and/or the DIP Lenders (or their legal and financial advisors) or by the Intercompany Agent and/or the Term Loan Agent (or their advisors), as the case may be.

26. <u>Access to Books and Records.</u> The Debtors (and/or their legal and financial advisors) will (a) keep proper books, records and accounts in accordance with GAAP in which full, true and correct entries shall be made of all dealings and transactions in relation to their business and activities, (b) cooperate, consult with and provide to the DIP Secured Parties all such information as required or allowed under the DIP Facility Documents or the provisions of this Final Order, (c) permit, consistent with the DIP Facility Documents, representatives of the DIP Secured Parties to visit and inspect any of their respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties and to discuss the Debtors' respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as often as may reasonably be desired, and (d) permit, consistent with the DIP Facility Documents, representatives of the DIP Secured Parties to consult with the Debtors' management

56

on matters concerning the general status of the Debtors' business, financial condition and operations.

27. <u>Lenders Not Responsible Persons</u>. In (a) making the decision to make the DIP Loans; (b) administering the DIP Loans; (c) extending other financial accommodations to the Debtors under the DIP Facility Documents; (d) making the decision to make the loans and financial accommodations under the Term Loan Credit Documents; (e) administering the loans and financial accommodations extended under the Term Loan Credit Documents; (f) extending other financial accommodations to the Debtors under the Term Loan Credit Documents; and (g) making the decision to collect the indebtedness and obligations of the Debtors, none of the DIP Secured Parties or the Term Loan Secured Parties shall be considered to (x) owe any fiduciary obligation to the Debtors or any other party with respect to their exercise of any consent rights afforded them under the DIP Facility Documents, the Interim Order or this Final Order or (y) be exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or operator under any applicable law.

28. <u>Successors and Assigns</u>. The DIP Facility Documents and the provisions of this Final Order shall be binding upon the Debtors, the DIP Agent, the DIP Lenders, the Intercreditor Agent, the Prepetition Secured Parties and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the Intercreditor Agent, the Prepetition Secured Parties and each of their respective successors and assigns, including, without limitation, any trustee, examiner with expanded powers, responsible officer, estate administrator or representative or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code. The terms and provisions of this Final Order shall also be binding

US 8754589

on all of the Debtors' creditors, equity holders and all other parties in interest, including, but not limited to, a trustee appointed under Chapter 7 or Chapter 11 of the Bankruptcy Code.

29.     <u>Debtors Will Not Challenge Credit Bid Rights</u>.  Without prejudice to any rights or claims reserved pursuant to Paragraph 15 hereof as to any party in interest other than the Debtors (and subject to the limitations therein) and subject to section 363(k) of the Bankruptcy Code, no Debtor shall object to any DIP Lender credit bidding up to the full amount of its outstanding DIP Claims or any Prepetition Secured Party credit bidding up to the full amount of its outstanding Prepetition Secured Parties Claims, in each case including, without limitation, any accrued interest and expenses, on a dollar-for-dollar basis in any sale of all or any portion of the DIP Collateral whether such sale is effectuated through section 363 of the Bankruptcy Code in a Chapter 11 or Chapter 7 proceeding, under section 1129 in a Chapter 11 proceeding, by a Chapter 7 trustee in a Chapter 7 proceeding or otherwise. The DIP Lenders and Prepetition Secured Parties expressly reserve the right to credit bid up to the full amount of their outstanding DIP Claims or Prepetition Secured Parties Claims.  Any credit bid submitted by the DIP Lenders or the Prepetition Secured Parties shall provide an amount of cash consideration, when taken together with the Debtors' other sources of funding (including, without limitation, the Debtors' cash on hand and the sale proceeds on hand of any other sale of the Debtors' assets), for payment in cash of the GUC Payment, the GUC Allocation, the Additional GUC Amount, the $250,000 funding for the liquidation trust, and any other amounts designated for holders of General Unsecured Claims (as defined in the Bankruptcy Plan) as provided in the Global Settlement Term Sheet (collectively, the "***Global Settlement Obligations***").[7]

---

[7]     "***Global Settlement Term Sheet***" means that certain Global Settlement Term Sheet dated April 29, 2022, attached as Exhibit A to the *Notice of Filing of Global Settlement Term Sheet* filed at Docket No. 367.

US 8754589

30.     <u>Binding Nature of Agreement</u>.  Each of the DIP Facility Documents to which any of the Debtors are or will become a party shall constitute legal, valid and binding obligations of the Debtors party thereto, enforceable in accordance with their terms.  Except as otherwise required under the DIP Credit Agreement, the DIP Facility Documents were properly executed and delivered to the DIP Agent or the DIP Lenders by the Debtors, no later than one (1) Business Day after entry of the Interim Order.  Unless otherwise consented to in writing, the rights, remedies, powers, privileges, liens and priorities of the DIP Agent, the DIP Lenders, the Intercreditor Agent and the Prepetition Secured Parties provided for in this Final Order, the DIP Facility Documents or otherwise shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation or sale order), by any plan of reorganization or liquidation in these Chapter 11 Cases, by the dismissal or conversion of these Chapter 11 Cases or in any subsequent case under the Bankruptcy Code.

31.     <u>Subsequent Reversal or Modification</u>.  This Final Order is entered pursuant to section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Lenders all protections afforded by section 364(e) of the Bankruptcy Code.

32.     <u>Collateral Rights</u>.  If any party who holds a lien or security interest in DIP Collateral or Prepetition Collateral that is junior and/or subordinate to the DIP Liens, the Replacement Liens or the Prepetition Liens in such DIP Collateral or Prepetition Collateral receives or is paid the proceeds of such DIP Collateral or Prepetition Collateral prior to the indefeasible payment in full in cash and the complete satisfaction of (a) all DIP Claims under the DIP Facility Documents and termination of the commitment in accordance with the DIP Facility Documents and (b) the Prepetition Secured Parties Claims under the Prepetition Credit Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such

DIP Collateral or Prepetition Collateral in trust for the DIP Lenders and the Prepetition Lenders and shall immediately turn over such proceeds for application by the DIP Agent and the Intercreditor Agent to repay the DIP Claims and the Prepetition Secured Parties Claims in accordance with the DIP Facility Documents, the Prepetition Credit Documents and this Final Order until indefeasibly paid in full in cash.

33. <u>No Waiver</u>. This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Agent, the DIP Lenders, the Intercreditor Agent or the Prepetition Secured Parties may have to bring or be heard on any matter brought before this Court.

34. <u>Conversion/Dismissal</u>. If an order dismissing or converting any of these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code or otherwise, or appointing a chapter 11 trustee or a responsible officer or examiner with expanded powers (i.e., powers beyond those set forth in sections 1104(d) and 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code, is at any time entered by the Court, such order shall provide that (a) the DIP Liens, the DIP Superpriority Claim, the Replacement Liens and the Adequate Protection Superpriority Claim granted under the Interim Order, under this Final Order and in the DIP Facility Documents shall continue in full force and effect, remain binding on all parties-in-interest and maintain their priorities as provided in the Interim Order, this Final Order and the DIP Facility Documents until all DIP Claims are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Facility Documents are terminated in accordance with the DIP Facility Documents and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens, the DIP Superpriority Claim, the Replacement Liens, the Adequate Protection Superpriority Claim, and the other adequate protection obligations set forth in Paragraph 12 hereof.

35. <u>Limits on Lenders' Liability</u>. Nothing in this Final Order or in any of the DIP Facility Documents, the Prepetition Credit Documents or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties, or, subject to Paragraph 15 of this Final Order, the Prepetition Secured Parties, of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

36. <u>Priority of Terms</u>. To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Facility Documents, the Motion, the Requested Relief, the Interim Order, any other order of this Court or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" "as set forth in" or "as more fully described in" the DIP Facility Documents (or words of similar import), the terms and provisions of this Final Order shall govern.

37. <u>No Third Party Beneficiary</u>. Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

38. <u>Survival</u>. Except as otherwise provided herein, (a) the protections afforded under this Final Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any of these Chapter 11 Cases or (ii) converting any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code, and (b) the DIP Liens, the Replacement Liens, the DIP Superpriority Claim and the Adequate Protection Superpriority Claim shall continue in these Chapter 11 Cases, in any such successor case or after any such dismissal. Except as otherwise provided herein, the DIP Liens, the Replacement Liens, the DIP Superpriority Claim

61

US 8754589

and the Adequate Protection Superpriority Claim shall maintain their priorities as provided in the Interim Order, this Final Order and the DIP Facility Documents, and not be modified, altered or impaired in any way by any other financing, extension of credit or incurrence of indebtedness, or by any conversion of any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of these Chapter 11 Cases or any other act or omission, until (i) all DIP Claims are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Facility Documents are terminated in accordance therewith and (ii) the Prepetition Secured Parties Claims have been or are deemed to have been satisfied in accordance with the Bankruptcy Code.

39. <u>Adequate Notice of Final Hearing</u>. The notice given by the Debtors of the Final Hearing was given in accordance with the Bankruptcy Rules and the Local Rules, such notice was sufficient under the particular circumstances and no other or further notice of the request for relief granted at the Final Hearing is required.

40. <u>Immediate Binding Effect; Entry of Final Order</u>. This Final Order shall be valid and fully effective immediately upon entry, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062 and 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Final Order on the Court's docket in these Chapter 11 Cases.

41. <u>Proofs of Claim</u>. Notwithstanding any order of this Court to the contrary, the Intercreditor Agent, Prepetition Secured Parties, DIP Agent and DIP Lenders hereby are relieved of any obligation or requirement to file proofs of claim in these Chapter 11 Cases with respect to any Prepetition Secured Parties Claims or DIP Claims and any other claims or liens granted hereunder or created hereby. The Debtors' Stipulations were deemed to constitute a timely filed proof of claim for the Intercreditor Agent and the Prepetition Secured Parties upon approval of the

Interim Order (and are ratified and continuing with this Final Order), and the Intercreditor Agent and the Prepetition Secured Parties shall be treated under section 502(a) of the Bankruptcy Code as if they each have filed a proof of claim. Notwithstanding the foregoing, (a) the Intercreditor Agent and the Prepetition Secured Parties are hereby authorized and entitled, in their discretion, but not required, to file (and amend and/or supplement, as they see fit) a proof of claim and/or aggregate proofs of claim in each of these Chapter 11 Cases or in any Successor Case(s) for any claim and (b) each proof of claim or proofs of claim (including any amendments to proofs of claims) filed by the Intercreditor Agent and the Prepetition Secured Parties under the joint administration case number for these chapter 11 cases (Case No. 22-90000 (MXM)) shall be deemed, at the time of its filing, to constitute the filing of such proof of claim or proofs of claim in all the cases jointly administered under Rockall Energy Holdings, LLC, et al., Case No. 22-90000 (MXM). Consequently, each claim and amended claim that the Intercreditor Agent and the Prepetition Secured Parties file under Case No. 22-90000 (MXM) shall represent a separate claim asserted against each of the Debtors. This accommodation is intended solely for administrative convenience and shall not affect the substantive rights of the Debtors, the Intercreditor Agent, the Prepetition Secured Parties or any other party in interest with respect to the number, allowance, amount or priority of the Intercreditor Agent's or the Prepetition Secured Parties' claims, or with respect to any objection defense, offset, counterclaim, acceptance or rejection related to the Intercreditor Agent's or the Prepetition Secured Parties' claims.

42. <u>Retention of Jurisdiction</u>. This Court shall retain exclusive jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Final Order.

43. <u>U.S. Specialty Insurance Company Reservation of Rights</u>. For the avoidance of doubt, nothing herein shall impair, limit, or otherwise affect any rights of subrogation of U.S.

US 8754589

Specialty Insurance Company ("*USSIC*") from the Debtors that it may have in connection with or arising out of any claims or rights to collect, recover, receive or be reimbursed from Talco Petroleum LLC, White Marlin Operating LLC, and/or White Marlin Petroleum LLC and their subsidiaries and/or affiliates, including under any settlement agreement or right to replacement of surety bonds; *provided*, *however*, that nothing herein shall be construed as waiver of any rights that the Debtors or any other parties may have in connection with any such subrogation rights, including any rights under the Bankruptcy Code or applicable law, or otherwise constitute an admission of the Debtors or any other party (including the DIP Lenders) or a finding or determination by the Court that any such right exists, and the Debtors, USSIC and all other parties' rights are fully preserved with respect to same.

44.     Texas Taxing Authorities' Reservation of Rights.  For the avoidance of doubt and notwithstanding any other provision of this Final Order or the Interim Order, to the extent Dallas County, Harris County, or Jefferson County (collectively, the "*Texas Taxing Authorities*") had valid and enforceable liens and/or security interests on property of the Debtors as of the Petition Date that were senior to the liens and/or security interests of the Prepetition Secured Parties on such property, such liens and/or security interests, if any, are and shall be, with respect to such property, senior to the Prepetition Secured Parties' liens as well as any liens and/or security interests granted pursuant to this Final Order or the Interim Order.  All rights of the Debtors or any other party in interest (including the DIP Secured Parties) to object to the allowance of the Texas Taxing Authorities' claim(s) or to contest the validity, priority or extent of their liens are expressly retained. Nothing in this Final Order or the Interim Order prejudices the right of the Texas Taxing Authorities to object to any sale of their collateral (if any), including with respect to the payment of proceeds of any such collateral to any other creditor prior to the payment to the Texas Taxing

US 8754589

Authorities of amounts (if any) owed to them and secured by such collateral, or any party in interest's right to oppose any such objection.

### # # # END OF ORDER # # #

**Order submitted by:**

**VINSON & ELKINS LLP**
Michael A. Garza (Texas Bar No. 24126797)
Matthew J. Pyeatt (Texas Bar No. 24086609)
Trevor G. Spears (Texas Bar No. 24106681)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
mgarza@velaw.com
mpyeatt@velaw.com
tspears@velaw.com

- and -

David S. Meyer (admitted *pro hac vice*)
George R. Howard (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel: 212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com
ghoward@velaw.com
lkanzer@velaw.com

**ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION**

EXHIBIT A

**DIP CREDIT AGREEMENT**

***Reference Docket No. 72-1 for Form of DIP Credit Agreement***

EXHIBIT B

**BUDGET**

| in $000s / Period Ending | Act 4/22 | Fcst 4/29 | Fcst 5/6 | Fcst 5/13 | Fcst 5/20 | Fcst 5/27 | Fcst 6/3 | Fcst 6/10 | EXIT | Remaining in process |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 Receipts | 9,809 | 208 | - | - | 9,010 | 659 | - | - | - | 9,877 |
| 2 Rev. Disbursements | (1,176) | (1,591) | - | - | - | (2,637) | - | - | - | (4,229) |
| 3 LOE Disbursements | (336) | (1,580) | (1,580) | (1,558) | (660) | (660) | (660) | (1,391) | - | (8,090) |
| 4 Pre-Pet. AP Paydown | - | (814) | (814) | (814) | - | - | - | - | (1,750) | (4,192) |
| 5 Util. Adeq. Assurance | - | - | - | - | - | - | - | - | - | - |
| 6 Capex | (145) | (460) | (335) | (540) | (42) | (417) | (462) | (42) | (434) | (1,311) |
| 7 SG&A | - | (627) | - | (2,122) | (3) | (607) | - | - | (63) | (2,716) |
| 8 Ad Valorem Payments | - | - | - | - | - | - | - | - | (140) | (2,262) |
| 9 Other Disbursements | - | (200) | - | - | (3) | - | - | - | (90) | (293) |
| 10 Operating Disbursements | (1,657) | (5,272) | (2,729) | (5,034) | (705) | (4,322) | (1,121) | (1,432) | (2,477) | (23,092) |
| 11 Restructuring Costs | - | (1,488) | (150) | (613) | - | (75) | - | (6,169) | (3,373) | (11,717) |
| 12 Other Employee Costs | - | - | - | - | - | - | - | - | (450) | (600) |
| 13 Adequate Protection | - | - | - | - | - | - | - | - | - | - |
| 14 DIP Fees and Interest | (0) | - | (123) | - | - | (275) | - | (83) | - | (481) |
| 15 Total Disbursements | (1,657) | (6,760) | (3,002) | (5,647) | (705) | (4,672) | (1,121) | (7,684) | (6,299) | (35,890) |
| 16 Net Cash Flow before DIP | 8,151 | (6,552) | (3,002) | (5,647) | 8,305 | (4,012) | (1,121) | (7,684) | (6,299) | (26,012) |
| 17 **Book Cash Roll-Forward** | | | | | | | | | | |
| 18 Beginning Cash Balance | 8,465 | 16,616 | 10,065 | 7,063 | 2,000 | 10,305 | 6,292 | 5,171 | 2,000 | 16,616 |
| 19 Net Cash Flow | 8,151 | (6,552) | (3,002) | (5,647) | 8,305 | (4,012) | (1,121) | (7,684) | (6,299) | (26,012) |
| 20 End. Cash Bal. before DIP | 16,616 | 10,065 | 7,063 | 1,416 | 10,305 | 6,292 | 5,171 | (2,513) | (4,299) | (9,396) |
| 21 DIP Draw / (Paydown) | - | - | - | 584 | - | - | - | 4,513 | 6,299 | 11,396 |
| 22 Ending Cash Balance | 16,616 | 10,065 | 7,063 | 2,000 | 10,305 | 6,292 | 5,171 | 2,000 | 2,000 | 2,000 |
| 23 **DIP Financing Roll-Forward** | | | | | | | | | | |
| 24 Beginning DIP Balance | 5,000 | 5,000 | 5,000 | 5,000 | 5,584 | 5,584 | 5,584 | 5,584 | 10,097 | - |
| 25 Plus: Draw | - | - | - | 584 | - | - | - | 4,513 | 6,299 | 11,396 |
| 26 Less: (Paydown) | - | - | - | - | - | - | - | - | - | - |
| 27 Ending DIP Balance | 5,000 | 5,000 | 5,000 | 5,584 | 5,584 | 5,584 | 5,584 | 10,097 | 16,396 | 11,396 |